1 | Richard M. Wirtz (SBN 137812)
W I R T Z   L A W   APC
2 | 3111 Camino del Rio North, Suite 310
San Diego, California 92108
3 | voice: 858.259.5009
fax:     858.259.6008
4 | email: rwirtz@wirtzlaw.com

5 | Thomas D. Foster (SBN 213414)
TD Foster - Intellectual Property Law
6 | 12626 High Bluff Drive, Suite 150
San Diego, CA 92130
7 | voice: 858.922.2170
email: foster@tdfoster.com

8 |

Attorneys for Plaintiff THE COCHRAN FIRM, P.C.

9 |

FILED
CLERK, U.S. DISTRICT COURT

JUL - 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12 | THE COCHRAN FIRM, P.C., an Alabama corporation,

Case Number: **CV12·5868** SJO (MRWx)

13 |

14 | Plaintiff,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

15 | v.

16 | THE COCHRAN FIRM LOS ANGELES, LLP, a California Limited Liability Partnership; RANDY H. McMURRAY, P.C., a California professional corporation; RANDY H. McMURRAY, individually; and DOES 1-10.

17 |

18 |

19 | Defendants.

| | |
|---|---|
| 1. | **Federal Trademark Dilution** (15 U.S.C. § 1125 (C)) |
| 2. | **Trademark Infringement** (15 U.S.C. § 1114) |
| 3. | **False Designation of Origin** (15 U.S.C. § 1125(A)) |
| 4. | **Cybersquatting** (15 U.S.C. § 1125(d)) |
| 5. | **Injury to Business Reputation and Dilution under California Law** (Cal. Bus. & Prof. Code § 14247) |
| 6 | **Infringement under California Law** (Cal. Bus. & Prof. Code § 14245) |
| 7. | **Common Law Passing off and Unfair Competition** |
| 8. | **Unfair Competition** (Cal. Bus. & Prof. Code § 17200) |
| 9. | **Breach of Fiduciary Duty** |
| 10. | **Fraud** |
| 11. | **Unjust Enrichment** |
| 12. | **Declaratory Relief** |

**(DEMAND FOR JURY TRIAL)**

27 |

28 |     Plaintiff The Cochran Firm, P.C. ("The Cochran Firm" or "National Firm") alleges as follows:

1.     This action arises from the unauthorized use of the trade name and trademark THE COCHRAN FIRM LOS ANGELES and the domain names www.thecochranfirmlosangeles.com and www.cochranlaw.org, by The Cochran Firm Los Angeles, LLP, its corporate partner Randy H. McMurray, P.C., and individual attorney Randy H. McMurray (collectively "Defendants").

2.     By using a trade name and trademark that wholly incorporates and emphasizes the nationally famous THE COCHRAN FIRM® trademark, Defendants have caused and are likely to continue to cause confusion that The Cochran Firm is the source or sponsor of Defendants' services, or that there is an association between The Cochran Firm and Defendants' professional legal services.  In addition, Defendants' acts are causing, and/or are likely to cause dilution of the THE COCHRAN FIRM® trademark.  Consequently, The Cochran Firm seeks injunctive relief and damages under the federal Lanham Act (15 U.S.C. §§ 1051 et. seq.), the California Business and Professions Code, and the common law doctrines of passing off and unfair competition.

3.     The Cochran Firm also pleads fraud, breach of fiduciary duty, and conversion based on Defendants' actions as alleged herein, including their usurping of Plaintiff's historic office space, trademark, and brand; intentionally causing Plaintiff's California Limited Liability Partnership registration to lapse with the California Secretary of State; and refusing to pay case fees due under the parties' agreement.  Defendants acted with oppression, fraud, and malice.  Consequently, The Cochran Firm seeks general and punitive damages and injunctive relief under state law.

## I.

## JURISDICTION

4.     The Court has personal jurisdiction over The Cochran Firm Los Angeles, LLP, its corporate partner Randy H. McMurray, P.C., and individual attorney Randy H. McMurray because they conduct business in the State of California within this judicial district, and reside within this judicial district.

5.     This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  Plaintiff's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051, et seq. The Court has jurisdiction over the state

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1  law claims pursuant to 28 U.S.C. §§ 1332, 1338(b), and 1367.

2      6.      Venue lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)

3  and (c).  Plaintiff is informed and believes that Defendants reside in this judicial district, transact,

4  or have transacted business in this judicial district, and may be otherwise found here, and a

5  substantial part of the events, omissions, and injuries giving rise to Plaintiff's claims occurred

6  in this judicial district.

## II.

## THE PARTIES

9      7.      Plaintiff The Cochran Firm, P.C. is an Alabama corporation having its principal

10  place of business at 163 W. Main Street, Dothan, Alabama 36301.

11      8.      Defendant The Cochran Firm Los Angeles, LLP has a principal place of business

12  at 4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010.  The Cochran Firm Los

13  Angeles, LLP is a law partnership offering legal services under THE COCHRAN FIRM LOS

14  ANGELES mark.  Defendant The Cochran Firm Los Angeles, LLP promotes its services at the

15  website www.thecochranfirmlosangeles.com.  Upon information and belief, The Cochran Firm

16  Los Angeles targets customers and clients nationwide over its website, including customers and

17  clients in California and this judicial district.

18      9.      Defendant Randy H. McMurray, P.C., is one of the corporate partners of

19  Defendant The Cochran Firm Los Angeles, LLP.  Defendant Randy H. McMurray is an attorney

20  and the President of Randy H. McMurray, P.C.

21      10.      Upon information and belief, Defendants have a principal place of business at

22  4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010 where each offers professional

23  legal services under the name THE COCHRAN FIRM LOS ANGELES.

## III.

## THE COCHRAN FIRM'S BUSINESS AND STRUCTURE

26      11.      The Cochran Firm is a nationally famous law firm that offers professional legal

27  services through a number of local offices across the United States.  The Cochran Firm is the

28  fulfillment of Johnnie L. Cochran, Jr.'s vision to have "a diverse law firm which reflects society

1   and is capable of handling cases throughout America." The Cochran Firm's clients include

2   individual consumers and businesses.

3        12.   Attorneys Johnnie L. Cochran, Jr., Samuel A. Cherry, J. Keith Givens, and Jock M.

4   Smith first organized The Cochran Firm as a national law firm in June 1998, under Cochran,

5   Cherry, Givens & Smith, P.C., an Alabama corporation with four initial locations in Los Angeles,

6   New York City, and Dothan and Tuskegee, Alabama. The Los Angeles location has always been

7   located at 4929 Wilshire Boulevard, Suite 1010, Los Angeles, 90010.

8        13.   The articles of incorporation were amended on August 31, 2004, to reflect the

9   name "The Cochran Firm-Cochran, Cherry, Givens & Smith P.C" or "The Cochran Firm, P.C."

10  On March 15, 1999, Plaintiff's members formed a California Limited Liability Partnership (LLP)

11  under Cochran, Cherry, Givens & Smith, LLP and later also amended and renamed it "The

12  Cochran Firm, LLP." Johnnie L. Cochran, Jr., Samuel A. Cherry, J. Keith Givens, and Jock M.

13  Smith were the members and partners of the both the P.C. and LLP, respectively.

14       14.   On August 5, 2004, a Memorandum of Understanding was entered into between

15  all the shareholders of The Cochran Firm, P.C. and partners of The Cochran Firm, LLP that

16  acknowledged and agreed that all references to The Cochran Firm or the National Firm shall

17  include both The Cochran Firm, P.C. and The Cochran Firm, LLP.

18       15.   The Cochran Firm, LLP agreement was considered by all partners to be the

19  governing authority for matters related to operations of The Cochran Firm.

20       16.   Under the LLP agreement, The Cochran Firm intended that each local office

21  would be an independent entity (either a partnership or corporation) in which the National Firm

22  would have an interest and the local office would distribute an agreed upon portion of its

23  revenues to the National Firm. The LLP agreement dictated that The Cochran Firm would enter

24  into an agreement with each local office specifying the percentage interest which The Cochran

25  Firm would own in such local office. The LLP agreement also stated that The Cochran Firm

26  would have control of certain fundamental management decisions of each local office to protect

27  the COCHRAN FIRM name and brand. In return, The Cochran Firm would provide

28  administrative, IT, marketing, and practice benefits and support for each local office, and allow

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1  use of the COCHRAN FIRM name.

2      17.   The National Firm owned 100% of the Los Angeles local office as of the date of

3  Johnnie L. Cochran, Jr.'s death on March 29, 2005, and continuing until at least June 2007.  The

4  Los Angeles local office is located at Defendants' current principal place of business.

5                                    **IV.**

6                      **THE COCHRAN FIRM MARK**

7      18.   Johnnie L. Cochran, Jr. filed an application with the United States Patent and

8  Trademark Office (USPTO) for THE COCHRAN FIRM mark on March 8, 2003, and was granted

9  registration on March 8, 2005, U.S. Trademark Registration No. 2,930,153.

10     19.   On October 15, 2004, Mr. Cochran assigned his interest in The Cochran Firm, LLP

11  and any other interest that he held in any existing law practice or corporation to The Cochran

12  Living Trust, previously established on August 11, 1987.

13     20.   On March 29, 2005, Mr. Cochran passed away.

14     21.   On July 1, 2007, an assignment agreement was entered into between Plaintiff and

15  The Cochran Living Trust, the assignee of the interest of The Estate of Johnnie L. Cochran, Jr.,

16  which explicitly assigned and transferred to Plaintiff, for consideration, THE COCHRAN FIRM

17  trademark.  Plaintiff was bound under the assignment agreement to take all actions to protect,

18  preserve, and enforce THE COCHRAN FIRM trademark from challenge, infringement, or

19  otherwise.  Under the terms of the assignment agreement, Plaintiff also reimbursed the Trust for

20  the security deposit on the Los Angeles office, located at 4929 Wilshire Boulevard, Suite 1010,

21  Los Angeles, CA 90010.

22     22.   Since at least May 1998, The Cochran Firm has used THE COCHRAN FIRM as

23  a trade name, trademark, and service mark.  THE COCHRAN FIRM is one of the most valuable

24  and respected names among all law firms across the nation.  It has been named to The National

25  Law Journal's Plaintiffs' Hot List, a compendium of the country's top 12 plaintiffs' law firms

26  doing the "most to shape the law in America."  In 2005, The Cochran Firm was also named to

27  The NLJ 250 list, The National Law Journal's survey of the largest law firms in America.

28  Notably, The Cochran Firm has held the exclusive position of appearing concurrently on both

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

of these celebrated lists.

23.    The Cochran Firm is the owner of U.S. Trademark Registration No. 2,930,153 issued on March 8, 2005, for the mark THE COCHRAN FIRM for use in connection with professional legal services. As alleged above, this registration, duly and legally issued by the USPTO, was legally assigned by The Estate of Johnnie L. Cochran to Plaintiff on September 21, 2007. Copies of the registration and trademark assignment abstract of title are attached as **Exhibit 1**.

24.    Through its extensive use by a number of local offices throughout the country, Plaintiff also owns common law trademark rights in THE COCHRAN FIRM and its family of THE COCHRAN FIRM mark (e.g. THE COCHRAN FIRM LOS ANGELES), for any and all professional legal services throughout the United States conducted under The Cochran Firm brand.

25.    The Cochran Firm maintains an internet site on the World Wide Web at the address http://www.cochranfirm.com and http://www.thecochranfirm.com. The Cochran Firm has used its trade name and trademark as an internet address in order to make it easy for customers and clients to locate The Cochran Firm's website, and to identify that the website is owned by The Cochran Firm.

26.    As a consequence of the extensive national marketing, advertising, promotion, and use of THE COCHRAN FIRM mark, The Cochran Firm has developed enormous recognition for its legal services under the THE COCHRAN FIRM mark and has acquired and enjoys an immensely valuable reputation and tremendous goodwill under the mark. THE COCHRAN FIRM mark is a "famous" mark for purposes of 15 U.S.C. § 1125(c)(1).

## V.

## DEFENDANTS' ACTIONS

27.    Defendants provide professional legal services under THE COCHRAN FIRM LOS ANGELES mark. Defendants have maintained a website at www.thecochranfirmlosangeles.com while also taking advantage of being listed on Plaintiff's website directory, namely www.cochranfirm.com/offices/los-angeles.html, to promote their legal services. Additionally, Defendant Randy H. McMurray registered the domain www.cochranlaw.org.

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

28.     Defendants have usurped Plaintiff's historic Los Angeles office at 4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010 for their principal place of business.  This location was encompassed within Plaintiff's California LLP agreement and was the address for the California LLP.  As such, the Los Angeles office location was functioning as part of the National Firm operations and had managerial and ownership responsibility over the Los Angeles lease and Plaintiff's California LLP registration.

29.     Defendant Randy H. McMurray was originally hired in 2000 as an attorney employee at The Cochran Firm's Los Angeles office and later received the appellation of a "partner" of the Los Angeles location in 2003. References to Defendant McMurray as a "partner" were in name only. His compensation formula was the same before and after the announcement. Defendant McMurray did not share in the profits of the Los Angeles office and did not have the express or implied burden of shouldering any of the losses of the Los Angeles office. Nor did Mr. McMurray share in the common ownership of the partnership property.

30.     On February 1, 2007, with the intention of becoming a Los Angeles local office under The Cochran Firm umbrella, as described in Paragraph 16 above, Defendant Randy H. McMurray, P.C. formed "The Cochran Firm Los Angeles, LLP," a California partnership, with Brian T. Dunn, P.C. The partnership agreement was amended on January 1, 2010, to add The Barrett Law Firm, APC as a partner.  In the agreement, the parties agreed among themselves that their partnership name would be "The Cochran Firm Los Angeles," providing however, that the name "Cochran" was used under license from Plaintiff and its partners, Samuel A. Cherry, Jr., J. Keith Givens and Jock Smith.  It also stated that "In the event such license expires or revoked, the Partnership shall adopt another name."  A copy of Defendant's amended LLP agreement is attached  as **Exhibit 2**.

31.     Plaintiff did not convey to the newly formed Los Angeles partnership the Los Angeles office, including furnishings, computers, hardware and software, located at 4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010, but allowed it to operate there as a de facto Cochran Firm local office and partner as per Paragraph 16 above. The permissive use was allowed based on the representations by Defendant McMurray that the newly formed The

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

Cochran Firm- LA would function as a "local" office of The Cochran Firm's ("National") and would enter into the operating agreements customarily executed by "local" offices with National.

32.     Since the Cochran Firm Los Angeles, LLP's formation, Plaintiff has made numerous attempts to memorialize and execute an agreement outlining the partner and licensing relationship between the National Firm and the Los Angeles local office.

33.     The process of codification of the agreement for the operation of the local Los Angeles Cochran office actually began in December 2006. On December 27, 2006 a draft of a document entitled "Operating Agreement and Memo of Understanding for The Cochran firm - Los Angeles" was sent by e-mail from Sam Cherry, in behalf of National, to the Defendant McMurray. A copy of this document is attached as **Exhibit 3**.

34.     Additional drafts were prepared and exchanged with minor modifications and on August 30, 2007, Defendant McMurray e-mailed to Sam Cherry the edits that McMurray approved to the document entitled "Operating Agreement and Memo of Understanding for The Cochran Firm Los Angeles." A copy of this document  is attached as **Exhibit 4**. Pursuant to Defendant McMurray's edited version of the agreement he proposed under the heading FEES PAID TO NATIONAL that the newly formed Los Angeles Cochran office "agree[d] to pay National 22.5% of the gross fees earned on contingency-fee cases existing in the Los Angeles office as of December 31, 2006 and 17.5% of the gross fees earned on contingency-fee cases signed after January 1, 2007 up to a total of 2 million net fees to national. Thereafter, Mc and D [Defendant McMurray and his partner Brian Dunn] agreed to pay national 10% of the gross fees earned on contingency-fee cases."

35.     At no time during discussions concerning the operating agreement did Defendant McMurray ever question the duty to pay Plaintiff a portion of the fees earned and received by the Los Angeles office as compensation for the administrative, IT, marketing, practice benefits and support of being a Cochran Firm local office.

36.     On July 2009, Plaintiff prepared and submitted to Defendant McMurray and Brian Dunn an operating agreement for The Cochran Firm Los Angeles with an effective date

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1  retroactive to January 1, 2000. This agreement was executed by Plaintiff, not by Defendants.

2  This document is attached as **Exhibit 5**.

3  37.  From January 2006 until September 2010, Defendants continued in every respect

4  to operate as general partners under this operating agreement and as permitted by the

5  assignment agreement, including compliance with the monthly reporting requirements and

6  payment of the agreed-upon National compensation. In consideration of the mutual benefits

7  contemplated, Plaintiff continued to provide, and Defendants continued to accept, the

8  administrative, IT, marketing and practice benefits and support of being a Cochran Firm local

9  office, and use of THE COCHRAN FIRM LOS ANGELES name. Defendant McMurray continued

10  to attend Cochran functions conducted annually in Las Vegas and at no time did he reveal to

11  Plaintiff his true intentions that he was never going to enter into a formal agreement with

12  Plaintiff concerning the operation of The Cochran Firm Los Angeles.

13  38.  As an apparent component of Defendant McMurray's scheme to misrepresent his

14  true intentions and without Plaintiff's knowledge, Defendant McMurray instructed the Los

15  Angeles office administrator not to renew the Cochran Cherry Givens and Smith (The Cochran

16  Firm) LLP's registration when the administrator received the 2008 renewal invoice. Defendant

17  McMurray concealed this intentional act. Plaintiff was not aware until 2010 that their

18  long-standing California LLP registration had not been renewed. The California LLP registration

19  had not been renewed since 2008 as a direct result of Defendant McMurray's actions,

20  constituting fraud, constructive fraud and breach of fiduciary duty.

21  39.  Although Defendants continued to submit monthly fee reports to Plaintiff until

22  October 2011, in September 2010 Defendants stopped remitting to Plaintiff the agreed-upon

23  case fees that Defendants had been paying since January 2006. Plaintiff alleges that based on

24  the monthly fee reports submitted by the Defendants, a total of at least $606,373.01 worth of

25  case fees is still outstanding for cases settled between January 1, 2009, and May 31, 2011.

26  40.  After extended reconciliation attempts failed, on September 13, 2011, due to

27  continuing internal disputes among Defendants and their local partners and their failure to sign

28  the agreements with the National Firm, Plaintiff sent a letter to Defendants revoking all contract

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1  proposals that had been previously executed by Plaintiff.

2      41.   On December 24, 2011, Plaintiff emailed Defendant McMurray, requesting the

3  status of their payment of past case fees.  On December 27, 2011, Defendant McMurray

4  responded to this email expressing his concerns regarding The Cochran Firm Los Angeles'

5  partnership agreements with the National Firm. In the email, Defendant McMurray falsely

6  promised to pay the National Firm $40,000.00 of the balance owed.  Plaintiff did not receive

7  these funds nor have Defendants paid the National Firm's case fees since September 2010.

8      42.   On February 6, 2012, Plaintiff sent a Cease and Desist notice to Defendant

9  McMurray and his local partner Joseph Barrett. This letter informed Defendants and Mr. Barrett

10 that they were no longer permitted to use The COCHRAN FIRM mark or any other similar mark

11 based on the unanimous vote of The Cochran Firm shareholders. On February 7, 2012,

12 Defendant McMurray replied by letter, taking the position that he was entitled to use The

13 Cochran Firm Los Angeles name without consideration to, approval from, or permission by The

14 Cochran Firm. Copies of Plaintiff's February 6, 2012 letter and Defendant's February 7, 2012

15 letter are attached  as **Exhibit 6**.

16     43.   On March 5, 2012, Defendants Randy H. McMurray, P.C. and Randy H.

17 McMurray filed a dissolution action in the Los Angeles Superior Court for winding up and

18 dissolution of The Cochran Firm Los Angeles, LLP formed by Defendant Randy H. McMurray,

19 P.C. and his local partners Brian T. Dunn, P.C., and The Barrett Law Firm, APC.  An amended

20 complaint was filed on April 24, 2012.

21     44.   On March 23, 2012, Defendant Randy H. McMurray, P.C. filed with the U.S.

22 Patent and Trademark Office before the Trademark and Trial and Appeal Board (TTAB) a petition

23 to cancel Plaintiff's THE COCHRAN FIRM mark, claiming that it has the right to use THE

24 COCHRAN FIRM or THE COCHRAN FIRM LOS ANGELES mark in its separate law practice.

25     45.   On information and belief, Defendants are currently practicing law and/or offering

26 professional legal services under the COCHRAN FIRM LOS ANGELES name at Plaintiff's historic

27 Los Angeles office, located at 4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010.

28 // //

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

**FIRST CLAIM FOR RELIEF**

**Federal Trademark Dilution**

**(15 U.S.C. § 1125 (C))**

46.     The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

47.     THE COCHRAN FIRM mark is nationally renowned.  It is a famous mark that is widely recognized by consumers, businesses, and industry, and that identifies the services of The Cochran Firm in the minds of consumers.

48.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark began after The Cochran Firm's mark had become famous.

49.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark has and will continue to have an adverse effect upon the value and distinctive quality of THE COCHRAN FIRM mark.  Defendants' acts blur and whittle away at the distinctiveness and identity-evoking quality of the THE COCHRAN FIRM mark.  Defendants' acts have diluted and are likely to continue diluting the famous THE COCHRAN FIRM mark in violation of 15 U.S.C. § 1125(c).

50.     The Cochran Firm has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, The Cochran Firm will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which The Cochran Firm has no adequate remedy at law in that: (i) as the wrongful conduct continues, the trademark risks further dilution; and (ii) Defendants' wrongful conduct, and the damages resulting to Plaintiff, is continuing.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1125(c)(2).

51.     Defendants have committed the acts alleged above: (i) with previous knowledge of Plaintiff's prior right to and use of the trademark; (ii) with the willful intent to trade on Plaintiff's good will and reputation; and (iii) with the willful intent to cause confusion, mistake, or deception. As a result, Plaintiff is entitled pursuant to 15 U.S.C. §1117(a), to: (i) Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations thereof; (ii) any

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1   damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which

2   shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

3       52.    In addition, as a result of Defendants' willful violation of 15 U.S.C. §1125(c),

4   Plaintiff is entitled to the recovery of its attorney's fees, and treble damages pursuant to 15

5   U.S.C. §1117.

6       53.    Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants

7   from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection

8   with the advertising, marketing, promotion, sale and rendering of professional legal services,

9   without Plaintiff's express written consent in advance.

10   **<u>SECOND CLAIM FOR RELIEF</u>**

11   **Trademark Infringement**

12   **(15 U.S.C. § 1114)**

13       54.    The Cochran Firm realleges and incorporates by reference each of the foregoing

14   material allegations as though set forth in full at this point.

15       55.    Defendants were aware of The Cochran Firm's business and its COCHRAN FIRM

16   mark prior to the adoption and use of THE COCHRAN FIRM LOS ANGELES trade name and

17   trademark.

18       56.    Defendants either had actual notice and knowledge, or had constructive notice,

19   of The Cochran Firm's ownership and registration of THE COCHRAN FIRM mark pursuant to

20   15 U.S.C. § 1072 prior to Defendants' adoption and use of THE COCHRAN FIRM LOS

21   ANGELES trade name and trademark.

22       57.    Defendants are using THE COCHRAN FIRM LOS ANGELES trade name and

23   trademark in connection with the offering of services without The Cochran Firm's consent and

24   with knowledge of The Cochran Firm's rights.

25       58.    Defendants' unauthorized use of THE COCHRAN FIRM trade name and

26   trademark falsely indicates to consumers that Defendants' services are in some manner

27   connected with, sponsored by, affiliated with, or related to The Cochran Firm, The Cochran

28   Firm's partners and licensees, or the services of The Cochran Firm and Cochran Firm's partners

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1   and licensees.

2   59.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and

3   trademark is also likely to cause consumers to be confused as to the source, nature, and quality

4   of the services The Cochran Firm offers.

5   60.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and

6   trademark in connection with the offering of its services allows, and will continue to allow,

7   Defendants to receive the benefit of the goodwill established at great labor and expense by The

8   Cochran Firm and to gain acceptance of Defendants' services, not based on the merits of those

9   services, but on The Cochran Firm's reputation and goodwill.

10   61.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and

11   trademark in connection with the sale of its services deprives The Cochran Firm of the ability

12   to control the consumer perception of the quality of the services marketed under THE

13   COCHRAN FIRM mark, and places The Cochran Firm's valuable reputation and goodwill in the

14   hands of Defendants, over which The Cochran Firm has no control.

15   62.     Defendants are likely to cause confusion, or to cause mistake, or to deceive

16   consumers or potential consumers in violation of 15 U.S.C. § 1114.

17   63.     The Cochran Firm has been, is now, and will be irreparably injured and damaged

18   by Defendants' trademark infringement, and unless enjoined by the Court, The Cochran Firm

19   will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury

20   for which The Cochran Firm has no adequate remedy at law.

21   64.     By reason of the foregoing, Defendants have committed and are continuing to

22   commit trademark infringement in violation of 15 U.S.C. §1114.  As a direct and proximate

23   result of Defendants' conduct, Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a), to recovery

24   of: (i) Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations

25   thereof; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise

26   amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

27   65.     In addition, as a result of Defendants' willful violation of 15 U.S.C. §1125(c),

28   Plaintiff is entitled to the recovery of its attorney's fees, and treble damages pursuant to 15

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

U.S.C. §1117.

66.     Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

### THIRD CLAIM FOR RELIEF

### False Designation of Origin

### (15 U.S.C. § 1125(A))

67.     The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

68.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark falsely suggests that their services are connected with, sponsored by, affiliated with, or related to The Cochran Firm, and constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

69.     The Cochran Firm has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, The Cochran Firm will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which The Cochran Firm has no adequate remedy at law.

70.     As a direct and proximate result of Defendants' conduct, Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a), to recovery of : (i) Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations thereof; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

71.     In addition, as a result of Defendants' willful violation of 15 U.S.C. §1125(c), Plaintiff is entitled to the recovery of its attorney's fees, and treble damages pursuant to 15 U.S.C. §1117.

72.     Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

## FOURTH CLAIM FOR RELIEF

### Cybersquatting

### (15 U.S.C. § 1125(d))

73.    The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

74.    Defendants have registered the domain name www.cochranlaw.org which is confusingly similar to and dilutive of the THE COCHRAN FIRM trademark and constitutes cybersquatting under 15 U.S.C. § 1125(d).

75.    Defendants were aware of THE COCHRAN FIRM mark prior to registering www.cochranlaw.org.  Defendants' cybersquatting is willful and deliberate.

76.    The Cochran Firm has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, The Cochran Firm will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which The Cochran Firm has no adequate remedy at law.

77.    Plaintiff is entitled to statutory damages up to $100,000 per domain. Alternatively, Plaintiff is entitled to actual damages should they exceed statute limits.

78.    In addition as a result of Defendants' willful and deliberate violation of 15 U.S.C. §1125(d), Plaintiff is entitled to the recovery of its attorney's fees.

79.    Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of www.cochranlaw.org and requests that the Court transfer the domain name to the Plaintiff.

## FIFTH CLAIM FOR RELIEF

### Injury to Business Reputation and Dilution under California Law

### (CAL. BUS. & PROF. CODE § 14247)

80.    The Cochran Firm realleges and incorporates by reference each of the foregoing the material allegations as though set forth in full at this point.

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

81.   Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark is likely to injure The Cochran Firm's business reputation, and has diluted, and/or is likely to dilute, the distinctive quality of THE COCHRAN FIRM mark and trade name in violation of the California Business and Professions Code § 14247.

82.   Defendants willfully intended to trade on The Cochran Firm's image and reputation and to dilute THE COCHRAN FIRM trademark, or were willfully blind as to the consequences of their actions.

83.   Defendants' wrongful acts have caused and will continue to cause The Cochran Firm irreparable harm.  The Cochran Firm has no adequate remedy at law for Defendants' dilution.

84.   The Cochran Firm is therefore entitled to a judgment enjoining and restraining Defendants from engaging in further acts of dilution pursuant to California Business and Professions Code § 14247.

85.   Defendants have committed the acts alleged above: (i) with previous knowledge of Plaintiff's prior right to and use of the trademark; (ii) with the willful intent to trade on Plaintiff's good will and reputation; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Plaintiff is entitled to: (i)  Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations thereof; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

86.   In addition, Plaintiff is entitled to the recovery of its attorney's fees, and treble damages.

87.   Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

/ /

/ /

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

**SIXTH CLAIM FOR RELIEF**

**Infringement Under California Law**

**(CAL. BUS. & PROF. CODE § 14245)**

88.     The Cochran Firm realleges and incorporates by reference each of the foregoing the material allegations as though set forth in full at this point.

89.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark in connection with the sale, offering for sale, or advertising of its services is likely to cause confusion or mistake or to deceive as to the source or origin of its services in violation of California Business and Professions Code § 14245.

90.     Upon information and belief, Defendants' infringement has been with knowledge of The Cochran Firm's rights.

91.     The Cochran Firm has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless enjoined by the Court, The Cochran Firm will suffer further harm to its name, reputation, and goodwill.  This harm constitutes an injury for which The Cochran Firm has no adequate remedy at law.

92.     Defendants have committed the acts alleged above: (i) with previous knowledge of Plaintiff's prior right to and use of the trademark; (ii) with the willful intent to trade on Plaintiff's good will and reputation; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Plaintiff is entitled to: (i)  Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations thereof; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

93.     In addition, Plaintiff is entitled to the recovery of its attorney's fees, and treble damages.

94.     Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

## SEVENTH CLAIM FOR RELIEF

### Common Law Passing Off and Unfair Competition

95.     The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

96.     Defendants' unauthorized use of THE COCHRAN FIRM trade name and trademark constitutes passing off and unfair competition of THE COCHRAN FIRM mark in violation of the common law in California.

97.     Defendants' wrongful acts have caused and will continue to cause The Cochran Firm irreparable harm.  The Cochran Firm has no adequate remedy at law.

98.     The Cochran Firm is entitled to a judgment enjoining and restraining Defendants from engaging in further acts of infringement and unfair competition.

99.     Defendants have committed the acts alleged above: (i) with previous knowledge of Plaintiff's prior right to and use of the trademark; (ii) with the willful intent to trade on Plaintiff's good will and reputation; and (iii) with the willful intent to cause confusion, mistake, or deception.  As a result, Plaintiff is entitled to:  (i)  Defendants' profits related to all uses of THE COCHRAN FIRM mark, and all iterations thereof; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

100.    In addition, Plaintiff is entitled to the recovery of its attorney's fees, and treble damages.

101.    Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

## EIGHTH CLAIM FOR RELIEF

### Unfair Competition

### (Cal. Bus. & Prof. Code § 17200)

102.    The Cochran Firm realleges and incorporates by reference each of the foregoing

1 | material allegations as though set forth in full at this point.

2 |     103.    Defendants' acts described above constitute unfair competition in violation of

3 | California Business and Professional Code § 17200 et seq., as they are likely to deceive the

4 | public.

5 |     104.    Defendants' acts of unfair competition have caused and will continue to cause

6 | The Cochran Firm irreparable harm.  The Cochran Firm has no adequate remedy at law for

7 | Defendants' unfair competition.

8 |     105.    The Cochran Firm is entitled to a judgment enjoining and restraining Defendants

9 | from engaging in further unfair competition. Plaintiff seeks a preliminary and permanent

10 | injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or

11 | any iterations thereof, in connection with the advertising, marketing, promotion, sale and

12 | rendering of professional legal services, without Plaintiff's express written consent in advance.

13 |     106.    As a direct and proximate result of the unfair competition by Defendants, Plaintiff

14 | is entitled to restitution of the profits and other ill-gotten gains by Defendants from the illegal

15 | and impermissible use of THE COCHRAN FIRM mark.

16 |     107.    In addition, Plaintiff is entitled to the recovery of its attorney's fees, and any

17 | penalties for which the law provides.

18 | **NINTH CLAIM FOR RELIEF**

19 | **Breach of Fiduciary Duty**

20 |     108.    The Cochran Firm realleges and incorporates by reference each of the foregoing

21 | material allegations as though set forth in full at this point.

22 |     109.    At all relevant times, Defendants owed fiduciary duties to Plaintiff by virtue of its

23 | relationship with Plaintiff in which it owed Plaintiffs a duty of loyalty and a duty of trust.

24 |     110.    By the conduct alleged above, Defendants breached its fiduciary duties to

25 | Plaintiff.  Among other things, Defendants breached their fiduciary duty to Plaintiff by causing

26 | or allowing Plaintiff's California LLP registration to lapse, by filing a Petition for Cancellation

27 | with the TTAB to cancel Plaintiff's THE COCHRAN FIRM mark, and/or refusing payment of

28 | agreed-upon case fees owed to Plaintiff, by usurping the office space, and illegally using THE

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1  COCHRAN FIRM mark as alleged above.

2      111.   As a direct and proximate result of the breach of fiduciary duty by Defendants,

3  Plaintiff has been damaged in an amount according to proof at trial.

4      112.   Based on the conduct alleged above, Defendants conduct was despicable,

5  malicious, and oppressive and in a complete disregard for the rights of Plaintiff, thereby

6  justifying an award of punitive damages.

7  **TENTH CLAIM FOR RELIEF**

8  **Fraud**

9      113.   The Cochran Firm realleges and incorporates by reference each of the foregoing

10  material allegations as though set forth in full at this point.

11      114.   On or about the beginning of 2008 through 2010, Defendants falsely and

12  fraudulently continued to represent to Plaintiff that they desired to become a Cochran Firm local

13  office as described in Paragraph 16 above.

14      115.   The representations made by Defendants were in fact false. The true facts were

15  that Defendants intended to seize and take control of Los Angeles office and use "The Cochran

16  Firm Los Angeles" name without permission, authority, or control by Plaintiff. Defendants

17  intentionally caused the Plaintiff's California LLP registration to lapse while representing to the

18  Plaintiff that it would sign and execute an operating agreement with Plaintiff to govern the Los

19  Angeles local office.

20      116.   When Defendant made these representations, they knew them to be false, and

21  these representations were made by Defendants with the intent to defraud and deceive Plaintiff

22  and with the intent to induce Plaintiff to act in the manner herein alleged.  At the time

23  Defendants made the promises to Plaintiff, Defendants had no intention of performing them.

24      117.   Plaintiff, at the time these representations were made by Defendants and at the

25  time Plaintiffs took the actions herein alleged, was ignorant of the falsity of Defendants'

26  representations and believed them to be true.  In reliance on these representations, Plaintiff was

27  induced to and did allow Defendants to offer professional legal services under "The Cochran

28  Firm Los Angeles" name and use the Los Angeles office located at 4929 Wilshire Boulevard,

W I R T Z   L A W APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

Suite 1010, Los Angeles, CA 90010. Had Plaintiff known the actual facts, it would not have taken such action. Plaintiff's reliance on Defendants' representations was justified because Defendants were in a partnership and fiduciary relationship with Plaintiff.

118.   As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiff has been damaged in a sum to be proven at trial.

119.   In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive damages.

## ELEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

120.   The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

121.   As a result of the wrongful acts of Defendants, as alleged above, Defendants have been unjustly enriched and benefitted. Such unjust enrichment and benefits include, but are not limited to the amount of Defendants' revenues and profits attributable to the use of THE COCHRAN FIRM mark, and all iterations thereof.

122.   Defendants are under an obligation to pay Plaintiff, forthwith, the entire amount by which it has been unjustly enriched, and Plaintiff is entitled to the imposition of a constructive trust, such that Defendants are each involuntary trustees holding all such sums in its possession for the benefit of Plaintiff with a duty to transfer the same to Plaintiff forthwith.

123.   Plaintiff also seeks a preliminary and permanent injunction to prohibit Defendants from any further use of the THE COCHRAN FIRM mark, or any iterations thereof, in connection with the advertising, marketing, promotion, sale and rendering of professional legal services, without Plaintiff's express written consent in advance.

## TWELFTH CLAIM FOR RELIEF

### Declaratory Relief

124.   The Cochran Firm realleges and incorporates by reference each of the foregoing material allegations as though set forth in full at this point.

125.   A dispute exists between Plaintiff and Defendants concerning the validity of

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1   Plaintiff's Trademark Registration No. 2,930,153.

2      126.   Plaintiff seeks a declaration from the court as follows:

3      a.   A declaration from the Court that Trademark Registration No. 2,930,153 is valid

4         and enforceable.

5      b.   A declaration from the Court that Plaintiff is the sole assignee of THE COCHRAN

6         FIRM mark and owns the rights to use the mark to the exclusion of all others

7         absent written express consent from Plaintiff.

8      127.   There is an actual and substantial dispute between Plaintiff and Defendants arising

9   under federal law which can only be resolved judicial interpretation of the provisions of the

10   trademark and unfair competition statutes of the United States.

11      WHEREFORE, The Cochran Firm prays for relief as follows:

12      1.   Entry of an order and judgment requiring that Defendants and its officers, agents,

13   servants, employees, owners and representatives, and all other persons, firms or corporations

14   in active concert or participation with it, be enjoined and restrained from (a) using in any

15   manner THE COCHRAN FIRM mark, or any name, mark, or domain name that wholly

16   incorporates THE COCHRAN FIRM mark or is confusingly similar to or a colorable imitation of

17   this mark, including, without limitation, any trade name and trademark incorporating the term

18   "THE COCHRAN FIRM;" (b) doing any act or thing calculated or likely to cause confusion or

19   mistake in the minds of members of the public, or prospective customers or clients of The

20   Cochran Firm's services, as to the source of the services offered for sale or sold, or likely to

21   deceive members of the public, or prospective customers or clients into believing that there is

22   some connection between Defendants' services and The Cochran Firm; and (c) committing any

23   acts which will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive

24   quality of THE COCHRAN FIRM mark;

25      2.   A judgment ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this

26   Court and serve upon The Cochran Firm within thirty (30) days after entry of the injunction, a

27   report writing under oath setting forth in detail the manner and form in which Defendants have

28   complied with the injunction and ceased all services under THE COCHRAN FIRM or THE

W I R T Z   L A W APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1    COCHRAN FIRM LOS ANGELES trade name and trademark as set forth above;

2        3.     A judgment ordering Defendant The Cochran Firm Los Angeles, LLP to take all

3    steps necessary to cancel or remove the name The Cochran Firm Los Angeles from the records

4    of the California Secretary of State, and any related fictitious business names from the records

5    of the offices of the Secretary of State or the clerk of any county in which Defendant or its other

6    entities are qualified to do business, and to otherwise take all steps necessary to change The

7    Cochran Firm Los Angeles business name;

8        4.     A judgment ordering Defendants to take all steps necessary to transfer the domain

9    name www.thecochranfirmlosangeles.com to Plaintiff and to remove all references to THE

10   COCHRAN FIRM LOS ANGELES trade name and trademark from all of their other websites, if

11   any;

12       5.     A judgment in the amount of The Cochran Firm's actual damages, Defendants'

13   profits, The Cochran Firm's reasonable attorney's fees and cost of suit, and pre-judgment interest

14   pursuant to 15 U.S.C. §1117;

15       6.     A judgment for enhanced damages under 15 U.S.C. §1117 and punitive damages

16   under state law as appropriate;

17       7.     A judgment for unpaid partnership fees and interest there upon to be proven at

18   trial;

19       8.     A judgment for statutory damages up to $100,000 per domain under 15 U.S.C.

20   §1117(d) and attorney's fees;

21       9.     A judgment ordering Defendants to take all steps necessary to transfer the domain

22   name www.cochranlaw.org to Plaintiff;

23       10.    A judgment granting The Cochran Firm such other and further relief as the Court

24   deems just and proper;

25       11.    A declaration from the Court that Trademark Registration No. 2,930,153 is valid

26   and enforceable;

27   / /

28   / /

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

1      12.    A declaration from the Court that Plaintiff is the sole assignee of THE COCHRAN

2  FIRM mark and owns the rights to use the mark to the exclusion of all others absent written

3  express consent from Plaintiff.

4                                              Respectfully Submitted,

5  DATED:    July 5, 2012             **WIRTZ LAW** APC

7                                  By:

8                                  Richard M. Wirtz

9                                  Attorney for Plaintiff THE COCHRAN FIRM, P.C.

WIRTZ LAW APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice 858.259.5009 / fax 858.259.6008

# EXHIBIT 1

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

## United States Patent and Trademark Office

Reg. No. 2,930,153
Registered Mar. 8, 2005

**SERVICE MARK**
**PRINCIPAL REGISTER**

**THE COCHRAN FIRM**

COCHRAN, JOHNNIE L , JR. (UNITED STATES
  INDIVIDUAL)
C/O THE COCHRAN FIRM
233 BROADWAY, 5TH FLOOR
NEW YORK, NY 10279

  FOR: PROFESSIONAL LEGAL SERVICES, IN
CLASS 42 (U.S. CLS. 100 AND 101).

  FIRST USE 5-0-1998; IN COMMERCE 5-0-1998.

  NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE FIRM, APART FROM THE MARK
AS SHOWN.

  SEC. 2(F).

  SER. NO. 76-529,885, FILED 7-16-2003.

  KAREN K. BUSH, EXAMINING ATTORNEY



**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Assignments on the Web > **Trademark Query**

# Trademark Assignment Abstract of Title

**Total Assignments: 1**

**Serial #:** 76529885     **Filing Dt:** 07/16/2003     **Reg #:** 2930153     **Reg. Dt:** 03/08/2005

**Registrant:** Cochran, Johnnie L , Jr.

**Mark:** THE COCHRAN FIRM

**Assignment: 1**

**Reel/Frame:** 3628/0514     **Received:** 09/24/2007     **Recorded:** 09/21/2007     **Pages:** 3

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** THE ESTATE OF JOHNNIE L. COCHRAN JR. MARTHA COCHRAN SHERRARD,CO-EXECUTOR PEARL COCHRAN BAKER, CO-EXECUTOR

    **Exec Dt:** 08/02/2007
    **Entity Type:** INDIVIDUAL
    **Citizenship:** NONE

**Assignee:** COCHRAN FIRM, P.C., THE
163 W. MAIN STREET
DOTHAN, ALABAMA 36301

    **Entity Type:** CORPORATION
    **Citizenship:** NONE

**Correspondent:** J. KEITH GIVENS
THE COCHRAN FIRM
163 W. MAIN STREET
DOTHAN, AL 36301

Search Results as of: 07/03/2012 10:53 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.3.1
Web interface last modified: Jan 26, 2012 v.2.3.1

| HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

# EXHIBIT 2

AMENDED AND RESTATED
THE COCHRAN FIRM LOS ANGELES
PARTNERSHIP AGREEMENT

RANDY H. MCMURRAY, P.C., a California professional corporation, BRIAN T. DUNN, P.C. a California professional corporation, and THE BARRETT LAW FIRM, a Professional Corporation (individually, a "Partner" and together, the "Partners") agree, as of January 1, 2010, to form a general partnership to engage in the practice of law upon the following terms and conditions:

R E C I T A L S

A.    RANDY H. MCMURRAY, P.C. and the predecessor of BRIAN T. DUNN, P.C. a California professional corporation ("Original Partners") formed a general partnership under the General Partnership Agreement of The Cochran Firm Los Angeles Partnership, effective February 1, 2007 (the "Original Partnership Agreement").

B..    The Original Partners wish to admit THE BARRETT LAW FIRM, a Professional Corporation, and revise and restate the Original Partnership Agreement.

IN CONSIDERATION of the premises the Partners hereby amend and restate the Original Partnership Agreement in full as follows:

ARTICLE 1. NATURE OF PARTNERSHIP

Partnership Purpose

Section 1.01. The Partners voluntarily associate themselves for the purpose of engaging in the general practice of law and matters related and incidental to such practice under the laws of the State of California and the rules and regulations of The State Bar of California.

Name

Section 1.02. The name of the Partnership, herein called "firm name," shall be The Cochran Firm Los Angeles, provided, however, the name "Cochran" is used by the Partnership under license from the Cochran Firm and its partners, Samuel A Cherry, Jr. J. Keith Givens and Jock Smith (the "National Firm"). In the event such license expires or is revoked, the Partnership shall adopt another name.

Term

Section 1.03. The Partnership commenced on January 1, 2010 and shall continue until dissolved by mutual agreement of the Partners or terminated as provided in this Agreement.

70896.00/009(10)

## Location

**Section 1.04.**  The Partnership shall maintain offices at <u>4929 Wilshire Blvd., Ste 1010, Los Angeles, California,</u> or at any other place or places as may be designated by a majority of the Partners by number.

## ARTICLE II.   FINANCIAL

### Capital; Partnership Interest

**Section 2.01.**  The initial capital of the Partnership shall consist of the capital accounts of the Original Partners carried over from their previous partnership and no initial required Capital Contribution of THE BARRETT LAW FIRM, as specified below:

| Name of Partner | Capital Contribution | Partnership Interest |
|---|---|---|
| RANDY H. MCMURRAY, P.C. | $100,257.67 | 41% |
| BRIAN T. DUNN, P.C. | $50,135.53 | 39% |
| THE BARRETT LAW FIRM, APC | $0.00 | 20% |

The starting Capital Accounts of the Original Partners are subject to adjustment based on any changes in their capital accounts in the predecessor partnership after such partnership has filed its final 2009 tax returns.

### Withdrawal of Capital

**Section 2.02.**  No portion of the Partnership capital may be withdrawn at any time without the express written consent of all Partners.

### No Interest on Capital

**Section 2.03.**  Partners shall not be entitled to interest on contributions to the capital of the Partnership.

### Additional Contributions to Capital

**Section 2.04.**  By vote of a majority of the Partners by number, additional capital contributions may be required to be made by the Partners in accordance with their Partnership ownership interest set forth in Section 2.01 (the "Partnership Interest").

### Ownership of the Partnership

**Section 2.05.**  The Partnership is owned by the Partners in proportion to their Partnership Interests.

### Profits and Losses

**Section 2.06.** Net Partnership profits shall be allocated and paid to each Partner as follows:

(1)  First, a percentage of total receipts from each matter as the Partners shall unanimously agree, shall be allocated among the Partners as follows ("First Partner Allocation"):

(a)  for matters as to which the Managing Partner is the handling attorney: 50% to the Managing Partner and 25% to each of the other Partners;

(b)  for matters as to which a Partner who is not the Managing Partner is the handling attorney: 50% to the Handling Partner, 30% to the Managing Partner and 20% to the other Partner; and

(c)  for matters as to which an attorney who is not a partner is the handling attorney: 40% to the Managing Partner and 30% to each of the other Partners.

(2)  The balance of Partnership Profits shall be allocated to the Partners in accordance with their Partnership Interests.

Net losses shall be shared by the Partners on the basis the Partnership Interest held by each Partner.

### Expenses

**Section 2.07.** All rents, payments for office or professional supplies, professional dues, premiums for insurance, wages, salaries, and other expenses incidental to the Partnership business shall be paid out of the income or capital of the Partnership and shall, for the purpose of this Agreement, be considered ordinary and necessary expenses of the Partnership business deductible before net profits are determined.

### Salaries

**Section 2.08.** Unless the Partners otherwise agree in writing, no Partner shall receive any salary for services rendered to or in the Partnership business.

### Draw of Partners

**Section 2.09.** The amount and frequency of the Partner draws shall be determined by a majority of the Partners by number. Each withdrawal by a Partner shall first be charged against such Partner's distributive share of the net Partnership profits for the year in which made, and to the extent such withdrawal exceeds the receiving Partner's share of net Partnership profits for such year, the balance shall be charged against the Partner's Capital Account. Each Partner shall

be entitled, at the end of any calendar year, to withdraw from the income account (defined in Section 2.16) the balance of such Partner's distributive share of the Partnership net profits for the year after making the capital contribution, if any, required by Sections 2.01 or 2.04 of this Agreement; provided, however, the withdrawals made by the Partners during the first calendar year of the Partnership shall not exceed such amount as shall be determined by majority of the Partners.

## Partnership Duties and Income

**Section 2.10.** Each Partner is owned by one individual who is licensed to practice law in the State of California (the "Shareholder").

(a)     The Shareholder shall devote all of his working time diligently and faithfully to the affairs of the Partnership and shall not engage in any other trade or business without the consent of a majority of the Partners by number.

(b)     All fees and remuneration of whatever form which is received by a Partner or the Shareholder for the performance of legal services shall be considered to be an asset of the Partnership.

(c)     The amount charged by each Partner for professional services rendered in connection with the Partnership business shall be determined by a majority of the Partners by number. However, each Shareholder may render professional services for any members of his or her immediate family without charge provided that if the Shareholder or Partner receives a fee, it shall be considered Partnership income. Any and all unreimbursed costs incurred in the handling of family matters shall be the responsibility of said Partner and not the Partnership. On approval of a majority of the Partners by number, any Partner may render professional services without charge or at less than regular charge to any professional, civic, educational, religious, or charitable organization or project. Any fees received by said Partner will be considered a Partnership asset.

## Bank Accounts

**Section 2.11.** All Partnership funds shall be deposited in bank accounts designated by a majority of the Partners by number.

## Books

**Section 2.12.** Complete and accurate accounts of all Partnership transactions shall be kept in proper books and each Partner shall enter in those books a full and accurate account of all transactions conducted by that Partner on behalf of the Partnership. The books of account and other Partnership records shall, at all times, be kept in a Partnership place or places of business designated by majority vote of the Partners and each Partner shall, at all times, have access to, and may inspect and copy, any of them.

## Method of Accounting

**Section 2.13.** The Partnership books of account shall be kept on a cash and calendar year basis.

## Accounting

**Section 2.14.** As soon after December 31 in each year as is reasonably practicable, a complete and accurate accounting shall be made of all Partnership receipts and disbursements during the preceding calendar year. The net Partnership profits or losses during that year shall be ascertained and credited or debited, as the case may be, on the Partnership books, to the respective Partners in the proportions specified in Section 2.06 of this Agreement.

## Capital Accounts

**Section 2.15.** An individual capital account shall be maintained for each Partner. Each Partner's capital account shall consist of such Partner's contribution to the initial capital, any additional contributions to the Partnership capital made by that Partner pursuant to this Agreement, and any amounts transferred from such Partner's income account to Partnership capital pursuant to this Agreement.

## Income Accounts

**Section 2.16.** An individual income account shall be maintained for each Partner. At the end of each calendar year each Partner's share of the Partnership net profits or losses shall be credited or debited to, and such Partner's withdrawals during the year deducted from, that income account.

## Amounts in Income Accounts

**Section 2.17.** Any amount credited to a Partner's income account on any regular Partnership accounting provided for in this Agreement (as reduced by any unpaid capital contribution) shall constitute a liability of the Partnership to that Partner payable without interest as provided in Section 2.09.

# ARTICLE III. RIGHTS AND DUTIES OF PARTNERS

## Management

**Section 3.01.** The Partnership's day to day authority and powers will be exercised by or under the authority of the Managing Partner, who will initially be Randy H. McMurray. When a vacancy occurs in the position of Managing Partner, a new Managing Partner shall be elected by the vote of a majority of the Partners by number. Issues deemed significant by any Partner will require a majority vote of the Partners by number.

## Partnership Meetings—Notice

**Section 3.02.** A meeting of the Partners may be held at the office of the Partnership at any time during regular business hours on the call, without notice, by any Partner. Alternatively,

a meeting of the Partners may be held on five (5) days notice in writing to each Partner specifying the time, place and purpose of such meeting signed by any Partner (unless all Partners agree in writing to waive such notice requirement),

## Prohibited Acts

Section 3.03.  No Partner shall, without the consent of all other Partners:

(a)   Loan any Partnership funds;

(b)   Tender any professional services to any person if requested not to do so by the other Partners;

(c)   Incur any obligations in the name of or on the credit of the Partnership except in the ordinary course of the Partnership business; or

(d)   Become bail, surety, or endorser for any other person. The Partnership shall be indemnified for any losses it sustains because of the breach of this Section by the Partner committing the breach.

## Personal Debts

Section 3.04.  Each Partner shall pay and discharge that Partner's own separate obligations as they become due and shall protect the other Partners and the Partnership from all costs, claims, and demands relating to his or her personal obligations.

## Assignment of Interest

Section 3.05.  No Partner shall sell, assign, mortgage, hypothecate, or encumber any interest in the Partnership.

## Professional and Community Organizations

Section 3.06.  As an ordinary and necessary expense of its business, deductible before determination of net profits, the Partnership (and each Partner thereof) shall maintain membership in whatever professional and civic organizations are necessary or are determined by a majority of the Partners by number to be desirable for the practice of its profession.

## Expulsion of a Partner

Section 3.07  Any Partner may be expelled from the Partnership as provided in this Section.

(a)   Expulsion of any Partner shall become effective on the adoption by a unanimous vote of the Partners, excluding the vote of the expelled Partner, at a meeting held after five (5) days written notice has been given to the expelled Partner, of a written resolution finding that:

(1)     The Partner or its Shareholder has engaged in personal misconduct or a willful breach of this Agreement of such a serious nature as to render the Partner's continued presence in the Partnership detrimental to the other Partners or the Partnership;

(2)     The Partner or its Shareholder has been disbarred or suspended for more than twelve months as a member of the California Bar;

(3)     The Partner or its Shareholder has resigned from the California Bar; or

(4)     The Partner or its Shareholder has been convicted by final action of any court of any offense punishable as a felony or involving moral turpitude.

(b)     The expelled Partner's Partnership Interest shall be terminated upon the expulsion becoming effective and such Partner shall be entitled to payment as provided in Section 4.09.

### Life Insurance

**Section 3.08.** The Partnership shall have the right, but not the obligation, to obtain insurance on the life of any Shareholder, and the Partners agree that its Shareholder shall cooperate in connection the application for such insurance. The cost of such insurance shall be an expense of the Partnership. Twenty-five percent (25%) of the proceeds of such insurance shall be used by the Partnership to replace the services of such Shareholder and the balance of such insurance shall be paid to fund the buyout of a Departing Partner whose Shareholder dies. A Departing Partner shall have no other interest in such insurance proceeds and the Partnership shall have no obligation to use in excess of seventy-five percent (75%) of such proceeds to pay a Departing Partner under Section 4.09.

### ARTICLE IV. TERMINATION OF PARTNERSHIP

### Dissolution of Partnership

**Section 4.01.** The Partnership shall be dissolved on the occurrence of any of the following (an "Event of Dissolution"): (a) an agreement of the Partners to dissolve the Partnership, or (b) the withdrawal, expulsion, disqualification from the right to practice law in California or bankruptcy of a Partner or the permanent disability, bankruptcy, disqualification from the right to practice law in California or death of a Shareholder. In the case of an Event of Dissolution under clause (b) of the preceding sentence, the Partner whose status triggers the dissolution shall be referred to as the "Departing Partner". Upon the occurrence of an Event of Dissolution, unless the remaining Partners elect to continue the business of the Partnership, no further professional services shall be rendered in the Partnership name and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of the Partnership. Maintenance of offices to effectuate the winding up or liquidation of the Partnership affairs shall not be construed as a continuation of the Partnership; provided that, absent an agreement of the Partners to dissolve the Partnership, the remaining

-7-

Partners may elect to continue the Partnership in which case the Departing Partner shall be paid for its Partnership Interest as provided in Section 4.09.

## Continuing Duties

**Section 4.02.** Notwithstanding the foregoing, in the event of dissolution, each Partner owes a duty to the Partnership and its clients to complete all unfinished work and each Partner selected by a client to continue such work shall hold the other partners and the Partnership harmless in that regard. In addition:

(a)    Each Partner warrants and represents that it shall not at any time aid, abet, assist or encourage a client or any other third party in litigation between a client of the Partnership on one hand, and the Partnership on the other hand, concerning work performed by the Partnership for the client, including but not limited to, the client's obligation to pay the Partnership for services rendered to the client on the client's behalf. Nothing contained herein is intended to or shall be construed to interfere with or violate existing statute or case authority requiring persons to comply with subpoenas duly issued and properly served.

(b)    All Partners covenant to cooperate in every regard in the winding up on the Partnership affairs and, without limiting the generality of the foregoing, will refrain from the following conduct:

(1)    transferring Partnership assets;

(2)    failure to comply with client directives to turn over client files;

(3)    refusal to sign substitutions of attorney forms on behalf of the Firm;

(4)    removal of client files from the offices of the Partnership without noting on a permanent log that it is available for inspection by any party or counsel.

(5)    refusal any other Partners access to the Firm offices;

(6)    removal of any Partnership books of account of records;

(7)    refusal of access to personal effects, office forms, files, computer stored data and equipment; and

(8)    tampering with information found in computers and files used by the firm or any member of the Partnership.

(c)    Upon dissolution, any Partner remaining in the space occupied by the Partnership shall pay to the Partnership the fair market rental value for the rent for that space until such time as it shall vacate the premises.

(d)     Each Partner shall be allowed to receive in an in-kind distribution of the furniture in its office at an evaluation set by the appraiser who appraises all the other office furniture in the suite for purposes of sale and liquidation, or at a value as agreed upon by the Partners.

## Liquidation

**Section 4.03.** If the Event of Liquidation is due to the withdrawal, disqualification from the practice of law, or bankruptcy of a Partner or the death, disability, disqualification from the practice of law or bankruptcy of a Shareholder, the remaining Partners (collectively, the "Liquidator") shall have the responsibility to wind up the affairs of the Partnership. In all other cases, Randy H. McMurray, P.C. shall serve as the Liquidator of the Partnership. The Liquidator shall be solely responsible for the winding up of the Partnership's affairs and without any required approval or consultation with the remaining Partner which responsibility shall include but not be limited to:

(a)     Advising all clients of the dissolution and requesting instructions regarding the assignment of ongoing matters and the disposition of client files.

(b)     Establishment of procedures and policies and controls governing the operation of the Partnership during its dissolution.

(c)     Payment of legitimate creditors of the Partnership and provision for its liabilities.

(d)     Providing access to all Partners to those law Partnership assets and services necessary for their individual practices. These include mail and phone access, legal forms, legal documents stored on computer and the library.

(e)     Maximizing the liquidation's proceeds, including but not limited to the continuation of the billing and collection process, the sale of Partnership's assets and the management of and investment in cases until a final distribution is made to the Partners.

(f)     Identification and marshaling of hidden assets, including work already performed and expenses incurred in pending contingent fee cases; monies held in trust; and prepayments, such as rent, security deposits, book subscriptions and insurance premiums.

(g)     Safekeeping of client files and documents, as well as the retention or return of client retainer funds.

(h)     Communications with Partners, covering such matters as client billing, collections, tax consequences and conversion of profit sharing or pension plans into plans at Partners' new practice locations.

(i)        Negotiation of the termination of the real and personal property Leases in which the Partnership is the lessee.

(j)        Accumulate and maintain adequate financial reserves to meet future liabilities, including such reserves as may be needed for records storage, dissolution activities, auditing, legal advice, the deductible amount for each potential malpractice claim and any other insurance coverage.

(k)       Establish necessary fiscal control over dissolution accounting.

(l)        Completion of legal formalities for the dissolution of the Partnership in accordance with law.

(m)      Assignment of all client files and incomplete legal matters and all related matters to appropriate Partners in accordance with written instructions of the clients or in the absence of such instructions in accordance with law and the Rules of Professional Conduct.

(n)       Providing periodic (not less than quarterly) financial and administrative reports of the dissolution procedure to the Partners.

## Dissolution Administrator

**Section 4.04.**   The liquidator may engage a dissolution administrator ("Dissolution Administrator") and staff upon such terms and conditions as may reasonably be required to assist the Liquidator in fulfilling its obligations and to carry out the key administrative functions in the dissolution process such as but not limited to:

(a) Financial controls.
(b) Client billing and accounts receivable.
(c) Data and word processing operations.
(d) Placement of former legal and nonlegal employees.
(e) Complete payroll accounting.
(f) Filing of quarterly and final returns.
(g) File and records disposal.
(h) The termination of contracts.
(i) Redirection of mail and telephone forwarding.
(j) Disposal of furniture, fixtures, equipment and library.
(k) Establishment of separate permanent files for all dissolution activities.
(l) Obtaining necessary insurance coverage as determined by the Liquidator.
(m) Maintain control over client files and documents held in safe deposit.
(n) Provide access to all Partners to Partnership legal research papers and word processing documents.

## Costs of Liquidation

**Section 4.05.** The Partnership assets shall be used to pay or provide for all debts of the Partnership and all costs of liquidation. The costs of liquidation shall include reasonable compensation of the Liquidator, Dissolution Administrator and to such attorneys and staff who shall be assigned uncompleted client matters for which no fees are due from the client in such matters.

## Distribution to Partners

**Section 4.06.** After payment of the debts of the Partnership and costs of liquidation, the remaining assets shall, upon dissolution and liquidation of the Partnership, be allocated among the Partners pro rata in accordance with the following order or priorities:

(a)     For sums advanced to or for the benefit of the Partnership.

(b)     For accrued and unpaid salary or compensation due to such Partner as disclosed by the income account (defined in Section 2.16).

(c)     The Capital Account of each Partner.

(d)     To the Partners in accordance with their Partnership Interests.

Any indebtedness of any Partner to the Partnership as of the date of dissolution of the Partnership shall be deducted from each distribution to which it may otherwise be entitled pursuant to this Section to the extent required to satisfy and discharge such indebtedness.

## Limitations on Effect

**Section 4.07.** Sections 4.02 through 4.06 shall neither be constructed to affect the rights of Partners vis-à-vis other creditors of the Partnership nor to relate to any distributions under any qualified profit sharing plan or qualified pension plan of the Partnership now or hereafter in effect.

## Files

**Section 4.08.** On any dissolution of the Partnership, the Partner who has usually rendered professional services for a particular client shall be entitled to the client's file unless the client requests that a different disposition be made of that file. A Partner who withdraws from the Partnership shall be entitled only to the records or files of those clients for whom such withdrawing Partner regularly performed professional services as a member of the Partnership and for whom such withdrawing Partner also rendered professional services before become a member of the Partnership. The estate of a deceased Partner shall not be entitled to any records or files of the Partnership except records and files relating to personal matters of the deceased Partner.

## Payment to a Departing Partner

Section 4.09.  In the event of a Dissolution Event after which the Partners (other than the Departing Partner) elect to continue the business of the Partnership, the Partnership shall pay to the Departing Partner, beginning not later than 90 days of the date of the Dissolution Event, the following amounts:

A.      If the Dissolution Event is the death of a Shareholder, and the Partnership owns or is the beneficiary of insurance on the life of such Shareholder, then the Partnership shall pay to the Departing Partner or to the estate or personal representative of the deceased Shareholder, seventy-five percent (75%) of the proceeds of such insurance as payment in full of the Departing Partner's interest in the Partnership; provided, however, if total amount payable to Departing Partner or to the estate or personal representative of the deceased Shareholder under this Paragraph A of Section 4.09 is less than $750,000, then, in addition to the payment provided for in this Paragraph, the Partnership shall pay to the estate or personal representative of the deceased Shareholder the amounts provided for in Paragraph B of Section 4.09.

B.      Except as provided in Paragraph A of Section 4.09, the amount of such Partner's Capital Account and any undisbursed balance in such Partner's income account as of the end of the month following such Dissolution Event (taking into account all expenses of the Partnership to the end of such month). The Partnership shall pay to the Departing Partner within 30 days of receipt by the Partnership, fifty percent (50%) of the First Partner Allocation for such Partner based on the status of such Partner as of the Dissolution Event (e.g., if the Departing Partner was the Managing Partner as of the Dissolution Event, such Partner's share of the First Partner Allocation shall be the Managing Partner's share), as to all cases pending as of the Dissolution Event when such matter is concluded following the Dissolution Event.

## Payments Owed to Partnership by Departing Partner

Section 4.10.  In the event a client of the Partnership directs in writing that its client matter shall be transferred from the Partnership to the Departing Partner or its Shareholder, then in such event, the Departing Partner shall pay to the Partnership, within 30 days of receipt by the Departing Partner or its Shareholder, fifty percent (50%) of the amount of attorneys fee received on the resolution, by settlement or judgment, for such matter. The Partnership shall allocate such receipts between the Partners as provided for in Section 2.06.

## Jewel Waiver

Section 4.11.    The Partnership, each Partner and each Partner's Shareholder hereby waive and relinquish any and all rights to any interest in the unfinished business of the Partnership following a Dissolution Event and to any accounting with respect to such unfinished business, except as provided in this Section 4.

## ARTICLE V. DISPUTE RESOLUTION

Section 5.01.  In the event of any unresolvable disagreement between the Partners, or with any successor in interest of a deceased Shareholder of a Partner, the sole remedy available to the complaining party shall proceed by way of an action brought and maintained in Los

Angeles County Superior Court by reference to a retired Superior Court judge from such county, pursuant to <u>California Code of Civil Procedure</u> Section 638 <u>et. seq.</u>

Section 5.02. The retired judge shall be chosen as follows: The complaining party must, within 30 days of filing the action, serve on each party named as a defendant in the action the complaint, together with a notice of intent to proceed under this Section and a list of at least five (5) retired Los Angeles County Superior Court judges that the complaining party considers to be competent and qualified to try the case. The party proceeded against shall choose one of the judges from the list submitted by the complaining party, and that judge shall hear the case, but if the party proceeded against rejects all of the judges named on said list, then the Presiding or the Assistant Presiding Judge in Los Angeles shall choose the reference judge. Such retired Superior Court Judge shall be judge for all purposes (including, without limitation (i) ruling on any and all discovery matters and motion and any and all pretrial or trial motions, (ii) setting a schedule of pretrial proceedings, and (iii) making any other orders or rulings a sitting judge of the Superior Court would be empowered to make in any action or proceeding in the Superior Court) and shall try and decide any or all of the issues in any action or proceedings arising out of a dispute arising out of this Agreement (whether of fact or law, or a combination thereof) and to report a finding and judgment thereon. Any such findings and judgment shall be entered thereon in the same manner and with the same effect as if the action or proceeding had been tried by a sitting judge of the Superior Court.

Section 5.03. If <u>California Civil Procedure Code</u> Section 638 <u>et. seq.</u> are modified legislatively or judicially in a manner that would render the reference contemplated by this Section impossible, then the complaining party shall proceed in accordance with the rules of JAMS, or its successor, as then in effect. The judgment upon the award rendered in such arbitration shall be final and binding upon all parties and may be entered in any court having jurisdiction thereof.

Section 5.04. During the pendency of any such action or proceeding and before the entry of any judgment therein, each of the parties to such action or proceeding shall bear equal shares of the fee charge, and costs incurred, by the retired Superior Court judge or the arbitrators, as the case may be, in connection with performing the services provided under this Section.

## ARTICLE VI. MISCELLANEOUS

### Additional Partners

Section 6.01. The Partners may by a vote of a majority of the Partners by number admit additional Partners and fix the capital contributions, if any, to be made by Partners, the manner in which such capital contributions are to be paid, the interest in profits and losses of any additional Partners, and the voting points of any additional Partners. Before being admitted, each such additional Partner must agree in writing to be bound by the provisions of this Agreement.

[Signatures follow on next page.]

IN WITNESS WHEREOF, the Partners have executed this Agreement as of the date first written above.

RANDY H. MCMURRAY, P.C.,
a California professional corporation

By: _____
RANDY H. MCMURRAY
President

BRIAN T. DUNN, P.C.,
a California professional corporation

By: _____
BRIAN T. DUNN,
President

THE BARRETT LAW FIRM,
a Professional Corporation

By: _____
JOSEPH M. BARRETT
President

-14-

## CONSENT OF SPOUSE

The undersigned (each of whom is the spouse of one of the Shareholders of one of the Partners whose signature appears on the foregoing Agreement) hereby consents to her spouse's execution of the foregoing Partnership Agreement, acknowledges that the Partnership is a business interest that is subject to the primary management and control of her spouse, agrees to be bound by the terms of the attached Partnership Agreement, and hereby irrevocably appoints his or her spouse as agent for the purposes of executing and performing any actions directly or indirectly relating to the Partnership and the foregoing Partnership Agreement, including, without limitation, amendments and supplements to, or waivers, consents, or approvals under the Partnership Agreement, without further signature or consent of or notice to him or her.

DATED: July 2, 2010.


Dated  July 8, 2010  _____
                      YANA HENRIKS McMURRAY


                      _____
                      JOELLE BARRETT

-15-

# EXHIBIT 3

Draft 12.27.06

### OPERATING AGREEMENT
### AND MEMO OF UNDERSTANDING
### FOR THE COCHRAN FIRM—LOS ANGELES

The undersigned parties hereby agree to confirm that they are partners and will be engaged as such in a law practice in Los Angeles, California, and the counties of Los Angeles, Orange, Ventura, Riverside and San Bernardino and all counties south of Los Angeles (including cities of San Bernardino, Palm Springs, Oceanside, San Diego, etc.), under the name of The Cochran Firm—Los Angeles and desire to continue the business and affairs of such practice in accordance with the provisions hereinafter set forth.

### PREFACE

WHEREAS, the Los Angeles office of The Cochran Firm is currently owned in its entirety by Samuel A. Cherry, Jr., J. Keith Givens and Jock M. Smith (National); and

WHEREAS, National currently funds all operating, practice, administrative and marketing costs of the L.A. Office; and

WHEREAS, Randy McMurray and Brian Dunn are currently compensated based on production, with all other staff and lawyers salaried; and

WHEREAS, there is approximately $1.75 Million in outstanding case expenses with no other debt; and

WHEREAS, the overall purpose of this Agreement, as set out herein, is to transfer National's ownership to Randy McMurray and Brian Dunn upon the fulfillment of the following responsibilities, as set out herein.

### *Randy McMurray and Brian Dunn Agree to:*

1.      Devote full time to Los Angeles practice.

2.      Assume full operational, practice, management, administrative and marketing control of the Los Angeles office.

     (a)      To recruit, hire, evaluate and discharge all personnel in the Los Angeles office.

     (b)      To set salary and benefit levels for all personnel in the Los Angeles office.

1

(c)     To oversee, administer and conduct the day-to-day business and affairs of the Los Angeles office.

(d)     To establish and maintain professional relations.

(e)     To develop new business opportunities.

(f)     To handle premises and landlord/tenant problems.

(g)     To obtain appropriate and customary insurance coverage, including general, professional and workmen's compensation insurance.

(h)     To maintain the existing fixtures, furniture, computer equipment and software.

(i)     Participate in conference calls with National partners (two per month) to discuss the Firm's National and Regional business affairs.

(j)     Conduct Los Angeles staff and attorney meetings each month to address matters of interest and concern to your office.

(k)     Make decisions in consultation with the National partners with regard to the marketing of the Los Angeles office (TV, radio, yellow pages, etc.)

3.     Assume full financial responsibility to fund everything that is currently being funded by National.

4.     Execute notes personally obligating the repayment of the outstanding $1.75 Million and relieving National of this responsibility.

5.     Pay National 25% of the gross fees earned on existing case inventory and 20% on cases signed after January 1, 2007.  The percent payable to National may be reduced in future years, provided certain fee production and marketing milestones are met.

6.     Participate in National ad programs.

7.     Assume full financial and management responsibility for any pending or potential labor disputes (Shawn Chapman Holley, Eric Ferrer, et al.).

8.     Hold National harmless for all Los Angeles issues.

9.     Fully comply with operating requirements of approved National case management software (Client Profiles).

2

10.     Pay THE FIRM, INC. $1000.00 per month for use of 1-800-THE FIRM. This charge includes the toll free access charges.

11.     Comply with the Case Attribution Dispute Resolution Memo.

## National Agrees to:

1.     Pay for the production and editing costs of TV ads.

2.     Provide Call Center services to accept and screen calls. This would include toll free and forwarding services on local Los Angeles number.

3.     Allow use of all existing fixtures, furniture, equipment, etc., in Los Angeles office for a period of three (3) years.

4.     Grant the exclusive right to operate and market THE COCHRAN FIRM LA in the approved geographical areas.

## General Terms:

1.     National will own all phone numbers used in connection with the Los Angeles office.

2.     The accountant for the Los Angeles office will be selected by National.

3.     Web activities will be restricted as per existing memos.

4.     All actions taken by the Los Angeles office, including the addition of new partners, lawyers, and staff will be governed by performance standards consistent with maintaining the legacy of Johnnie L. Cochran, Jr.

## Equity Transfers and Profit Allocations:

1.     A new legal entity will be formed for the operation of the Los Angeles office.

2.     Effective January 1, 2007, Randy McMurray and Brian Dunn will receive all of the profits and 50% of Los Angeles equity.

3.     The remaining 50% will be transferred when:

(a)     Case expense debt of approximately $1.75 Million paid (bad debt and good);

3

(b)     National is reimbursed for capital assets in the Los Angeles office at fair market value; and

(c)     Two (2) year operation without default of any of the obligations contained herein.

## *Default Provisions:*

1.     All terms of this Agreement are material.

2.     Any breach, at the election of National, can result in forfeiture of ownership interest.

3.     *Fiduciary duty.*  Each Partner acknowledges a fiduciary duty to all Partners and the Partnership.  Consistent with that duty, each Partner acknowledges that such fiduciary duty would clearly be violated if a Partner, directly or indirectly, attempted to lure firm clients (even those a Partner brought to the firm and personally represented) away from the firm to any other firm with which the Partner may ultimately be a member or receive financial compensation or consideration therefrom.  Accordingly, in the event (1) an attorney elects to terminate his relationship with the Partnership; or (2) the firm elects to remove the attorney as Managing Partner under the provisions as set out herein; or (3) any Partner elects to voluntarily withdraw, he shall not communicate with any such firm client until after proper notice of anticipated departure from the firm and communication shall be by a letter approved by the Partnership to firm clients.  Such letter would adhere to the guidelines established by the ABA Committee on Ethics and Professional Responsibility, which sets forth the following guidelines for notice to clients:

> "(a) the notice is mailed; (b) the notice is sent only to persons with whom the lawyer had an active lawyer-client relationship immediately before the change in the lawyer's professional association; (c) the notice is clearly related to open and pending matters for which the lawyer had direct professional responsibility to the client immediately before the change; (d) the notice is sent promptly after the change; (e) the notice does not urge the client to sever a relationship with the lawyer's former firm and does not recommend the lawyer's employment (although it indicates the lawyer's willingness to continue his responsibility for the matters); (f) the notice makes it clear that the client has the right to decide who will complete or continue the matters; and (g) the notice is brief, dignified, and not disparaging of the lawyer's former firm."

4

### Miscellaneous:

All furnishings in Johnnie's office and any of his effects and memorabilia will remain the property of National and must be preserved *in violate*, unless otherwise agreed to in writing by National.

### Binding Effect:

All parties to this instrument acknowledge that this is a summary memo agreement and that it is contemplated that the parties shall execute more formal documents setting out in greater detail the summary provisions contained herein. However, all parties agree that this memo is enforceable by its terms.

### Dispute Resolution:

The parties agree to arbitrate any disputes.


Dated: _____        _____
                              **SAMUEL A. CHERRY, JR.**


Dated: _____        _____
                              **J. KEITH GIVENS**


Dated: _____        _____
                              **JOCK M. SMITH**


Dated: _____        _____
                              **RANDY McMURRAY**


Dated: _____        _____
                              **BRIAN DUNN**


5

# EXHIBIT 4

# Sam Cherry

| | |
|---|---|
| **From:** | Randy McMurray [RMcMurray@CochranFirm.com] |
| **Sent:** | Thursday, August 30, 2007 5:46 PM |
| **To:** | Sam Cherry |
| **Subject:** | FW: LA Operating agreement continued |
| **Importance:** | High |

**Attachments:** LA operating agreement08-21-07 (2).pdf

the Agreement is attached.
Randy

---

**From:** Barvie Koplow
**Sent:** Thursday, August 30, 2007 3:11 PM
**To:** Randy McMurray
**Cc:** Brian Dunn
**Subject:** FW: LA Operating agreement continued
**Importance:** High

Randy - reminder to resend.  This was the old agreement language for sections 3.4 and 3.5, because we need to secure SOUTH CALI EXCLUSIVITY regardless of what type of case it is.  The revised version, just doesn't protect us.  The last thing we want is for another "Cochran Firm" to be allowed to operate and handle cases in our jurisdiction.

All they should be worried about is the fees, which is why section 2.3 was added.

---

**From:** Randy McMurray
**Sent:** Wednesday, August 22, 2007 2:30 PM
**To:** 'Sam Cherry'
**Cc:** Brian Dunn
**Subject:** LA Operating agreement continued

I forgot the attachment.
Randy

6/22/2012

## MEMORANDUM OF UNDERSTANDING REGARDING
## THE COCHRAN FIRM – LOS ANGELES OFFICE

This Memorandum of Understanding ("MOU") is effective as of January 1, 2007, by and between Cochran, Cherry, Givens & Smith, P.C., d/b/a The Cochran Firm, a National law firm with its administrative offices located in Dothan, Alabama ("National") and Randy McMurray and Brian Dunn (together "Mc & D").

## RECITALS

**WHEREAS,** the Los Angeles office of The Cochran Firm is currently owned in its entirety by Samuel A. Cherry, Jr., J. Keith Givens and Jock M. Smith ("National"); and

**WHEREAS,** National prior to January 1, 2007, funded all operating, practice, administrative and marketing costs of the L.A. Office; and

**WHEREAS,** Mc & D currently co-manage the Los Angeles office and are currently compensated based on a percentage of fees generated, with all other staff and lawyers salaried; and

**WHEREAS,** National desires to divest its ownership of the Los Angeles office and Mc & D desire to purchase and operate the Los Angeles office as a Cochran Firm Regional Office; and

**WHEREAS,** the overall purpose of this MOU is to establish an Interim Operating Agreement that governs the operation, administrative and financial responsibilities and profit and loss allocation until all rights, duties, assets and liabilities, and other incidents of ownership of the Los Angeles office is completely separated from National and transferred to Mc & D.

### PURPOSE AND OBJECTIVE OF
### INTERIM OPERATING AGREEMENT

It is the intent of the parties that National will be transferring to Mc & D the incidents of ownership of The Cochran Firm – Los Angeles Office  The following Interim Operating Agreement for The Cochran Firm – Los Angeles shall govern the operation, administration, duties and profit and loss allocation until National ownership is completely transferred to Mc & D.

1

**Premises considered,** the parties hereto agree as follows:

## RANDY McMURRAY AND BRIAN DUNN REPRESENT AND AGREE TO:

1.1    Organize a new legal entity, THE COCHRAN FIRM – LOS ANGELES, (L. A. Regional) as a separate entity for purposes of licensing, insurance and tax reporting requirements for the operation of the Los Angeles office. L. A. Regional will operate as a Regional Office of The Cochran Firm and will have all the rights, duties and responsibilities afforded independent Regional Offices of The Cochran Firm. The reference term "L. A. Regional" is used in this MOU for identification purposes only. The terms, "Los Angeles Office," "Cochran L.A." and "Cochran Firm – Los Angeles" are used synonymously herein.

1.2    Devote their full time ability, energy and best endeavors to be used and employed in the practice of law associated with L. A. Regional and shall have no interest in any other firm related to the practice of law.

1.3    Assume full operational practice, management, administrative, marketing and financial control of the Los Angeles office.

1.4    Assume full financial responsibility to fund necessary operating expenses that had been funded by National and to operate L. A. Regional as an independent Cochran Regional office.

1.5    Acknowledge that National has current advanced case expenses, "Pending Case Costs" associated with the operation of the Los Angeles office of $469,776.86 as of 9/1/07.

1.6    Attached hereto as Exhibit "A" is a new promissory note for the amount of the "Pending Case Costs."

1.7    Repayment of the principal and interest on the note(s) referenced in paragraph 1.6 above, except as provided in paragraph 2.4 below, shall be the sole responsibility of Mc & D and shall be paid as follows:

> a.  *Pending Case Costs.* The attached Exhibit "B" identifies the pending case costs and the cases associated. Pay monthly interest payments on accrued unpaid principal balance of Pending Case Costs. The principal on these costs shall be paid as each case is resolved, by judgment, settlement, dismissal, or otherwise, including when Mc & D cease to represent the plaintiff in such matter, then, within 60 days of such resolution, shall pay a sum equal to the amount of costs, plus accrued interest, in connection with such matter. The parties understand and agree that there may be occasions when the resolution of a matter does not involve any payment to the Los Angeles office, which shall, nevertheless, be obligated to repay the costs associated with such matter to the bank on the final resolution of the

2

matter. Notwithstanding the foregoing, Mc & D and the Los Angeles office shall be obligated to fully repay the entire Pending Case Costs, plus any accrued unpaid interest applicable thereto, on or before five years after the effective date.

1.8     Following the effective date of this Agreement, Mc & D shall indemnify, defend and hold National harmless from any and all claims, costs and expenses of the Los Angeles office arising after December 31, 2006.

1.9     Fully comply with the operating requirements of the approved National case management software (Client Profiles).

1.10    Agrees to participate in any National marketing program sponsored by The Cochran Firm and, with participation, shall have the exclusive right of first refusal for any and all case inquiries, the subject matter and parties of which qualify for venue in the Territory resulting from the National marketing program. National shall endeavor to track all inquiries generated by the National marketing program by inquiry, location, case subject matter and case viability and provide such tracking data to Mc & D on a monthly or project basis.

1.11    Pay THE FIRM, INC. $1,000.00 per month for use of 1-800-THE FIRM. This charge includes the toll free access charges.

1.12    Insurance. The L. A. office will maintain adequate general liability and work comp insurance for the operation of L. A. Regional. The Los Angeles office currently has a separate policy of professional negligence insurance. The policy provides for coverage amounts of $2,000,000.00 per occurrence and aggregate. The policy coverage dates are 1/25/2007 – 1/25/2008. L. A. Regional agrees to acquire equivalent coverage and prevent any lapses in coverage.

## FEES PAYABLE TO NATIONAL

2.1     Mc & D agree to pay National 22.5% of the gross fees earned on contingency fee cases existing in the Los Angeles office as of December 31, 2006 (Exhibit C), and 17.5% of the gross fees earned on contingency fee cases signed after January 1, 2007 up to a total of $2,000,000.00 net fees to National. Thereafter, Mc & D agree to pay National 10.0% of the gross fees earned on contingency fee cases. For purposes of the foregoing sentence, "gross fees" does not include cost reimbursements or sales taxes. Such referral fees shall be payable on the 25th day of each month for receipts during the preceding month. Each such payment shall be accompanied by an accounting of the revenues received and referral fee disbursed. Even if no fees are generated during any month there is an obligation to submit a monthly accounting of revenues.

3

2.2    Mc & D agree to pay 10% of fees earned on all non-contingency fee cases such as fees generated from referred cases or other contract rate work.

2.3    Fees paid to National on criminal defense and non-English cases produced from sources other than marketing paid for by The Cochran Firm Los Angeles will be determined in separate agreements.


## NATIONAL AGREES TO:

3.1    Pay for the production and editing costs of TV ads for the Los Angeles office, as well as National marketing ads.

3.2    Provide Call Center services to accept and screen calls. This would include toll free and forwarding services on local Los Angeles number. Note that the Call Center services are an available option to L. A. Regional and not a requirement. Call inquiries may be routed directly to the Los Angeles office, if requested.

3.3    Allow use of all existing fixtures, furniture, equipment, etc., in the Los Angeles office rent free by the L.A. Regional entity.

3.4    Grant the exclusive right to operate and market THE COCHRAN FIRM – LOS ANGELES in the Los Angeles TV market, which includes the counties of Inyo, Kern, Los Angeles, Orange, Riverside, San Bernardino, Ventura, San Diego and Imperial.

3.5    Grant exclusive right of first refusal for any and all case inquiries (from any source) that would be within the L.A. Regional office's jurisdiction outlined in Section 3.4. This includes, but is not limited to, any and all civil and criminal case inquiries.


## INTERNET

4.1    Mc & D may maintain a local web site for the Los Angeles office. However, any such local web site shall contain a link to and be a subpart of the National web site, which is now located at http://www.cochranfirm.com, on its home page, contact page and any other pages deemed appropriate by the National Partners and/or the Firm's Web Site Committee.

4.2    *Restrictions.* No Regional Office may use any marketing technique, including without limitation key word bidding, pay per click or other search term strategies, to market their Local Web Sites for National Search Terms or Local Search Terms which contain key words or phrases associated with other Regional Office Territories without prior written approval of the National Partners and/or the Firm's Web Site Committee.

4.3    *Use of Local Search Terms.* Each Regional Office may use and market Local Search Terms to market their Local Web Sites in any manner that they deem appropriate within

4

the spirit and intent of The Cochran Firm image. However, each Regional Office must submit its Local Search Terms to The Firm's Web Site Committee and the National Partners in order to establish a record of the terms used by various offices. The National Partners and the Firm's Web Site Committee reserve the right to deny the right of the Regional Offices to use any Search Term that they deem inappropriate, offensive and not within the spirit of the firm's image, or National Internet presence or in violation of the restrictions regarding National Search Terms.

4.4    *Internet Referral Protocol.* Every case inquiry, potential case or contact made to a Regional Office Web Site of a Regional Office from any state, city, area code or geographic location for which that Regional Office does not hold the right to market and practice law on behalf of The Cochran Firm shall be sent by that Regional Office to the appropriate Cochran Firm regional office or to the National Partners for distribution to the appropriate Regional Office which has the marketing rights for that Regional Office Territory.

4.5    *Internet Territorial Case Entitlement.* The National Partners shall grant to each Regional Office the exclusive right of first refusal for any case inquiry, potential case or contact involving a case which would be filed in a venue contained within the Regional Office Territory, which arises from any National Web Site or Local Web Site marketing efforts. In the event that the Regional Office refuses to accept or refer the case to another Cochran Firm regional office, the National Partners should be informed so they may redistribute the case to another Regional Office, which may be interested in handling the case.

4.6    *National Internet Marketing.* The National Partners will market the National Web Sites and will engage in the marketing of National Search Terms, and search engine optimization for the benefit of attracting new case inquiries, potential cases and contacts which will be forwarded to the proper Regional Offices as outlined in paragraph 4 above.

## PROFIT ALLOCATIONS

5.1    Subject to full compliance with this MOU, Mc & D will receive all of the profits of the Los Angeles office from January 1, 2007, forward.

## GENERAL TERMS

6.1    National will own all the rights to all local phone numbers used in connection with the operation of the Los Angeles office.

6.2    National will own all the rights to all toll free phone numbers used in connection with the operation of the Los Angeles office.

6.3    All actions taken by the Los Angeles office, including the addition of new partners, lawyers, and staff will be governed by performance and character standards consistent with maintaining the legacy of Johnnie L. Cochran, Jr.

6.4    This MOU does not contemplate that National will involve itself in the day-to-day

5

operations or the monitoring of the activities of legal and non-legal staff.  Further, National will have no control over the day-to-day functions of the office.

6.5     National shall have the right, at its sole expense, to audit the books and records of L. A. Regional up to four times a year.

6.6     Mc & D agree to maintain the former office of Johnnie Cochran at the premises in the conditions as of the date of Mr. Cochran's death (a) for so long as the family of Mr. Cochran permits L. A. Regional to retain its furniture, memorabilia and fixtures, and (b) during the current lease term of the premises.  In any event, no disposition of the office or its contents shall occur without the prior written notice to Sam Cherry, Keith Givens and Jock Smith, individually and separately.

## DEFAULT PROVISIONS

7.1     All terms of this Agreement are material.

7.2     Any breach, at the election of National, can result in forfeiture of the incidents of ownership interests that are being transferred as per the provisions herein.

## BINDING EFFECT

All parties to this instrument acknowledge that this MOU contains enforceable rights, as per its provisions, and that a failure to execute more formal documents setting out in greater detail the provisions contained herein shall not affect the enforceability of this MOU.

## WAIVER

Any provision of this MOU may be waived by the affirmative written consent of all of the parties.  No waiver shall have the effect of reducing the amount or altering the terms of any payment then being made pursuant to this Agreement.  The failure of any party to insist upon the strict performance of any covenant, term, condition or other provisions thereof, or default or breach in connection therewith, shall not be deemed to be waiver thereof.  The waiver of any covenant, term, condition or other provision hereof, or default or breach hereunder, shall not affect or alter this Agreement and each and every other covenant, term, condition or provision hereof.

## DISPUTE RESOLUTION

The parties will agree to submit any disputes under this MOU to binding arbitration in Los Angeles, California.

Dated: _____

_____
**SAMUEL A. CHERRY, JR.**


Dated: _____

_____
**J. KEITH GIVENS**


Dated: _____

_____
**JOCK M. SMITH**


Dated: _____

_____
**RANDY McMURRAY**


Dated: _____

_____
**BRIAN DUNN**

7

# ATTACHMENT "A"
# PENDING CASE COSTS
# PROMISSORY NOTE

**$469,776.86**                                             Date:_____

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay the order of Cochran, Cherry, Givens & Smith, P.C., the sum of Four hundred sixty nine thousand seven hundred seventy six and 86/100 dollars ($469,776.86), together with interest of 8.25% per annum on the unpaid balance.

Starting on September 1, 2007 and continuing thereafter from month to month until five years after the effective date above, the borrowers shall make payments of interest on accrued unpaid principal balance. The principal on this loan shall be paid as each related case is resolved, by judgment, settlement, dismissal, or otherwise within sixty (60) days of resolution of the case, no later than five years after the effective date above.

Should default be made in payment of any installments of principal or interest when due, the whole sum of principal and interest shall become immediately due at the option of the holder of this Note.   Upon default in making payment, and providing this note is turned over for collection, the undersigned agrees to pay all reasonable legal fees and costs of collection to the extent permitted by law.  This note shall take effect as a sealed instrument and be enforced in accordance with the laws of the state of Alabama.  All parties to this note waive presentment, notice of non-payment, protest and notice of protest, and agree to remain fully bound notwithstanding the release of any party, extension or modification of terms, or discharge of any collateral for this note.

**NOTICE TO BORROW:  A NEW NOTE MUTUALLY AGREED UPON AND SUBSEQUENTLY ISSUED MAY CARRY A HIGHER OR LOWER RATE OF INTEREST.**

_____
[Borrower signature]

_____
[Borrower printed name]

Cochran, Cherry, Givens & Smith, P.C. – Lender

Witnessed:

_____
[Witness's signature]

_____
[Witness's typed or printed name]

ATTACHMENT "B"
THE COCHRAN FIRM - LOS ANGELES
ADVANCED CLIENT CASE COSTS BY COCHRAN, CHERRY, GIVENS SMITH, P.C.

| CASE # | CASE STYLE | ATTY | projected resolution | Outstanding Case Costs payed by CCG&S |
|---|---|---|---|---|
| 49-3118 | JOHNSON & JOHNSON CLASS ACTION SUIT | CAS | LIEN | $37,573.84 |
| 49-3267 | YOUNT, STEVEN v. CITY OF SACRAMENTO | BTD | 2007 M09 | $19,172.47 |
| 49-3285 | WOODS, GWENDOLYN v. PAHRUMP RENTAL | RHM | APPEAL | $100,670.36 |
| 49-4101 | TORRENCE, ROBERT v. WESTERN SECURITY | BTD | 2007 M09 | $10,729.63 |
| 49-4138 | PRITCHARD, DOUGLAS v. PRODUCTION RESOURCE GROUP, LLC | BTD | 2007 M10 | $5,555.12 |
| 49-4171 | LESLIE, DIONNE V. MERVYNS | SCH | LIEN | $13,399.56 |
| 49-4241 | HENDERSON, EDWARD V HICKS | BTD | LIEN | $6,641.58 |
| 49-5005 | THOMPSON, as gal for KIRKSEY V ORLANDO | CAS | LIEN | $22,291.53 |
| 49-5006 | ZARATE, KRISTINA, et. Al. V. MADERA CTY | CAS | LIEN | $7,637.85 |
| 49-5023 | FOSTER, ISAIAH V SORGENFIRE, NATHAN L. | BME | 2008 Q2 | $4,167.79 |
| 49-5028 | CORONA v. BENNISON | BME | 2007 M10 | $5,313.01 |
| 49-5029 | HENRY-LEE, DEE v. ANTELOPE VALLEY | CAS | LIEN | $1,520.92 |
| 49-5031 | BLAKELEY, XAVIER V LA SALLE MEDICAL ASSOCIATION | MCA | 2007 M10 | $9,429.73 |
| 49-5033 | LE POINT, PAMELA v. CITY OF LOS ANGELES | BTD | 2007 M08 | $29,597.34 |
| 49-5034 | LEE v. CALIFORNIA PACIFIC MEDICAL CENTER | JMB | 2007 M10 | $14,398.22 |
| 49-5041 | CHMAIT, NABIL and GHANIA v. U.S.A | BTD | 2008 Q2 | $2,439.50 |
| 49-5042 | AWAGAH v. METROLINK | BME | 2008 Q1 | $14,382.82 |
| 49-5048 | TONEY, MARSHON v. LAC/MLK DREW MEDICAL CENTER | BTD | 2007 M08 | $3,791.46 |
| 49-5053 | BLACIC, MARJORIE v. SCOTT KERNAN | BTD | 2007 M08 | $4,953.28 |
| 49-5054 | HAYES, WINSTON v. COUNTY OF LOS ANGELES | BTD | 2007 M10 | $2,087.36 |
| 49-5057 | SAMARAH, MIKE v. U.S.A. | BTD | 2008 Q2 | $738.00 |
| 49-5062 | LEWIS, SHARON V. CITY OF MORENO VALLEY | BTD | APPEAL | $18,848.61 |
| 49-5066 | ESTATE OF HELEN MARTIN v. SOUTHERN CALIFORNIA EDISON | JMB | 2007 M09 | $5,139.83 |
| 49-5079 | WALLACE, MARGARET and CURTIS v. ERIC HANSON | BTD | 2008 Q1 | $8,004.73 |
| 49-5081 | MC DANIEL, MARILYN V. DEERE & | BTD | LIEN | $5,929.47 |
| 49-5085 | COSTELLO, RICK, et al. V. LA BREA AVENUE MOTORS | CAS | LIEN | $299.50 |
| 49-5088 | WALDEN V. KODHURI | RHM | LIEN | $2,219.13 |
| 49-5093 | ESTATE OF DAVID VIERA v. CITY OF EL MONTE | BTD | APPEAL | $21,678.69 |
| 49-5094 | COCHRAN, SKYLER v. COUNTY OF LOS ANGELES | BTD | 2007 M09 | $5,077.62 |
| 49-5096 | JACKSON v. UCLA MEDICAL CENTER | BME | 2007 M09 | $2,530.63 |
| 49-5103 | GREER v. DANIEL FREEMAN MEMORIAL HOSPITAL | MCA | 2008 Q4 | $541.42 |
| 49-5107 | GOINS-PHILLIPS v. KAISER FOUNDATION HOSPITALS | JMB | 2008 Q4 | $150.00 |
| 49-5111 | EZIRIM vs. VIEW PARK MANOR | BME | 2008 Q1 | $7,771.64 |
| 49-5115 | KEY, DANIELLE v. MICHOACAN ALIGNMENT | BME | 2007 M09 | $672.17 |
| 49-5116 | GREEN, VICTOR v. SOUTHWEST REAL ESTATE PURCHASI | MCA | 2007 M08 | $523.50 |
| 49-5121 | BROWN, MAKAYLA v. CITY OF RIVERSIDE | BTD | 2008 Q1 | $1,774.99 |
| 49-5124 | NOWELL v. FFE TRANSPORTATION SERVICES, INC. | MCA | 2007 M11 | $1,311.12 |
| 49-5128 | GAUDRY, LAWRENCE v. AMERICAN HONDA MOTORS, ET AL | MCA | 2007 M12 | $26,036.42 |
| 49-5130 | WINSTON, CLARENCE v. CENTINELA FREEMAN HOSPITAL | MCA | 2008 Q2 | $2,031.62 |
| 49-5131 | THOMAS, JERRY v. COUNTY OF LOS ANGELES | BTD | | $357.68 |
| 49-5137 | JOHNSON v. GEIGER | BTD | 2007 M12 | $1,853.72 |
| 49-5138 | CHRISTOPHER L. v. ARCHDIOCESE OF SOUTHERN CALIFORNIA | BTD | 2007 M12 | $794.50 |
| 49-5140 | WASHINGTON, TIANA v. CITY OF LOS ANGELES | BME | 2008 Q1 | $386.00 |
| 49-5141 | DAVIS, DONNA v. KADAS FAMILY TRUST | VKB | 2008 Q1 | $147.04 |
| 49-5149 | PERKINS v. TJ MAXX | BME | 2008 Q1 | $475.00 |
| 49-5154 | HATCHER, LARRY v. COSTCO WHOLESALE CORPORATION, ET AL | BME | | $11,186.02 |
| 49-5155 | WARREN v. CEVANKA | RHM | | $30.00 |
| 49-5157 | GOOSEBERRY, FREDRICKA v. CITY OF INGLEWOOD | BTD | 2008 Q1 | $390.00 |
| 49-5162 | NEROES, LEEDNA v BARRY GRUMMAN | JMB | 2008 Q1 | $300.00 |
| 49-5163 | TAYLOR, ELIJAH v. CENTINELA HOSPITAL MEDICAL CENTER | MCA | 2008 Q2 | $84.17 |

ATTACHMENT "B"
THE COCHRAN FIRM - LOS ANGELES
ADVANCED CLIENT CASE COSTS BY COCHRAN, CHERRY, GIVENS SMITH, P.C.

| | | | |
|---|---|---|---|
| 49-5165 TAYLOR, KEISHA NICOLE v. COUNTY OF LOS ANGELES | BTD | 2008 Q2 | $263.00 |
| 49-5166 MCGEE, SHARRON v. ST. JOSEPH HOSPITAL | MCA | 2007 M09 | $2,096.16 |
| 49-5167 DRAKE, ARETHA v. METROLINK | MCA | 2007 M08 | $5,424.70 |
| 49-5169 BRADFORD, DORIS v. COUNTY OF LOS ANGELES | MCA | 2007 M08 | $115.00 |
| 49-5174 SCOTT-MEEKS, ELOISE v. CENTINELA HOSPITAL | MCA | 2008 Q3 | $1,440.68 |
| 49-5176 GRIFFIN, SANDRA v. CITY OF LOS ANGELES | BTD | 2008 Q3 | $497.00 |
| 49-5177 GYEBI-FOSU, VICTORIA v. A & Y COMP | BME | 2007 M11 | $43.00 |
| 49-5179 BROCK, MILES v. LOS ANGELES SHERIFF | DHC | 2008 Q2 | $95.00 |
| 49-5180 ESTATE OF DOUGLAS STEVEN CLOUD v. | BTD | 2008 Q2 | $1,555.01 |
| 49-5182 ADKINS v PEEL | MCA | 2007 M09 | $54.75 |
| 49-5183 VILLERY v LOS ANGELES UNIFIED | BME | 2007 M12 | $675.65 |
| 49-5184 SMITH, TODD v COUNTY OF LA | BTD | 2007 M10 | $442.50 |
| 49-5185 BATTS v LAIDLAW | MCA | 2007 M12 | $10.00 |
| 49-5187 NEIMAN, PAULA  v INSPIRED BY MEDIA | MCA | 2008 Q2 | $390.70 |
| 49-5191 HETZEL, JOAN v BURLINGTON COAT | MCA | 2007 M12 | $408.66 |
| 49-5192 BAIDI, SAFIYA v CALIFORNIA HOSP | MCA | 2007 M12 | $30.00 |
| 49-5193 SCROGGINS, JEAN v. 21st CENTURY INSURANCE | MCA | 2008 Q4 | $5.00 |
| 49-5198 WARD-WALLACE, JOSEPH v. CITY OF LOS ANGELES | VKB | 2008 Q1 | $186.00 |
| 49-5199 DE GAONA, REFUGIA | MCA | | $6,120.79 |
| 49-5201 TAYLOR, MELVINA v WESTERN CONVALESCENT HOSPITAL | MCA | | $359.24 |
| 49-5202 CAMPBELL, PAMELA v. ELI RICH | BTD | 2008 Q1 | $6,117.10 |
| 49-5204 CORTEZ, TRACY v. RHONDA SMITH | VKB | 2007 M09 | $192.29 |
| 49-5205 GORDY, DARIOLE MECHELE v. WAL-MART STORES, INC. | JMB | | $31.00 |
| 49-5206 EDWARDS, CHARLES v. SCRIPPS MERCY HOSPITAL | BME | | $185.00 |
| 49-5208 SPARKS, JAMES v. | MCA | | $23.00 |

$469,776.86

08/15/2007

# Caselist Summary Report
Date Received:  thru 12/31/2006

**EXHIBIT C**

| File Number | Style | Attorney Referral | Type | Status | Incident Date | Statute Date | Last Action |
|---|---|---|---|---|---|---|---|
| 49-3118 | JOHNSON & JOHNSON CLASS ACTION SU CAS | | Labor | Lien | 08/27/2002 | 08/26/2003 | |
| 49-3267 | YOUNT, STEVEN v. CITY OF SACRAMEN1 BTD | | Police Miscondu | Appeal | 03/10/2001 | 12/18/2001 | 09/01/2004 |
| 49-3285 | WOODS, GWENDOLYN v. PAHRUMP REN RHM | | Wrongful Death | Appeal | 02/04/2001 | 02/03/2002 | |
| 49-3862 | TORRES, MARIA, ET AL. v. CITY OF MAD CAS | | Wrongful Death | Lien | 11/03/2002 | 11/03/2005 | 06/20/2003 |
| 49-4101 | TORRENCE, ROBERT v. WESTERN SECUR BTD | | Assault & Btry | Suit | 05/09/2003 | 05/08/2004 | 12/21/2006 |
| 49-4138 | PRITCHARD, DOUGLAS v. PRODUCTION I BTD | | Negligence | Suit | 12/26/2003 | 12/25/2004 | 11/15/2006 |
| 49-4171 | LESLIE, DIONNE V MERVYN'S | SCH | Assault & Btry | Lien | 03/20/2004 | 03/19/2006 | |
| 49-4209 | KRIEDLER, ROSIE, ET AL V FED EX | RHM | Auto Accident | Settled | 02/20/2003 | 02/19/2005 | |
| 49-4241 | HENDERSON, EDWARD V HICKS | BTD | Auto Accident | Lien | 11/07/2004 | 11/07/2005 | |
| 49-5005 | THOMPSON, as gal for KIRKSEY v. ORLAN CAS | | Traffic General | Lien | 09/13/2003 | 09/12/2004 | |
| 49-5006 | ZARATE, KRISTINA, et al v. MADERA CT\ CAS | | Miscellaneous | Lien | 07/06/2004 | 07/05/2005 | |
| 49-5023 | FOSTER, ISALAH V SORGENFIRE, NATHA BME | | Auto Accident | Settled | 06/20/2004 | 06/19/2006 | |
| 49-5028 | CORONA v. BENNISON | BME | Slip and Fall | Suit | 08/04/2004 | 08/03/2006 | |
| 49-5029 | HENRY-LEE, DEE v. ANTELOPE VALLEY CAS | | Miscellaneous | Lien | 11/08/2004 | 11/07/2005 | |
| 49-5031 | BLAKELEY, XAVIER V LA SALLE MEDIC MCA | | Medical Mal | Suit | 01/13/2004 | 01/12/2006 | |
| 49-5033 | LE POINT, PAMELA v. CITY OF LOS ANGI BTD | | Personal Injury | Suit | 07/08/2004 | 07/07/2005 | |
| 49-5034 | LEE v. CALIFORNIA PACIFIC MEDICAL C. JMB | | Medical Mal | Suit | 08/02/2004 | 08/01/2005 | |
| 49-5041 | CHMAIT, NABIL and GHANIA v. U.S.A | BTD | Wrongful Death | Suit | 02/06/2005 | 02/04/2007 | 04/23/2007 |
| 49-5042 | AWAGAH v. METROLINK | BME | Personal Injury | Suit | 01/26/2005 | 01/25/2007 | |
| 49-5044 | RASHTI v. PEPPERMILL HOTEL & CASIN( RHM | | Burn | Lien | 02/03/2004 | 02/02/2006 | |
| 49-5048 | TONEY, MARSHON v. LAC/MLK DREW M BTD | | Medical Mal | Settled | 03/25/2005 | 03/24/2006 | |
| 49-5053 | BLACIC, MARJORIE v. SCOTT KERNAN | BTD | Wrongful Death | Suit | 12/29/2003 | 12/28/2006 | 04/24/2007 |
| 49-5054 | HAYES, WINSTON v. COUNTY OF LOS AN BTD | | Police Misconduc | Suit | 05/08/2005 | 05/08/2006 | 04/21/2007 |
| 49-5057 | SAMARAH, MIKE v. U.S.A. | BTD | Assault & Btry | Suit | 02/05/2005 | 02/04/2007 | |
| 49-5058 | INGRAM, VIRGINIA v. JOHN BUHYOFF | BTD | Dog Bite | Referred | 06/01/2005 | 05/31/2007 | 04/23/2007 |
| 49-5062 | LEWIS, SHARON v. CITY OF MORENO VA BTD | | Wrongful Death | Appeal | 05/21/2005 | 05/20/2006 | |
| 49-5066 | ESTATE OF HELEN MARTIN v. SOUTHERl BTD | | Wrongful Death | Suit | 07/19/2005 | 07/18/2007 | 04/04/2007 |
| 49-5073 | HAMILTON V CAL STATE DOMINQUEZ H | | Personal Injury | Lien | 03/08/2005 | 03/07/2007 | |
| 49-5077 | STARKS, SIMONE v. NORTHERN CALIFOI BTD | Nichols, Michelle | Assault & Btry | Suit | 08/20/2005 | 08/19/2007 | |
| 49-5079 | WALLACE, MARGARET and CURTIS v. ER DHC | | Wrongful Death | Suit | 06/17/2005 | 06/16/2006 | 04/18/2007 |
| 49-5080 | ARMSTEAD, SHIRLEY & STEPHANIE BL/ BTD | | Wrongful Death | Suit | 09/25/2005 | 09/24/2006 | |
| 49-5081 | MC DANIEL, MARILYN v. DEERE & COMI BTD | | Miscellaneous | Lien | 05/23/2005 | 05/23/2007 | 11/14/2006 |

# Caselist Summary Report

Date Received:  thru 12/31/2006

08/15/2007

| File Number | Style | Attorney Referral | Type | Status | Incident Date | Statute Date | Last Action |
|---|---|---|---|---|---|---|---|
| 49-5085 | Costello, Rick, et al. v. La Brea Avenue Motors CAS | | Wrongful Term | Lien | 07/01/2005 | 06/30/2006 | |
| 49-5088 | WALDEN v. KODHURI | RHM | Auto Accident | Lien | 09/19/2005 | 09/17/2007 | |
| 49-5093 | ESTATE OF DAVID VIERA v. CITY OF EL 1 BTD | | Wrongful Death | Appeal | 07/20/2004 | 07/19/2005 | |
| 49-5094 | COCHRAN, SKYLER v. COUNTY OF LOS A BTD | | Wrongful Death | Suit | 11/16/2005 | 11/15/2006 | 04/23/2007 |
| 49-5096 | JACKSON v. UCLA MEDICAL CENTER | BME | Medical Mal | Suit | 03/31/2005 | 03/30/2006 | |
| 49-5097 | CRUMWELL v. UNION PACIFIC RAILROA JMB | | Railroad | Settled | 09/23/2005 | 09/23/2007 | |
| 49-5101 | TIZNOR, TRACY v. COUNTY OF LOS ANG BTD | | Wrongful Death | Settled | 02/04/2006 | 02/03/2007 | |
| 49-5105 | GREER v. DANIEL FREEMAN MEMORIAL MCA | | Medical Mal | Suit | 01/30/2006 | 01/29/2007 | |
| 49-5107 | GOINS-PHILLIPS v. KAISER FOUNDATION JMB | | Personal Injury | Suit | 01/09/2006 | 01/08/2007 | |
| 49-5111 | EZIRIM vs. VIEW PARK MANOR | BME | Medical Mal | Suit | 11/03/2005 | 11/02/2006 | |
| 49-5115 | KEY, DANIELLE v. MICHOACAN ALIGNM BME | | Premises Liabili | Suit | 03/07/2006 | 03/06/2007 | |
| 49-5116 | GREEN, VICTOR v. SOUTHWEST REAL ES MCA | | Personal Injury | Suit | 06/30/2005 | 06/29/2007 | |
| 49-5121 | BROWN, MAKAYLA v. CITY OF RIVERSII BTD | | Wrongful Death | Suit | 04/03/2006 | 04/02/2008 | 04/09/2007 |
| 49-5124 | NOWELL v. FFE TRANSPORTATION SERV MCA | | Auto Accident | Suit | 09/17/2005 | 09/16/2007 | 04/04/2007 |
| 49-5128 | GAUDRY, LAWRENCE v. AMERICAN HON MCA  Ayson, Eduardo | | Motorcycle Acci | Suit | 01/06/2005 | 01/05/2007 | |
| 49-5130 | WINSTON, CLARENCE v. CENTINELA FRI MCA | | Medical Mal | Suit | 11/28/2005 | 02/07/2007 | |
| 49-5131 | THOMAS, JERRY v. COUNTY OF LOS ANC BTD | | Police Misconda | Suit | 03/19/2006 | 03/19/2008 | |
| 49-5137 | JOHNSON v. GEIGER | BTD | Auto Accident | Suit | 05/06/2006 | 05/05/2008 | |
| 49-5138 | L, CHRISTOPHER v. ARCHDIOCESE OF SI BTD | | Sexual Assault | Suit | 04/21/2006 | 10/24/2013 | |
| 49-5140 | WASHINGTON, TIANA v. CITY OF LOS AN BME | | Wrongful Death | Suit | 05/01/2006 | 04/30/2008 | |
| 49-5141 | DAVIS, DONNA v. KADAS FAMILY TRUS1 VKB | | Slip and Fall | Investigatio | 07/27/2005 | 07/26/2007 | |
| 49-5142 | AMOS, SHANNON v. CITY OF LOS ANGEI BTD | | Police Misconda | Suit | 08/30/2005 | 08/29/2007 | 04/21/2007 |
| 49-5146 | MAZEN vs. BROWN | BME | Dog Bite | Investigatio | 05/30/2006 | 05/29/2008 | |
| 49-5149 | PERKINS v. TJ MAXX | BME | Personal Injury | Suit | 07/22/2005 | 07/21/2007 | |
| 49-5154 | HATCHER, LARRY v. COSTCO WHOLESA BME | | Sexual Assault | Suit | 06/02/2004 | 06/01/2005 | |
| 49-5155 | WARREN v. CEVANKA | RHM | Auto Accident | Investigatio | 06/19/2006 | 06/18/2008 | |
| 49-5156 | ALEXANDER, DANIEL v. LA CLAFOUTIS BTD | | Negligence | Investigatio | 05/07/2006 | 05/06/2008 | |
| 49-5157 | GOOSEBERRY, FREDRICKA v. CITY OF IN BTD | | Police Misconda | Suit | 07/04/2006 | 07/03/2008 | 11/02/2006 |
| 49-5158 | NEAL, TRAYMON v. SONIA TROUP | BME | Auto Accident | Settled | 06/02/2006 | 06/01/2007 | |
| 49-5162 | NEROES, LEEDNA v BARRY GRUMMAN JMB | | Legal Malpractic | Suit | 02/01/2006 | 01/31/2007 | |
| 49-5163 | TAYLOR, ELIJAH v. CENTINELA HOSPIT/ MCA | | Medical Mal | Investigatio | 05/22/2006 | 05/20/2012 | |
| 49-5165 | TAYLOR, KEISHA NICOLE v. COUNTY OF BTD | | Police Misconda | Suit | 08/01/2006 | 05/02/2007 | 11/02/2006 |

Page 2

# Caselist Summary Report

Date Received:   thru 12/31/2006

08/15/2007

| File Number | Style | Attorney | Referral | Type | Status | Incident Date | Statute Date | Last Action |
|---|---|---|---|---|---|---|---|---|
| 49-5166 | MCGEE, SHARRON v. ST. JOSEPH HOSPIT BME | | | Medical Mal | Suit | 05/30/2006 | 08/13/2007 | |
| 49-5167 | DRAKE, ARETHA v. METROLINK | MCA | | Personal Injury | Settled | 01/06/2003 | 01/05/2005 | |
| 49-5168 | GUZMAN, NORMA v. QUEEN OF THE VAI MCA | | | Medical Mal | Investigation | 07/31/2006 | 09/03/2007 | |
| 49-5169 | BRADFORD, DORIS v. COUNTY OF LOS A MCA | | | Police Misconduc | Settled | 05/08/2005 | 08/02/2006 | |
| 49-5172 | HOFFMAN, DAVID v COUNTY OF RIVERS BTD | | | Wrongful Death | Suit | 07/25/2006 | 01/24/2007 | |
| 49-5174 | SCOTT-MEEKS, ELOISE v CENTINELA HO MCA | | | Medical Mal | Investigation | 06/19/2006 | 08/28/2007 | |
| 49-5175 | SCOTT, SEAN v. JARROD ANTHONY GRI! MCA | | | Motorcycle Acci | Settled | 07/15/2006 | 07/14/2008 | |
| 49-5176 | GRIFFIN, SANDRA v. LAPD | BTD | Famble, Arthur | Auto Accident | Suit | 09/11/2006 | 06/07/2007 | 01/12/2007 |
| 49-5177 | GYEBI-FOSU, VICTORIA v A & Y COMPA BME | | | Personal Injury | Demand | 09/13/2006 | 09/12/2008 | |
| 49-5178 | COLEMAN, STEVEN v. HUMMEL, JEFFRE' SD | | | Auto Accident | Referred an | 03/02/2006 | 03/03/2008 | |
| 49-5179 | BROCK, MILES v. LOS ANGELES SHERIF DHC | | | Sexual Harassmr | Investigation | 05/19/2005 | 01/31/2008 | |
| 49-5180 | ESTATE OF DOUGLAS STEVEN CLOUD v BTD | | | Wrongful Death | Suit | 10/08/2006 | 04/07/2007 | 04/23/2007 |
| 49-5182 | ADKINS v. KEEL | MCA | | Auto Accident | Investigation | 09/06/2006 | 09/05/2008 | |
| 49-5183 | VILLERY v. LOS ANGELES UNIFIED SCH( BME | | | Personal Injury | Suit | 11/09/2005 | 11/08/2007 | |
| 49-5184 | SMITH, TODD v. COUNTY OF LOS ANGEL BTD | | | Civil Rights | Suit | 09/08/2005 | 09/07/2006 | |
| 49-5185 | BATTS v. LAIDLAW | MCA | | Personal Injury | Investigation | 10/26/2006 | 10/25/2008 | |
| 49-5186 | MARTINEZ v. ANAWALT LUMBER HARD BTD | | | Sexual Assault | Investigation | 08/01/2006 | 07/31/2008 | |
| 49-5187 | NEIMAN, PAULA v. INSPIRED BY MEDIA MCA | | | Contract | Suit | 12/17/2004 | 12/16/2008 | |
| 49-5190 | LEVERETTE, GIUWANA v. MARTIN LUTF BME | | | Medical Mal | Investigation | 10/06/2006 | 10/05/2007 | |
| 49-5191 | HETZEL, JOAN v BURLINGTON COAT FA(MCA | | Hetzel, Victor | Personal Injury | Suit | 11/27/2006 | 11/26/2008 | |
| 49-5192 | BAIDJ, SAFIYA v CALIFORNIA HOSPITAL MCA | | | Medical Mal | Investigation | 12/06/2006 | 12/05/2007 | |
| 49-5199 | DE GAONA, REFUGIA v. | MCA | | Products Liabiliti | Investigation | 03/14/2006 | 03/13/2008 | |
| Closed | Closed Files | | | | | | | |
| TN4900 | LIFSEY V CARFAX | RHM | | Class Action | Settled | | | |

Total Cases Printed:  88

# EXHIBIT 5

# AGREEMENT
## for
## THE COCHRAN FIRM – LOS ANGELES - NATIONAL

This **Partnership Agreement** (this "Agreement") for THE COCHRAN FIRM - LOS ANGELES - NATIONAL (the "Partnership"), dated as of January 1, 2009, is made by and between THE COCHRAN FIRM, PC, an Alabama professional corporation ("Cochran National") and THE COCHRAN FIRM LOS ANGELES, a General Partnership between RANDY H. MCMURRAY, P.C., a California professional corporation, BRIAN T. DUNN, P.C. a California professional corporation, and THE BARRETT LAW FIRM, a Professional Corporation ("Managing Partner" and, together with Cochran National, the "Partners").

## ARTICLE 1
## DEFINITIONS

1.1. **Definitions.** Annex I attached hereto sets forth a list of all defined terms used herein and provides either a reference to the section in which such term is defined or the definition of such term.

## ARTICLE 2
## GENERAL

2.1. **Effective Date.** The effective date of this Agreement is January 1, 2009 (the "Effective Date").

2.2. **Name.** The name of the Partnership is The Cochran Firm–Los Angeles - National. All business of the Partnership will be conducted solely under The Cochran Firm Los Angeles, or such other name as mutually agreed by the parties.

2.3. **Purpose.** The purpose of the Partnership is to operate a Regional Office of The Cochran Firm, focused exclusively on the practice of law involving civil disputes and defense of individuals and entities accused of criminal wrong doing within the Southern California, area, namely to include the counties of Inyo, Kern, Los Angeles, Orange, Riverside, San Bernardino, Ventura, San Diego and Imperial which shall include, but is not limited to contacts from the following U.S. telephone area codes: 213, 310, 323, 424, 562, 619, 626, 661, 714, 747, 760, 805, 818, 858, 909, 949, 951) and to conduct all business necessary and incidental thereto.

2.4. **Partners; Partner Attorneys; Principal Partner Attorneys.**

(a) **Partners.** The Partners of the Partnership are Cochran National and The Cochran Firm Los Angeles.

(b)  **Partner Attorneys.** Each Partner acknowledges and agrees that the other Partner is itself a partnership or professional corporation comprised of attorneys (the "Partner Attorneys"). Each Partner agrees to provide to the other Partner a list of all of its Partner Attorneys and lawyer associates and all professional details about such Attorneys prior to the Effective Date, and to update such information promptly as needed (but no less often than annually).

(c)  **Principal Partner Attorneys.** The principals of Cochran National are Samuel A. Cherry, Jr., Jock Smith and J. Keith Givens. The principal partners of the Managing Partner are Randy H. McMurray and Brian Dunn.

2.5.  **Managing Attorneys.** Randy M. McMurray and Brian Dunn will be the managing attorneys of the Partnership and, subject to the other terms and conditions of this Agreement, will have full managerial and administrative authority and responsibility for the Partnership.

2.6.  **Location.** The principal place of business of the Partnership is 4929 Wilshire Boulevard, Suite 1010, Los Angeles, CA 90010, and may be changed to another address as determined by the Partnership from time to time. The Partnership will be permitted to open one or more additional offices within the territory, as determined by the Partnership with approval by Cochran National.

2.7.  **Term.** The Partnership will continue perpetually until terminated by the Partners in accordance with the terms of this Agreement or applicable law.

2.8.  **General Partnership.** The Partnership (or, where required, the Partners) has or will promptly take all actions and file all documents necessary to establish the Partnership as a general partnership under and in accordance with General Partnership Law (the "Partnership Law") of the state of California.

2.9.  **Limited Liability.** Except as otherwise provided by applicable law, the debts, obligations and liabilities of the Partnership, whether arising in contract, tort or otherwise, will be solely the debts, obligations and liabilities of the Partnership, and no Partner will have any responsibility therefore solely by reason of being a partner of the Partnership.

### ARTICLE 3
### DUTIES OF PARTNERS

3.1.  **Duties of the Partners.**

(a)  **Managing Partner.** The Managing Partner will devote its full time efforts to the development of a successful and profitable Regional Office within the territory designated in a rapid, diligent and professional manner.

2

(b)   <u>Cochran National.</u>  Cochran National will devote its efforts, as the national firm responsible for developing successful and profitable law offices under The Cochran Firm name, to provide management, marketing, administrative and/or legal support services in order to promote the success of Regional Offices in fulfilling the duties described in Section 3.1(a).

(c)   Cochran National shall grant the exclusive right to the Managing Partner to operate and market THE COCHRAN FIRM in the Los Angeles TV market, which includes the counties of Inyo, Kern, Los Angeles, Orange, Riverside, San Bernardino, Ventura, San Diego and Imperial.

(d)   Cochran National shall grant the Managing Partner exclusive right of first refusal for any and all case inquiries (from any source) that would be within the L.A. Regional office's jurisdiction outlines in Section 3.1(c).  This includes, but is not limited to, any and all civil and criminal case inquiries.

3.2.   <u>Professional Requirements and Responsibility.</u>  Each Partner agrees that it will, and will cause its Partner and Associate Attorneys to perform all services to the Partnership and exercise all other rights and responsibilities under or in connection with this Agreement, in accordance with applicable law and ethical rules and guidelines governing the practice of law (collectively, "<u>Professional Requirements</u>").  Each Partner's obligation under this Section 3.2 will supersede all other obligations between or among the Partnership, the Partners and the Partner Attorneys set forth in this Agreement or otherwise.

3.3.   <u>Other Cochran Offices/Entities</u>

(a)   <u>Referral of Clients.</u>

(i)   <u>By Cochran National to the Partnership.</u>  Cochran National will use commercially reasonable efforts to refer to the Partnership any potential clients that reside within the territory and contact Cochran National (or are referred to Cochran National by other offices or firms) regarding legal representation within the Practice area defined in Section 3.1(c).

(ii)   <u>By the Partnership to Cochran National.</u>  The Regional Office and the Partnership will use commercially reasonable efforts to refer, and to cause the Partnership to refer, to Cochran National (or another offices or firms as designated by Cochran National) any potential clients that reside outside the territory and/or contact the Partnership regarding legal representation within the defined Practice Area or other Regional Office of Other Cochran offices or firms (Regional or National).

(iii)   Coordination of Potential Client Referrals.  The Partners agree that Cochran National will have the sole authority and responsibility to use commercially reasonable efforts to coordinate referrals of potential clients among

3

the Partnership and the other offices or entities so that each firm or office has the opportunity to provide services to clients that fall within the express purpose of such firm or office, and the Partnership and the Regional Office agree to accept the decisions of Cochran National in such regard.  Cochran National will have no liability to the Partnership or Regional Office for exceptions that may arise, except in case of bad faith.

## ARTICLE 4
## MANAGEMENT AND OPERATIONS

4.1.    <u>Separate Entity</u>.  The Partnership will operate as a separate entity for all purposes, including but not limited to licensing, insurance and tax reporting requirements.

4.2.    <u>Authority and Responsibility of Regional Firm and Managing Partner</u>.  The National business policies and affairs related to the Partnership will be operated under the general direction and control of Cochran National, but all day to day authority and powers of the Partnership will be exercised by or under the authority of the Managing Partner as given to the Partnership's Managing Attorneys. The Managing Partner will use best efforts to ensure that the Partnership fulfills all of its obligations to the Partners under this Agreement, the Partnership Law and other applicable law.  Except as otherwise provided in this Agreement or by law, the Managing Partner will have the full power and authority to take any and all actions, and to execute and deliver any and all documents and instruments (including, without limitation, any and all deeds, contracts, leases, mortgages, guaranty, deeds of trust, promissory notes, security agreements and financing statements pertaining to the Partnership's assets or obligations), for and on behalf of the Partnership, that the Managing Partner deems to be necessary or desirable to carry on the business of the Partnership.

4.3.    <u>Operating Expenses</u>.  The Managing Partner will be responsible for providing or securing all funds required by the Partnership for costs associated with its operations, including, without limitation, office space, furniture, computers, software, supplies, employee wages, benefits and taxes, and advertising and marketing expenses. The Managing Partner by and through the Managing Attorneys will be responsible for costs associated with the startup of the Partnership and its provision of services to the Partnership.

4.4.    <u>The Cochran Firm National Operating Procedures</u>.  The Partnership will comply in all material respects with operating procedures (the "<u>The Cochran Firm National Operating Procedures</u>") adopted from time to time by Cochran National and applied consistently (except as the context may otherwise require) to all Cochran Offices and Firms. The Cochran Firm National Operating Procedures may include matters relating to marketing, advertising, insurance, case management, referral arrangements, toll free numbers and other matters that Cochran National believes in good faith should be coordinated and/or consistent across all Cochran offices and firms.  The foregoing, the initial Cochran Firm Operating Procedures are attached hereto as Annex II (such Annex may be modified by Cochran National from time to time).

4

4.5     **Fiscal Year.** The fiscal year of the Partnership will be the calendar year. All references to a "year" in this Agreement will be deemed to refer to the calendar year unless the context otherwise requires.

4.6.    **Financial Statements; Information Rights.** The Partnership will deliver to each Partner (i) customary annual financial statements (prepared in accordance with generally accepted accounting principles, consistently applied, on a cash basis), (ii) monthly and quarterly financial reports on a cash basis, including a forecast for the subsequent three quarters, (iii) an annual budget and management report, (iv) timely tax-reporting information, and (v) such other information about the business and financial position of the Partnership as either Partner may request. Each Partner will also have full "audit rights" and access to information and management personnel of the Partnership at all reasonable times during regular business hours.

4.7.    **Partnership Meetings.** Unless otherwise agreed, the Partners will hold Partnership meetings (either in person or teleconference) at least quarterly to discuss the business and affairs of the Partnership.

## ARTICLE 5
## ALLOCATIONS AND DISTRIBUTIONS

5.1.    **General.** No Partner will be entitled or obligated to receive any property from the Partnership other than cash. After making all other allocations and distributions provided for in this Article 5 below, the Managing Partner will be allocated, and entitled to receive distributions in respect of, all net profits or net losses of the Partnership.

5.2.    **The Cochran National Share of Distributable Income.** Cochran National will be allocated, and entitled to receive distributions equal to 15% of the Gross Fees generated and received by the Partnership.

5.3.    **Gross Fees.** The term "Gross Fees" as used for purposes of computation of National's share means the gross revenue from the cases generated by the Partnership and/or fees from all sources, less referral fees paid to any Outside Attorneys and less applicable case expenses that were not otherwise reimbursed. For the avoidance of doubt, fee revenue of and case or legal matter generated by the Partnership including fee revenue from the following types of legal matters (without limitation): (i) client matters handled by the Partnership (including attorneys employed or engaged by the Partnership) within the Regional Office in the Regional Territory described herein; (ii) potential client matters received by the Partnership but referred to other offices or firms; and (iii) potential client matters received by the Partnership but referred to Outside Attorneys.

5.4.    **Timing and Manner of Distribution of Cochran National Share.** The Partnership will distribute to Cochran National the accrued but unpaid Cochran National Share within 5 days after the end of each month in which the corresponding Distributable Income is received.

5.5.   **The Cochran National Share Statement.**  With each distribution in respect of Cochran National Share, the Partnership will deliver to Cochran National a fee statement or disbursal summary that includes: (i) the total amount paid by or received for the benefit of any client; (ii) total attorney fees; (iii) referral fees to Outside Attorneys, if any; (iv) payment to clients; (v) total expenses incurred for the work performed, indicating which were otherwise reimbursed; (vi) attorney fees to be disbursed to Cochran National; and (vii) other disbursements.

5.6.   **Special Restriction on Distributions.**  The Regional Office and/or Managing Partner will not be entitled to receive any distribution from the Partnership unless the Partnership is, at such time, current on all distributions due to Cochran National.

5.7.   **Tax Distributions.**  In the unexpected event that Cochran National is allocated income in respect of which distributions are not required to be made under other sections of this Article 5 ("Phantom Income"), the Partnership will, no later than 30 days following the end of the quarter in which such Phantom Income is earned, make a distribution to Cochran National of an amount equal to 45% of the amount of such Phantom Income, in order to facilitate Cochran National's payment (or estimated payment) of Federal, state and local taxes due in respect of such Phantom Income.  In such event, future distributions that would become due at the time such Phantom Income becomes available on a cash basis will be adjusted so as not to duplicate distributions to Cochran National.

## ARTICLE 6
## INSURANCE AND INDEMNIFICATION

6.1.   **Insurance.**  The Managing Member will ensure that the Partnership purchases and maintains insurance of customary types and levels covering the Partnership, each of the Partners, and all attorneys performing work on behalf of the Partnership.  Without limiting the foregoing, the Partnership will purchase and maintain business owner's general liability insurance coverage (in an amount of no less than $2 million per occurrence and $2 million aggregate), professional liability insurance coverage (in an amount of no less than $2 million per occurrence and $2 million aggregate), and workers' compensation insurance coverage for all attorneys and employees performing work on behalf of the Partnership.

6.2.   **Indemnification.**  The Partnership will indemnify each Partner (and each of such Partners' affiliates, officers, attorneys or agents) from and against all losses, damages or claims, including reasonable attorneys' fees and expenses, incurred in connection with (i) all liabilities incurred by reason of any act or omission performed or omitted by the Partnership, (ii) all liabilities incurred by reason of any act or omission performed or omitted by another Partner with respect to the Partnership, and (iii) all liabilities incurred by reason of any act or omission performed or omitted by the indemnified Partner in good faith on behalf of the Partnership and in a manner reasonably believed by such Partner to be within its scope of authority on behalf of the Partnership; (provided, however, that each Partner Attorney will be solely responsible for his or her own malpractice, for which such Partner Attorney will be protected by professional liability

6

insurance coverage). No person or entity that would otherwise be entitled to indemnification hereunder will be indemnified for any liabilities incurred by reason of the gross negligence or willful misconduct of such person or entity. The duty of the Partnership to indemnify any indemnified person or entity will be limited to the assets of the Partnership, including the proceeds of any insurance purchased by the Partnership, and no recourse will be available against any of the Partnership's affiliates, officers, attorneys or agents.

6.3.    **Indemnification Procedure.** In the event any legal proceeding is threatened or instituted or any claim or demand is asserted by any person or entity (including a party hereto) in respect of which indemnification may be sought from the Partnership under Section 6.2, the person or entity seeking indemnification will promptly cause written notice of such actual or threatened legal proceeding, claim or demand of which it has knowledge to be forwarded to the Partnership. In the event of the initiation of any legal proceeding against an indemnified person or entity by a third party, the Partnership will have the absolute right after the receipt of notice, at its option and at its own expense, to be represented by counsel of its choice, and to defend against, negotiate, settle or otherwise deal with any proceeding, claim or demand which relates to any of the covered liabilities; provided, however, that the indemnified person or entity may participate in any such proceeding with counsel of its choice and at its expense. The parties will cooperate fully with each other in connection with the defense, negotiation or settlement of any such legal proceeding, claim or demand. To the extent the Partnership elects not to defend such proceeding, claim or demand, and the indemnified person or entity defends against or otherwise deals with any such proceeding, claim or demand, the indemnified person or entity may retain counsel, at the expense of the Partnership (which expenses will be paid monthly by the Partnership to the indemnified person or entity as they are incurred), and control the defense of such proceeding. Neither the Partnership nor the indemnified person or entity may settle any such proceeding without the consent of the other party, which consent will not be unreasonably withheld or delayed. After any final judgment or award has been rendered by a court, arbitration board or administrative agency of competent jurisdiction and the time in which to appeal there from has expired, or a settlement has been consummated, or the indemnified person or entity and the Partnership have arrived at a mutually binding agreement with respect to each separate matter alleged to be indemnified by the Partnership hereunder, the indemnified person or entity will forward to the Partnership notice of any sums due and owing by it with respect to such matter and the Partnership will satisfy such claims according to the provisions of Section 6.2 and this Section 6.3.

6.4.    **Advancement of Expenses.** The Partnership will advance reasonable attorneys' fees and expenses of each indemnified person or entity to defend against any covered liabilities; provided, however, that all of its indemnified persons or entities with respect to common covered liabilities will be represented by joint counsel.

**ARTICLE 7**
**CHANGES AS TO PARTNERS**

7

7.1.   **Admission of New Partners.** No new Partner may be admitted to the Partnership without the prior written consent of the other Partner.

7.2.   **Voluntary Withdrawal by a Partner.** Either Cochran National or any Managing Member will have the right to voluntarily withdraw from the Partnership at any time. This termination of the relationship shall not operate as dissolution of the partnership unless the National Partners elect to dissolve the Partnership. In the event of dissolution it shall be governed by paragraph 8 herein.

(a)   **Post Withdrawal Fees.** In the event of withdrawal by a Managing Partner, as set out herein, fee income on any cases existing as of the date of withdrawal that may thereafter be generated on any case that said withdrawing Partner should continue to work on after withdrawal and the fees distributed according to the terms of this agreement as if no departure had occurred.

7.3.   **Cooperation by Former Partner.** Each former Partner will cooperate with the Partnership to the extent reasonably requested by the Partnership from time to time in connection with Partnership matters.

7.4.   **Client Files and Matters.** A former Partner will not be entitled to possession of, nor access to, files and documents pertaining to the matters of any clients of the Partnership (including, without limitation, matters on which such Former Partner worked), unless and until such clients so direct, and possession of any such files and documents by the former Partner without such a direction having been given will be considered a breach of this Agreement. Income from client matters taken by a former Partner will not affect the fee distribution on those matters as set forth in this Agreement.

7.5.   **Confidential Information.** In addition to any applicable Professional Requirements, no Partner or former Partner, without the prior written consent of the Partnership, will disclose to any person or entity not lawfully entitled thereto, including but not limited to the press, other media or any public body, in the absence of a court order or binding administrative or regulatory directive, any confidential information relating to the business, affairs or financial condition of the Partnership, including, without limitation, the contents of this Agreement and any other agreement of the Partners, as well as the compensation and capital accounts of the Partners and any and all payments made to a Partner upon its or his withdrawal, removal, retirement, disability or death. Confidential information includes, without limitation, all originals and all copies, other reproductions, abstracts, digests, notes, analyses or studies prepared by any person or entity relating to the business of the Partnership.

## ARTICLE 8
## DISSOLUTION

8.1.   **Dissolution.** The Partnership may be dissolved at any time by either Partner with any work pending as of the date of dissolution distributed in accordance with the provisions set forth in this agreement.

8.2.   **Winding up Affairs and Distribution of Assets.**  Upon dissolution of the Partnership, Managing Partner will be the liquidating Partner and will proceed to wind up the business and affairs of the Partnership and liquidate the remaining property and assets of the Partnership in accordance with the Partnership Law; provided, however, that Cochran National will have the right to participate in such liquidation and winding up to the extent necessary to enforce and protect its rights.

8.3.   **Use of Name.**  Upon the dissolution of the Partnership, the Partnership will continue to use its name solely for the purpose of winding up its affairs.  For the avoidance of doubt, no Partner will have the right to use the name of any other Partner, the Regional Office nor the Managing Partner will not have any right to use the name of Johnnie L. Cochran, Jr. (deceased), "The Cochran Firm" (or any derivative thereof), and Cochran National (and its affiliates) will have full rights to use the name "The Cochran Firm" (and derivatives thereof) as well as the use of all phone numbers and URLs used in any way for partnership business.

### ARTICLE 9
### MISCELLANEOUS PROVISIONS

9.1.   **Local Telephone Numbers.**  Cochran National will continue to own all the rights to all local phone numbers used in connection with the operations of the Los Angeles Regional office.

9.2    **Toll Free Numbers.**  Cochran National will own all the rights to all toll free phone numbers used in connection with the operation of the Los Angeles Regional Office.

9.3    **Performance and Character Standards.**  All actions taken by the Managing Partners of the Los Angeles office, including the addition of new Partners, Lawyers, and staff, will be governed by performance and character standards consistent with maintaining the legacy of Johnnie L. Cochran, Jr.

9.4    **Legacy Office.**  The Managing Partner agrees to maintain the former office of Johnnie Cochran at the premises in the conditions as of the date of Mr. Cochran's death for so long as the family of Johnnie L. Cochran permits the Los Angeles Regional office to retain its furniture, memorabilia and fixtures. In the event, no disposition of the office or its contents shall occur without the prior written notice to Sam Cherry, Keith Givens, and Jock Smith, individually and separately.

9.5.   **Further Assurances.**  The Partners agree that they will execute such other and further instruments and documents, and take such further actions, as are or may become necessary or convenient to effectuate and carry out the terms of this Agreement.

9.6.   **Notices.**  Any notices required under this Agreement will be in writing and will be delivered personally, sent by registered or certified mail, return receipt

requested and postage prepaid, or sent by recognized air courier, to the recipient at its address as recorded in the Partnership's books and records, or at such other address as may be supplied by similar written notices. All notices will be deemed to be given on the date personally delivered as confirmed in the messenger service's records, the date indicated on the return receipt provided by the U.S. postal service, or the delivery date confirmed in the air courier's records.

9.7.   **Amendments; Waivers.** No amendment or modification of this Agreement will be of any force or effect unless such amendment or modification is in writing and has been signed by all Partners. No waiver of any of the provisions of this Agreement or a breach hereof will be effective unless such waiver is in writing and signed by the Partner giving such waiver. No such waiver, in any one or more instances, will be deemed to be or construed as a further or continuing waiver of any condition or breach.

9.8.   **Severability.** If any provision of this Agreement or the application hereof to any person, entity or circumstance will be determined to be invalid, illegal or unenforceable to any extent, the remainder of this Agreement and the application thereof will not be affected and will be enforceable to the fullest extent permitted by law. Upon such determination that any provision is invalid, illegal or unenforceable, the Partners will negotiate in good faith to modify this Agreement so as to effect the original intent and purpose of the parties in agreeing to such provision as closely as possible in an acceptable manner. Any provision of this Agreement held invalid, illegal or unenforceable only in part, degree or in certain jurisdictions will remain in full force and effect to the extent not held invalid, illegal or unenforceable.

9.9.   **Governing Law.** This Agreement will be governed by and construed in accordance with the Partnership Law to the extent applicable, and the substantive laws of the State of California for all other purposes, without reference to conflict or choice of law provisions. In the event of a conflict between any provision of this Agreement and any non-mandatory provision of the Partnership Law, the provision of this Agreement will control and take precedence.

9.10.   **Arbitration.** Any controversy or claim arising out of or relating to this Agreement, or any alleged breach hereof, or in connection with the relationship between or among the Partners and the Partnership, will be settled by final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA). The arbitration will be conducted in Los Angeles, California before a panel of three arbitrators. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrators may, in the award, allocate all or part of the costs of the arbitration, including the fees and expenses of the arbitrators and the reasonable attorneys' fees and expenses of the prevailing party. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, subject matter or results of any arbitration, nor any evidence or claims disclosed therein, without the prior express written consent of the Partners; provided that this provision will not be

deemed to preclude a Partner from disclosing such matters to its members or other partners.

9.11.   Counterparts.  This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

9.12.   Headings.  The section headings contained in this Agreement are for reference purposes only and do not in any way affect the meaning or interpretation of this Agreement.

9.13.   Entire Agreement.  This Agreement supersedes all prior agreements and understandings between or among the Partners with respect to the subject matter hereof.

9.14.   Successors and Assigns.  This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

9.15.   Assignment of Interest.  Neither Partner may sell, assign, mortgage, hypothecate or encumber his interest in the Partnership, nor may any Partner which is a professional corporation permit the sale, assignment, mortgage, hypothecation or encumbrance of its capital stock, without the prior written consent of the other Partner.

9.16.   Third Party Benefit.  None of the provisions of this Agreement will be construed as existing for the benefit of any creditor of the Partnership or of any of the Partners, nor will any such provision be enforceable by any party not a signatory to this Agreement.

\* \* \* \* \*

## SIGNATURES

Each of the undersigned, desiring to enter into this Partnership Agreement, hereby (i) agree to all of the terms and provisions thereof, (ii) duly executes this Agreement in the capacity indicated below, and (iii) authorizes this Signature Page, or counterparts thereof, to be attached to this Agreement.

The Cochran Firm, P.C.

By: _____
Samuel A. Cherry, Jr.

By: _____
J. Keith Givens

The Cochran Firm, P.C.

By: _____
Randy H. McMurray
The Cochran Firm – Los Angeles

By: _____
Brian Dunn
The Cochran Firm – Los Angeles

12

Annex I

## Definitions

| Defined Term | Section |
|---|---|
| Agreement | Header |
| Distributable Income | 5.2 |
| Effective Date | 2.1 |
| Cochran Firms | 3.4(a) |
| Other Cochran Firms | 3.4(a) |
| The Cochran National Share | 5.2 |
| Cochran National | Header |
| The Cochran National Operating Procedures | 4.4 |
| Outside Attorneys | 5.2 |
| Partner Attorneys | 2.4(b) |
| Partners | Header |
| Partnership Law | 2.8 |
| Partnership | Header |
| Phantom Income | 5.7 |
| Principal Partner Attorney(s) | 2.4(c) |
| Professional Requirements | 3.2 |
| Managing Partner | Header |
| Managing Attorney | 2.5 |
| Regional Office | 2.3 |
| Territory | 2.3 |

13

Annex II

The Cochran National Operating Procedures

1.    **Books and Records.**  Each office or firm will maintain at all times, at the principal office of such firm, true and complete (i) books and records reflecting all moneys due, received, paid, advanced or expended by such firm, maintained in accordance with generally accepted accounting principles, consistently applied, on a cash basis, (ii) case files with respect to all matters handled by such firm on behalf of clients, and (iii) detailed information regarding operational matters of such firm, including, without limitation, client call-ins, rejected legal matters, accepted clients, active legal matters, concluded client or case matters, client and case expenses, referral fees and fee disbursal information.

2.    **Marketing and Advertising Expenses.**  Each office or firm will be responsible for the payment (whether from its own resources or from capital raised through appropriate methods) of all marketing and advertising expenses for the benefit of such Office or Firm, including production and placement of advertising.

3.    **1-800-THEFIRM.**  All Cochran Offices will use 1-800-THEFIRM and pay to THEFIRM, Inc., $_____ per month for use thereof.  This charge includes the toll free and long distance charges incurred for each month.

4.    **Case Management and Accounting Software.**  Cochran National will set the requirements and specifications for case management and accounting software to be used by each firm.  Each firm will properly install and maintain all hardware and software necessary to run such systems, including the installation of "remote access" software to allow Cochran National remote computer access to the case management and accounting information of the Partnership.  The current case management and accounting system in use by Cochran National and all Cochran Firms is "Client Profiles".  These systems may be changed or updated from time to time by Cochran National and each firm will update accordingly.  Each office or firm will be responsible for the cost of acquiring the necessary computer hardware and software to install and maintain Cochran National's case management and accounting systems.

5.    **Marketing Plan.**  Each office or firm will be responsible for the development and implementation each year of a substantial marketing plan and budget for the marketing and advertising of such firm's services in the following media: television, radio, yellow pages, web, print, etc. Each firm will establish for each year an appropriate budget for such marketing program.

6.    **Marketing and Advertising Approval.**  Cochran National will establish the protocol and all requirements for all marketing and "branding" matters associated with the name, logos, trademarks, service marks, and/or images associated with The Cochran Firm, as well as letterhead, font size and type, business cards, brochures, signage, websites and all other marketing protocols. It is critical that all marketing and

14

branding matters be consistent and uniform, as established by Cochran National, before use by Managing Partner. All matters regarding brand, logo, marketing, etc. will comply with standards set by Cochran National and will be consistent and uniform with other marketing and brand requirements of Cochran National.

      7.    **Website.**  Any website or internet program using the name, logos, trademarks, service marks, and/or images associated with The Cochran Firm and/or the name The Cochran Firm will be linked to and be a component of the website of Cochran National. Each page of the Partnerships website content will have a link to the home page of Cochran National. Prior to the use of the name or marks associated with Cochran National or The Cochran Firm on a website, Cochran National must be given the opportunity for prior approval of the use of its name and logo.

      8.    **Ownership of Name, Phone Numbers and Domain Names.**  Cochran National will have the perpetual rights to the ownership and use of The Cochran Firm name (including all derivatives thereof), and related trademarks, service marks, phone numbers, domain names, logos and images globally, including but not limited to the ownership and use of all toll-free and regular telephone numbers and domain names used in conjunction with marketing The Cochran Firm or the Partnership (whether such items were obtained by Cochran National or this Partnership or its members). Upon dissolution of the Partnership governing this entity to be created herein, all rights of such Firm and all other Partners thereof in such items will cease and revert to Cochran National.

      9.    **Payment and Accounting of Cases Concluded & Pending**
The partnership shall also provide financial statements and an accounting upon which each such payment is based. The accounting shall include the Partnership Settled Cases Report for the relevant accounting period (in the form attached hereto as Exhibit "A"); Case List Summary Reports of Active and Referred Cases (in the form attached hereto as Exhibit "B").

      10.    **Personal Possessions of the Estates of Johnnie L. Cochran, Jr.**
Randy H. McMurray and Brian Dunn agree to maintain the former office of Johnnie Cochran at the premises in the conditions as of the date of Mr. Cochran's death (a) for so long as the family of Mr. Cochran permits L. A. Regional to retain its furniture, memorabilia and fixtures, and (b) during the current lease term of the premises. In any event, no disposition of the office or its contents shall occur without the prior written notice to Sam Cherry, Keith Givens and Jock Smith, individually and separately.

15

# EXHIBIT 6

# THE COCHRAN FIRM

163 WEST MAIN STREET • POST OFFICE BOX 927 • DOTHAN, ALABAMA 36302
TELEPHONE: (334) 793-1555 • FAX: (334) 793-8280
WWW.COCHRANFIRM.COM

February 6, 2012

Randy McMurray
Joseph Barrett
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010

RE:   Termination Notice—The Cochran Firm—Los Angeles

Dear Randy and Joe:

The Cochran Firm Shareholders have unanimously voted that your continued use of The Cochran Firm Trademark in your individual or collective firm practice should be immediately terminated. THE COCHRAN FIRM has been a registered trademark (Registration no.2,930,153) since 2005. Any permission or implied permission that has allowed the use of the "mark" is withdrawn and revoked.

Please consider this communication as a Cease and Desist notice regarding use of *THE COCHRAN FIRM* mark. You are no longer permitted to use THE COCHRAN FIRM mark or any other similar "mark" that would serve to confuse or mislead anyone with whom you are dealing.

Continued use of the "mark" after this Notice would be deemed an intentional dilution of our Firm's "mark" in violation of Section 43 of The Lanham Act 15 USC 1125 et seq. Failure to adhere to this Cease and Desist notice would also subject you to having attorney fees and costs assessed against you as provided by 15 USC 1117(a).

I will work with you to accommodate compliance with this Notice. You are requested to respond to this letter. I look forward to hearing from you

Sincerely,

THE COCHRAN FIRM

Samuel A. Cherry, Jr.

SACjr/bn

ATLANTA • CHICAGO • LAS VEGAS • LOS ANGELES • MEMPHIS • MIAMI • NEW ORLEANS • NEW YORK • ST. LOUIS • WASHINGTON D.C.

February 7, 2012

Samuel A. Cherry, Jr.
163 Main Street
Dothan, AL 36302

RE: Termination Notice - The Cochran Firm Los Angeles

Dear Mr. Cherry:

This letter is in response to your Cease and Desist notice regarding The Cochran Firm "mark." I assume that you base this notice, in no small part, on conversations you have had with Brian Dunn. I will therefore copy him on this letter. This letter is written with the consent and authority of my partner Joseph Barrett, to whom you also directed your letter of February 6th.

It is nothing less than outrageous for you to threaten this law firm that is the place Johnnie L. Cochran, Jr. practiced law and where that justice has never ceased being dispensed. The journey to justice continues right here as it should, at home. I am the managing partner of this firm that in fact is an unbroken chain of legal accomplishments. We continue to do great things every day.

California Rules of Professional Conduct allows this firm to retain the name of its deceased partner, Johnnie L. Cochran, Jr. "The use of a name is proper under a *bona fide succession* in the firm's name in which the deceased partner or shareholder was a member, and the public is not misled." [See ABA Model Rule 7.5, Comment (1)

This office has operated as The Cochran Firm Los Angeles, G.P. since at least 2007. It has been some variation of The Cochran Firm since at least June 2, 1999, when I was made the "co-managing partner" of the L.A. office. We were The Cochran Firm-Cochran, Givens, Smith, Stewart & McMurray beginning on April 21, 2003. We started using just "The Cochran Firm" sometime after Ms Stewart's employment ended.

Based upon the above, and as further explained below, I firmly believe that both the law and the ABA Rules allow this office to continue as "The Cochran Firm Los Angeles" without your approval or agreement.

Regarding usage of a similar logo on the letterhead and business cards, I have ordered that appropriate changes be made to remove references to other cities:

"ATLANTA, CHICAGO, DALLAS, · JACKSON, LAS VEGAS, MEMPHIS, MIAMI, NEW ORLEANS, NEW YORK, ST. LOUIS, WASHINGTON DC."

I have also ordered that references to the www.cochranfirm.com be removed. If you wish for me to change the font, I will consider that if it assists in the resolution of this matter.

Our firm letterhead will contain the logo The Cochran Firm Los Angeles.

If this matter goes further and is litigated in court, it may be prudent that you remove this firm from you website to avoid misleading advertising in California. As a matter of law, The Cochran Firm Los Angeles is not a part of a National "The Cochran Firm" and any further advertising by you to the contrary may be construed as intent to deceive and mislead the public in violation of The ABA Rules of Professional Conduct.

*"If a law firm licenses its name to other firms, all firms so licensed must operate as a single firm".* [ABA Form.Opn. 94-388].

A partnership connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business. A joint venture in which two lawyers agree to work or market together does not make the lawyers "partners" within the meaning of the Rule 2-200 exemption. [Chambers v. Kay, supra, 29 C4th at 150-152, 126 CR2d at 543-544].

- Communications describing relationships among two or more law firms must disclose the exact nature of the relationship. [ABA Form.Opn. 94-388].

- Use of a firm name, trade name, or fictitious name by a member of the State Bar is a "communication" for purposes of the CRPC advertising rules. [See CRPC 1-400(A)(1)]

- Firm names, trade names, fictitious names or other professional designations falsely stating or implying that a lawyer has a relationship with another lawyer or law firm violate CRPC rule 1-400.

- Pursuant to rule 1-400(E) the Board of Governors of the State Bar has adopted the following standards, effective May 27, 1989 as forms of 'communication' defined in rule 1-400(A) which are presumed to be in violation of rule 1-400: "(7) A 'communication' in the form of a firm name, trade name, fictitious name, or other professional designation which states or implies that a member has a relationship to any other member or a law firm as a partner or associate, or officer or shareholder pursuant to Business and Professions Code sections 6160-6172 unless such relationship in fact exists."

- It is improper for a franchisor ("X") to establish a network of legal offices with individual franchisees and to use their names (e.g., "X & Jones") on signs, letterhead, etc., unless the franchisor is in a partnership with each franchisee. [See Los Angeles Bar Ass'n Form.Opn. 423 (1983)]

If anything, the network created by "The Cochran Firm" "shareholders" misled and deceived the public. It creates the false impression that all the firms share business

and act as partners, working together in profits and losses, sharing business decisions as partners do.

In fact, each office is a separate entity and the effect on this Los Angeles firm of this "affiliation" has proved to be retarding our business opportunities, because many firms that practice in the areas of mass torts and class actions, for example, think we are somehow linked to you and Alabama firms and Georgia firms and firms in many other states, and that if we want to do business with them, somehow "your blessing" is required, when in fact that is not the case whatsoever. That is but one example where there are many. We have received no support from you in our difficult times, as you well know, because you are not in fact our partners nor do we share our business with you.

Should you take any legal action, be assured that we will bring the issue of unclean hands and contacts in violation of public policy before the court. I also believe your reliance on Lanham Act 15 USC 1125 et seq. is misplaced. Liability for false advertising under the Lanham Act arises if the commercial message or statement is either (1) **literally false** or (2) **literally true or ambiguous, but has the tendency to deceive consumers.** Lanham Act, § 43(a), 15 U.S.C.A. § 1125(a) ; Tillery v. *Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312 (E.D. Pa. 2006)

As I stated, as a matter of policy, it is the National Firm who was engaged in literally false advertising throughout United States. None of the offices operate as part of a large single firm, yet you ho9ld yourself out as such, and market yourself as such. As someone once said, I can stand in my garage and call myself a Volvo, but that does not make it so.

I believe the opinion in Tillery is instructive. In fact United States District Court in denying preliminary injunction riled regarding retaining firm name:

Tillery was famous intellectual property attorney, who brought a suit to enjoin his former law firm from using his name as domain. The Court denied his preliminary injunction relief on several grounds. The Court ruled that Tillery failed to show probability of prevailing, because his claim lacked merit.

"The recognition of individual lawyers' names as trademarks without a strong showing of secondary meaning could hinder the creation of new law firms (since, unlike other businesses, law firms are traditionally identified by personal names and not fanciful trade names) and the ability of individuals to practice law in their chosen field without changing their names.[5] Tillery has cited no precedent granting trademark status to a lawyer's personal name, used only in connection with his individual legal services, and the court could find none."Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 322 (E.D. Pa. 2006)

Further, there is nothing in your registration that bars the use of the name. In fact the registration provides as follows:

**Disclaimer: No claim is made to the exclusive right to use firm apart from the mark as shown".**

Finally, the assignment to you was done after Mr. Cochran's death.

We should be working together to bring justice to the people. Johnnie L. Cochran, Jr. would be saddened to see you operating against us in such a heavy-handed manner with a blatant disregard for the law and his legacy here in Los Angeles. Please discuss this with your "shareholders" at your earliest convenience and let me know your thoughts. We are prepared and ready to defend our honor and our rights.

Sincerely,

Randy H. McMurray
Managing Partner
The Cochran Firm Los Angeles

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## CV12- 5868 SJO  (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division** | **[ ]  Southern Division** | **[ ]  Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Richard M. Wirtz (SBN 137812)
Wirtz Law APC
3111 Camino del Rio North, Suite 310
San Diego, CA 92108
voice: 858.259.5009
fax: 858.259.6008
email: rwirtz@wirtzlaw.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COCHRAN FIRM, P.C., an Alabama corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>The Cochran Firm Los Angeles, LLP, a California Limited Liability Partnership; Randy H. McMurray, P.C., a California professional corporation; Randy H. McMurray, individually; and DOES 1-10.<br><br>DEFENDANT(S). | CASE NUMBER<br>**CV12·5868** SJO (mrwx)<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Richard M. Wirtz, attorney_____, whose address is _Wirtz Law APC, 3111 Camino del Rio North, Suite 310, San Diego, CA 92108_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____JUL – 6 2012_____

By: _____
Deputy Clerk
*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

THE COCHRAN FIRM, P.C., an Alabama corporation,

**DEFENDANTS**
THE COCHRAN FIRM LOS ANGELES, LLP, a California Limited Liability Partnership; RANDY H. McMURRAY, P.C., a California professional corporation; RANDY H. McMURRAY, individually; and DOES 1-10.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Richard M. Wirtz
Wirtz Law APC, 3111 Camino del Rio North, Suite 310, San Diego, CA 92108
Tel. 858.259.5009

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. § 1114; 15 U.S.C. § 1125 (A), and(C): Trademark infringement, false designation of origin, trademark dilution

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Alabama: THE COCHRAN FIRM, P.C. |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles: The Cochran Firm Los Angeles, LLP; Randy H. McMurray, P.C.; Randy H. McMurray. | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date July 5, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |