1  Richard M. Wirtz (SBN 137812)
   rwirtz@wirtzlaw.com
2  Erin K. Barns (SBN 286865)
   ebarns@wirtzlaw.com
3  W I R T Z  L A W  APC
   4365 Executive Drive, Suite 1460
4  San Diego, California 92121
   voice: 858.259.5009
5

6  Thomas D. Foster (SBN 213414)
   TD Foster - Intellectual Property Law
7  12626 High Bluff Drive, Suite 150
   San Diego, CA 92130
8  voice: 858.922.2170
   foster@tdfoster.com
9

10 Attorneys for Plaintiff and Counter-Defendant
   THE COCHRAN FIRM, P.C., and Counter-Defendants;
   SAMUEL A. CHERRY; J. KEITH GIVENS;
11 AND BARVIE KOPLOW

12

13         **UNITED STATES DISTRICT COURT**

           **CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15 THE COCHRAN FIRM, P.C., an Alabama corporation, | Case Number: CV12-05868-SJO (MRWx) |
| 16 Plaintiff, | **COUNTER-DEFENDANTS THE COCHRAN FIRM, P.C.[1], SAMUEL A. CHERRY, J. KEITH GIVENS, AND BARVIE KOPLOW'S MOTION TO DISMISS AMENDED COUNTER CLAIMS PURSUANT TO FRCP 12(B)(6)** |
| 17 v. | |
| 18 THE COCHRAN FIRM LOS ANGELES, LLP, a California Limited Liability Partnership; THE COCHRAN FIRM LOS ANGELES, a California General Partnership RANDY H. McMURRAY, P.C., a California professional corporation; RANDY H. McMURRAY, individually; and DOES 1-10. | |
| 19 | |
| 20 | |
| 21 | Dept:        Courtroom 1 |
| 22 | Judge:       Hon. S. James Otero |
|    | Date:        May 20, 2013 |
| 23 Defendants. | Time:        10:00 a.m. |
| 24 | |
| 25 RANDY H. McMURRAY, P.C.; and RANDY H. McMURRAY, | |
| 26     Counterclaimants, | |

27  _____

28     [1]The Cochran Firm, P.C. was formerly known as The Cochran Firm-Cochran, Cherry, Givens, Smith & Sistrunk, P.C. and is the same entity (herein "TCF").

*(left margin, vertical text)* W I R T Z  L A W  APC  4365 Executive Drive, Suite 1460  San Diego, CA 92121  voice 858.259.5009

v.

THE COCHRAN FIRM, P.C.; THE
COCHRAN FIRM–COCHRAN,
CHERRY GIVENS, SMITH &
SISTRUNK, P.C.; DUNN LAW APC,
BRIAN T. DUNN; SAMUEL A.
CHERRY; J. KEITH GIVENS;
JOSEPH BARRETT; BARVIE
KOPLOW; and DOES 1-10, inclusive

Counterdefendants

[Remainder of page intentionally left blank]

W I R T Z   L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTS AS ALLEGED IN MCMURRAY'S AMENDED COUNTER
        CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    12(b)(6) STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     MCMURRAY'S RICO CLAIMS ARE NOT PLEAD WITH
        SPECIFICITY, LACK A PREDICATE FRAUDULENT ACT,
        PLAUSIBLE ALLEGATIONS OF A PATTERN AND/OR ACTUAL
        INJURY TO MCMURRAY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Pleading Civil RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    McMurray Failed to Plead Fraud Based Predicate Acts with
              the Particularity Required by Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . 5

        C.    McMurray Failed to Plead Any Actual Injury to His Business
              or Property Proximately Caused By Fraud-Based Predicate
              Acts and Thus Lacks Standing to Assert Alleged RICO
              Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D.    McMurray Failed to Plead a Pattern of Racketeering Activity . . . . . 10

V.      MCMURRAY'S FRAUD CLAIM LACKS SPECIFICITY AND FAILS
        TO ALLEGE REPRESENTATIONS THAT ARE FALSE AS A
        MATTER OF LAW, NOR ACTUAL OR JUSTIFIABLE RELIANCE . . . 11

VI.     MCMURRAY'S CLAIM FOR INTERFERENCE WITH PROSPECTIVE
        BUSINESS ADVANTAGE FAILS TO PLEAD A REASONABLE
        PROBABILITY OF FUTURE ECONOMIC GAIN AND IS
        DEPENDENT ON HIS OTHER CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.    LICENSEE ESTOPPEL PREVENTS MCMURRAY FROM
        CHALLENGING THE VALIDITY OF THE MARK . . . . . . . . . . . . . . . . 15

VIII.   MCMURRAY'S LANHAM ACT CLAIMS ARE NOT PLED WITH

W I R T Z   L A W   APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

PARTICULARITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  Mcmurray's Fifth Cause of Action Fails to Plead the Who, What, When, Where, and How of His Alleged "False" Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.  Mcmurray's Reverse Passing off Claim Is Misguided Because it Does Not Allege That TCF Is Representing its Legal Services as Those of Mcmurray . . . . . . . . . . . . . . . . . . . . . . . 18

IX.  MCMURRAY'S CALIFORNIA RIGHT OF PUBLICITY CLAIM FAILS TO ALLEGE HOW COUNTER DEFENDANTS CAN BE HELD LIABLE FOR THE FAILURE OF A LICENSEE TO UPDATE ITS WEBSITE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X.  MCMURRAY'S UNFAIR COMPETITION CLAIM IS ENTIRELY DEPENDENT ON HIS OTHER CAUSES OF ACTION . . . . . . . . . . . . . . 19

XI.  MCMURRAY'S CLAIMS UNDER CIVIL CODE §3439 ET SEQ MUST FAIL BECAUSE MCMURRAY DOES NOT ALLEGE THAT TCFLA WAS INSOLVENT AT THE TIME THE ALLEGED TRANSFERS OCCURRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XII.  MCMURRAY LACKS STANDING TO ASSERT TCFLA'S SUPPOSED CONVERSION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

W I R T Z   L A W   APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

## TABLE OF AUTHORITIES

Cases

*Allwaste, Inc. v. Allwaste Recycling, Inc.* (9th Cir. 1995) 65 F.3d 1523 . . . . . . . . . 11

*Anza v. Ideal Steel Supply Corp.* (2006) 547 U.S. 451 . . . . . . . . . . . . . . . . . . . . . . 8

*Architectural Mailboxes, LLC v. Epoch Design, LLC*
   (S.D. Cal. Apr. 28, 2011) 10CV974 DMS CAB, 2011 WL 1630809 . . . . . 17

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beck v. Prupis* (2000) 529 U.S. 494 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Berg v. First State Ins. Co.* (9th Cir. 1990) 915 F.2d 460 . . . . . . . . . . . . . . . . . . . . 7

*Borsellino v. Goldman Sachs Group, Inc.* (7th Cir. 2007) 477 F3d 502 . . . . . . . . . 4

*Chaset v. Fleer/Skybox Int'l* (9th Cir. 2002) 300 F.3d 1083 . . . . . . . . . . . . . . . . 5,7,8

*Dastar Corp. v. Twentieth Century Fox Film Corp.* (2003) 539 U.S. 23 . . . . . . . . 18

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal. 4th 376 . . . . . . . . 14

*Destfino v. Reiswig* (9th Cir. 2011) 630 F3d 952 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.*
   (C.D.Cal.2010) 711 F. Supp .2d 1074 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hill v. Opus Corp.* (C.D. Cal. 2011) 841 F. Supp. 2d, 1070 . . . . . . . . . . . . . . . . 8,9

*H.J. Inc. v. Nw. Bell Tel. Co.* (1989) 492 U.S. 229 . . . . . . . . . . . . . . . . . . . . . . 5,10,11

*In re Tobacco II Cases* (2009) 46 Cal. 4th 298 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kearns v. Ford Motor Co.* (9th Cir.2009)  567 F.3d 1120 . . . . . . . . . . . . . . . . . . . 17

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*
   (9th Cir. 1991) 940 F.2d 397 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,6

*Lauter v. Anoufrieva* (C.D. Cal. 2008) 642 F. Supp. 2d 1060 . . . . . . . . . . . . . . . . 10

*Odom v. Microsoft Corp.* (9th Cir. 2002) 486 F.3d 541 . . . . . . . . . . . . . . . . . . . . . . 4

*Ove v. Gwinn* (9th Cir. 2001) 264 F.3d 817 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.*
   (9th Cir. 1963) 318 F.2d 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pellerin v. Honeywell Intern., Inc.* (2012) 877 F.Supp.2d 983 . . . . . . . . . . . . . . . 19

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*

    (C.D.Cal.2009) 642 F.Supp.2d 1112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*

    (9th Cir. 1986) 806 F.2d 1393 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,6

*Sedima, S. P. R. L. v. Imrex Co.* (1985) 473 U.S. 479 . . . . . . . . . . . . . . . . . . . . . 7,9

*Swartz v. KPMG LLP* (9th Cir. 2007) 476 F3d 756 . . . . . . . . . . . . . . . . . . . . . . . . 5

*Turner v. Cook* (9th Cir. 2004) 372 F.3d 1219 . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vess v. Ciba–Geigy Corp. USA* (9th Cir.2003) 317 F.3d 1097 . . . . . . . . . . . . . . . 17

*Villanova University v. Villanova Alumni Educational Foundation, Inc.*

    (E.D. Pa. 2000) 123 F. Supp. 2d 293 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal. App. 3d 1324 . . . . . 12

*Youst v. Longo* (1987) 43 Cal. 3d 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes**

Cal. Bus. & Prof. Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Civil Code §3344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civil Code §3439 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Civ. Code § 3439.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Corp. Code § 16203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

FRCP 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FRCP  9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,17

15 U.S.C. §1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,16

18 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,8,10

W I R T Z   L A W APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

**Secondary Sources**

Model Rules of Prof'l Conduct R. 1.0(c) cmt. [2] . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rest.3d Law Governing Lawyers, §9 comt. e, pg. 90   . . . . . . . . . . . . . . . . . . . . . 13

W I R T Z  L A W APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

# I.    INTRODUCTION

Counterclaimants Randy H. McMurray, P.C. and Randy H. McMurray (collectively "McMurray") assert ten counterclaims: (1) violations of RICO; (2) Fraud; (3)Tortious interference with prospective business advantage; (4) Cancellation of Trademark; (5) Unfair Competition, False Advertising, Misappropriation and Passing off under Lanham Act 15 U.S.C. §1125(a); (6) California Right of Publicity; (7) California Unfair Competition; (8) Avoidance of Fraudulent Transfer; (9) Conversion; and (10) Breach of Fiduciary Duty.

# II.   FACTS AS ALLEGED IN MCMURRAY'S AMENDED COUNTER CLAIMS

In March 1999, Johnnie L. Cochran, Jr. ("Cochran"), Smith, Cherry, and Givens formed Cochran, Cherry, Givens & Smith LLP, a California limited liability partnership ("CA LLP"). (¶23)(All references are to McMurray's amended counterclaims.)  In June 1999, Givens allegedly invited McMurray to be a co-managing partner at the CA LLP's Los Angeles office ("LA office"). ( ¶24)  McMurray accepted the offer, and was purportedly promised "all legal rights as a partner of [CA] LLP[,]" and specifically all rights under the CA LLP's 1999 partnership agreement ( ¶¶24, 26) McMurray does not allege he ever signed anything admitting him as a partner of the CA LLP.

It was not until 2003 that McMurray alleges he requested "that his partnership status be documented." (¶27)  In April 2003, McMurray received a letter, attached to the amended counterclaims as Exhibit B, which allegedly memorialized McMurray's "elevation" "to the status of a named partner *of The Cochran Firm's Los Angeles Office*." (¶¶28, 89)(emphasis added)  In September 2004, Givens mailed an LLP Certificate of Registration to the State Bar of California which declared that McMurray was a Non-Partner attorney at the CA LLP. ( ¶¶29, 89)  McMurray claims this statement was false.  (¶29)

In December 2006, Cherry and Givens allegedly offered, and McMurray accepted, to transfer full ownership of the LA office in exchange for McMurray's

W I R T Z   L A W   APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

assumption of the LA office's debts and liabilities. (¶33,34)  Allegedly pursuant to that agreement, McMurray obtained a $900,000 loan to finance the office's operations, and, on February 1, 2007, formed The Cochran Firm Los Angeles, GP ("TCFLA") with Dunn. (¶¶34-35)  McMurray claims that Cherry and Givens approved TCFLA's 2007 Partnership Agreement and "consented" to TCFLA's use of the name "The Cochran Firm Los Angeles." (¶35)  At some unspecified time following TCFLA's formation, CCG&S LLP "ceased to exist." ( ¶36)

On September 21, 2007, Cochran's estate assigned its rights in the mark to Plaintiff. (¶37) On September 24, 2007, Cherry and Givens, purportedly by "fraudulent wire communication," "caused the cover sheet and abstract of the Assignment" of the mark to "give the appearance that the new owner of the registration was the Enterprise, when the assignment was to TCF-CCGSS." ( ¶92)

McMurray claims that "on and after March 8, 2005," and particularly during negotiations regarding McMurray's purchase of the LA office, Cherry and Givens failed to disclose the federal registration of THE COCHRAN FIRM trademark (the "mark") to him. ( ¶31)  McMurray does not allege how Plaintiff prevented McMurray from searching the USPTO's public website for the registration as part of his due diligence. McMurray also does not allege why, if he was unaware of Plaintiff's trademark rights, he continued to "remit payments to TCF-CCGSS, based on a percentage of recovery on settled cases..." (¶39)

In 2008, 2009, and 2010, Koplow, TCFLA's office administrator, allegedly "recorded bogus loans to McMurray" in TCFLA's tax returns to "disguise funds fraudulently transferred to Cherry, Givens, and Dunn." (¶38)  Aside from these allegedly "bogus loans," McMurray and Dunn operated TCFLA-GP without incident from 2007 through 2009. (¶38)

McMurray claims that in 2009 and 2010, while TCF and TCFLA were negotiating the terms of an operating/partnership agreement, he began questioning and investigating the "nature and legality" of "The Cochran Firm." (¶47)  McMurray's

spouse/lawyer, Yana Henriks, injected herself into the negotiations between TCF and TCFLA, and began meddling in TCFLA's business affairs. (¶¶49-52)

In 2009, Cherry and Niver "secretly recruited" Koplow. (¶48)  In early 2010, Koplow allegedly "defrauded the IRS" by attributing excess income to McMurray in TCFLA's tax returns that should have been attributed "to others." ( ¶91)  In "early 2011" Koplow allegedly "started a campaign of recruiting employees to bring complaints about McMurray's spouse..." (¶52) In "mid-2011," Koplow purportedly represented to McMurray that TCFLA could not make payroll, even though she allegedly "knew that TCFLA had at least $85,000 in funds in various accounts," and asked McMurray to loan TCFLA $115,000. ( ¶54)

Negotiations regarding a proposed operating/partnership agreement between TCFLA and Plaintiff broke down. (¶53)  On February 6, 2012, McMurray received a cease and desist letter from Plaintiff regarding his continued use of the trademark. (¶124)

In late January 2012, Dunn allegedly traveled to Florida, and he, Cherry, and Givens purportedly discussed "plans to oust McMurray from control of TCFLA" ( ¶56) Dunn allegedly paid his "trip expenses" with two credit cards McMurray claims were provided to Dunn for use in connection with "ordinary business expenses of TCFLA." (¶56)  McMurray asked Koplow about the credit charges, and she allegedly "lied" to him and "told" him that Dunn had attended a business meeting in Florida "on behalf of TCFLA." (¶56)

In February 2012, Dunn established The Cochran Firm California ("TCFCA"), a dba of Dunn Law APC.  (¶60)  Allegedly "at the behest" of Plaintiff, Cherry, and Givens, Dunn then filed Notices of Firm Name Change in several TCFLA cases stating that TCFLA changed its name to TCFCA.  (¶61)  Dunn then allegedly took other steps, allegedly at the behest of Plaintiff, in furtherance of the establishment of TCFCA. McMurray also alleges that Plaintiff (1) blocked McMurray's emails, (2) transferred thecochranfirmlosangeles.com away from McMurray's control

---

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER CLAIMS PURSUANT TO FRCP 12(B)(6)

### III.    12(b)(6) STANDARD OF REVIEW

Rule 8(a)(2) requires a party to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint survives a motion to dismiss only if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While all allegations of material fact are taken as true, and construed in the light most favorable to the nonmoving party, . . . conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn* (9th Cir. 2001) 264 F.3d 817, 821.  "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555.

In addition, in this case Rule 9(b)'s heightened pleading standard applies to all of McMurray's counter-claims.  FRCP 9(b)  By its terms, Rule 9(b) applies to all allegations of fraud, not just claims of fraud. *Borsellino v. Goldman Sachs Group, Inc*. (7th Cir. 2007) 477 F3d 502, 507.  Specifically, in cases claiming violations of RICO arising out of mail and wire fraud, Rule 9(b)'s heightened pleading standard applies. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.* (9th Cir. 1986) 806 F.2d 1393, 1399-1401.

Rule 9(b)'s heightened pleading standard requires the pleader to "state with particularity the circumstances constituting fraud."  FRCP 9(b).  Requiring a party to plead fraud with particularity permits a defendant to "prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.*  (9th Cir. 2002) 486 F.3d 541, 553. Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, **plus the role of each defendant in each scheme**." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.* (9th Cir. 1991) 940 F.2d 397, 405(emphasis added).  The "specific content of the false representations as well as the identities of the parties to the misrepresentation" must also be pleaded with particularity. *Schreiber*, 806

W I R T Z   L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

F.2d at 1401.  Where several defendants are sued in connection with an alleged fraudulent scheme, plaintiffs must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP* (9th Cir. 2007) 476 F3d 756, 764–765.  Conversely, allegations that "everyone did everything" justify dismissal of the complaint. *Destfino v. Reiswig* (9th Cir. 2011) 630 F3d 952, 958. McMurray wholly fails to meet these standards.

## IV.  MCMURRAY'S RICO CLAIMS RE NOT PLEAD WITH SPECIFICITY, LACK A PREDICATE FRAUDULENT ACT AND PLAUSIBLE ALLEGATIONS OF A PATTERN OF CRIMINAL ACTIVITY.

### A.    Civil RICO

McMurray alleges a RICO violation and § 1962(d) conspiracy to commit a RICO violation.  "To prevail on a civil RICO claim, a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l* (9th Cir. 2002) 300 F.3d 1083, 1086. A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  RICO requires the commission of at least two acts of racketeering activity within a 10-year period. § 1961(5).  The acts of racketeering must be part of a "pattern" of such activity, meaning the plaintiff must show that the acts are both related and continuous. *H.J. Inc. v. Nw. Bell Tel. Co.* (1989) 492 U.S. 229, 239.  RICO also requires injury ("concrete financial loss") to the plaintiff's business or property "by reason of" the RICO violation, 18 U.S.C. § 1964(c), meaning the plaintiff must "show that his injury was proximately caused by the [prohibited] conduct." *Chaset*, 300 F.3d at 1086-7 (alteration in original).

### B.    McMurray Failed to Plead Fraud-Based Predicate Acts with the Particularity Required by Rule 9(b)

McMurray bases his RICO claim on predicate acts of purported mail, wire, and bank fraud, and is required to adequately plead with particularity the elements of those

W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

offenses.  A plaintiff pleading a RICO violation based on mail and wire fraud must allege that the defendants formed a scheme to defraud, used the United States mails or wires in furtherance of the scheme, and did so with the specific intent to deceive or defraud. *Schreiber*, 806 F.2d at 1399-1400.  The bank fraud statute prohibits the knowing or attempted execution of a scheme to obtain monies or other property under the custody or control of a financial institution "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344.  McMurray is required to "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster*, 940 F.2d at 205.  He is also required to plead, with particularity, the "specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber*, 806 F.2d at 1401.

McMurray proffers numerous potential predicate acts of purported mail, wire, and bank fraud.  Some are deficient with respect to time. (¶¶54, 56, 75, 78, 86, 90-91, 98)  Most are deficient with respect to place. (¶¶28-29, 31, 33, 54, 56, 58-59, 61-62, 65, 73-75, 77-78, 86, 89, 90-95, 97-100)  Some are deficient with respect to manner, (¶¶31, 56, 59, 61, 73, 75, 86, 90-91, 98), and more problematically, in some instances McMurray fails to plead that an allegedly fraudulent representation/non-disclosure was made via mail, telephone, facsimile, or email. ( ¶¶31, 56, 59, 61, 73, 75, 86, 90-94, 98)  Those deficiencies are not cured by McMurray's later allegations, which merely plead, in a conclusory fashion, that the representations were made through the mail *or* interstate wires and provide no further specific information. (¶¶81, 88, 93-94, 110)  Moreover, McMurray often characterizes a certain representation or non-disclosure as being fraudulent, but then alleges facts in the Amended Counterclaims or attaches an exhibit showing that the representation or non-disclosure was not fraudulent at all.  McMurray also concludes that certain representations and non-disclosures were fraudulent, but fails to plead facts showing *how* they were fraudulent.

The representations and communications McMurray alleges form the predicate acts of his RICO claim include both representations to McMurray himself and those to

W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

third parties.  McMurray's second cause of action alleges fraud based on the same representations made to McMurray himself, Plaintiff therefore incorporates by reference its arguments in Section V with regards to Plaintiff's representations in (1)  the April 2003 letter allegedly elevating him to named partner "of The Cochran Firm's Los Angeles office" (2) Plaintiff's alleged failure to disclose the federal trademark registration of THE COCHRAN FIRM mark (3) loans reported in his corporate tax returns which were allegedly concealed from him, and (4) representations in 2011 that TCFLA would not make payroll without a loan.

With regards to representations made by Dunn, Plaintiff incorporates by reference Dunn's motion to dismiss the amended counterclaims.  In addition, McMurray fails to allege Plaintiff's specific role in any of Dunn's allegedly fraudulent acts other than his general statement that all of Dunn's actions were "at the behest" of Plaintiff, Cherry, and Givens.

Because McMurray has failed to plead with specificity any plausible predicate acts, his RICO claim must be dismissed.

### C.   McMurray Failed to Plead Any Actual Injury to His Business or Property Proximately Caused By Fraud-Based Predicate Acts and Thus Lacks Standing to Assert Alleged RICO Violations

A plaintiff must plead actual injury, meaning "financial loss or injury," *Berg v. First State Ins. Co.* (9th Cir. 1990) 915 F.2d 460, 464, and must demonstrate that the loss he suffered was a "concrete financial loss." *Chaset*, 300 F.3d at 1087.  "[T]he [civil RICO] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S. P. R. L. v. Imrex Co.* (1985) 473 U.S. 479, 496.  Moreover, injuries to the plaintiff's business or property caused by acts which are not acts of racketeering are not compensable under RICO, even if the act was committed in furtherance of a RICO conspiracy. *Beck v. Prupis* (2000) 529 U.S. 494, 495-96.

With regard to causation in a RICO case, the phrase "by reason of" in 18 U.S.C.

W I R T Z  L A W APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

---

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER
CLAIMS PURSUANT TO FRCP 12(B)(6)
7

§ 1964(c) is not to be "read broadly to require merely that the claimed violation was a 'but for' cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.* (2006) 547 U.S. 451, 456.  The RICO plaintiff must also show that the injury to his business or property was proximately caused by the predicate acts of racketeering. *Chaset*, 300 F.3d at 1087.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.

The plaintiff must be the direct victim of the predicate acts, and "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 457-58, 460.  "[A] plaintiff cannot recover under RICO for injuries caused to a third party." *Hill v. Opus Corp.* (C.D. Cal. 2011) 841 F. Supp. 2d, 1070, 1096.

McMurray alleges the following injuries to his business and property: (1) "loss of his practice"; (2) "loss of his investment in assuming the firm debt and $900,000 loan for the rights he did not receive"; (3) "IRS taxes levied against him"; (4) "EDD charges that are not for his employees"; (5) "liens on any future tax refunds"; (6) "diverted cases and bank accounts"; and (7) "loss of reputation." (¶101)  McMurray also appears to allege that Plaintiff's assertion of its trademark rights against him and/or its "misappropriation" of Cochran's name for its own exclusive use, as well as McMurray's removal as managing partner of TCFLA, are additional injuries. (¶¶1, 35, 54-55, 56, 69, 82, 84-85, 87, 92)

With regard to the IRS taxes and EDD charges, McMurray does not allege that he paid those taxes or charges.  McMurray's own allegations demonstrate that the IRS taxes and EDD charges remain unpaid (¶¶ 73, 75-78, 107-108)  Although McMurray alleges that the EDD "levied" his bank accounts on February 21, 2013, he does allege that any levy had been executed. (¶77)  At most, McMurray has thus alleged *loss of access* to funds in his accounts, not the loss of the funds themselves. (¶77)

Similarly, "liens on any future tax refunds" are too speculative to be actual, concrete financial loss. McMurray does not allege the actual loss of any tax refund due to enforcement of the liens.

Nor can McMurray claim that he has, as of the date of the filing of the RICO claim, actually lost any of his investment in TCFLA. The dissolution proceedings involving TCFLA are still pending in the state court action, and McMurray cannot know how much of his "investment" in that partnership will be recouped.

Regarding the purportedly "diverted . . . bank accounts," those bank accounts are TCFLA accounts. (AC, at ¶¶63, 66) The funds in those accounts are the property of TCFLA, not McMurray. *See* Cal. Corp. Code § 16203 ("Property acquired by a partnership is property of the partnership and not of the partners individually."). To the extent that the alleged diversion of those accounts may constitute bank fraud, "[t]he bank fraud statute is designed to protect financial institutions," *Hill*, 841 F. Supp. 2d at, not individuals.

As for the "diverted cases," those too would be the assets of TCFLA, not McMurray individually. The Limited Receiver in the state court action is empowered to take actions to protect TCFLA's rights and to seek reimbursement of undisputed costs advanced by TCFLA in former TCFLA cases. (Dunn's RJN, Exhibit E-F)

As for McMurray's loss of "his practice," this claim of injury is too vague and too speculative. The Amended Counterclaims make only generalized and conclusory references to Counter-Defendants' "plan" to "oust" him from his position of control in the firm. McMurray does not allege how, or even if, this "plan" to "oust him from TCFLA was successful, nor does he allege that this "plan' was pursued or accomplished through the predicate acts he alleges support his RICO claim. Since "the compensable injury [in a civil RICO case] . . . is the harm caused by predicate acts," *Sedima,* 473 U.S. at 497, and acts which are not acts of racketeering are not compensable under RICO, even if done in furtherance of a RICO conspiracy, *Beck*, 529 U.S. at 495-96, RICO provides no remedy for this alleged injury.

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER CLAIMS PURSUANT TO FRCP 12(B)(6)

As for the claimed injury of loss of reputation, injury to reputation does not constitute injury to business or property under RICO, and would not suffice under § 1964(c) even if McMurray had alleged that the injury to his reputation would result in loss of future income. *Lauter v. Anoufrieva* (C.D. Cal. 2008) 642 F. Supp. 2d 1060, 1086.

Finally, regarding interference with McMurray's "right" to use Cochran's name in his law practice, McMurray alleges that TCFLA's 2007 Partnership Agreement "specifically states that each partner has an independent right to use the 'Cochran' name" and that Cherry and Givens approved that agreement. (¶35)   The 2007 Partnership Agreement says no such thing. (*See* Exhibit C to Amended Counterclaims) That agreement merely granted McMurray the right to *continue the business of the TCFLA partnership* under the name "The Cochran Firm Los Angeles" following certain specified events.  *Id.*  This clause clearly merely controls the partners claims to the name, *as against each other*.  It cannot, and does not, grant the partners a right in a name owned and federally registered by another party.

McMurray's RICO claim should therefore be dismissed for failure to allege any injury to his business or property proximately caused by the purported acts of mail, wire, and bank fraud.

### D.    McMurray Failed to Plead a Pattern of Racketeering Activity

A "pattern" of racketeering activity is not necessarily established through proof of only two predicate acts. *H.J. Inc.*, 492 U.S. at 236. The plaintiff must show that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.  *Id.* at 239.  Racketeering acts are "related" if they have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. A showing of either closed-ended or open-ended continuity is required to prove the requisite threat of continued criminal activity. See *Id.* at 240-41. Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of

W I R T Z   L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

repetition." *Id.* at 241.  Open-ended continuity also exists if the predicates are "part of an ongoing entity's regular way of doing business," or are "a regular way of conducting defendants' ongoing legitimate business." *Id.* at 242-43.  Where the predicate acts are "isolated or sporadic," there is no open-ended continuity. See *Allwaste, Inc. v. Allwaste Recycling, Inc.* (9th Cir. 1995) 65 F.3d 1523, 1526. Close-ended continuity refers to a "closed period of repeated conduct," and requires the pleading of "a series of related predicates over a substantial period of time." *H.J. Inc.* 492 U.S. at 241-42.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id.* at 242.   According to the Supreme Court, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* At 242

McMurray's allegations do not create a plausible inference of either open or closed-ended continuity.  First, McMurray adequately alleges few, if any predicate acts of mail or wire fraud.  Second, the alleged predicate acts occurred sporadically with large gaps of time in between acts.  Third, the predicate acts pleaded by McMurray are not related to each other in the way that RICO requires, and a lack of relatedness precludes a finding of closed-ended continuity. *H.J. Inc.*, 492 U.S. at 242.  McMurray alleges a number of different purposes, results, participants, victims, and methods of commission.  Fourth, there is no threat of repetition.  TCFLA is in the process of dissolution.

McMurray's failure to allege any such pattern in this case justifies dismissal of his RICO counterclaim. *See Turner v. Cook* (9th Cir. 2004) 372 F.3d 1219, 1230-31.

## V.  MCMURRAY'S FRAUD CLAIM LACKS SPECIFICITY AND FAILS TO ALLEGE REPRESENTATIONS THAT ARE FALSE AS A MATTER OF LAW, NOR ACTUAL OR JUSTIFIABLE RELIANCE.

Counter-Defendants hereby incorporate Section IV(B)(1) by reference as if set forth in full.

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

The essential allegations for an action in fraud or deceit are a *false* representation as to material fact, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage. *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal. App. 3d 1324, 1331.  The absence of any required element will preclude recovery.   And while a Plaintiff's (or counterclaimant's) pleading must be taken as true, the allegations in a fraud action need not be liberally construed.    "Instead, fraud must be specifically pleaded. This means: (1) general pleading of the legal conclusion of fraud is insufficient; and (2) every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect." Moreover, Plaintiff must show both actual reliance (that the representation actually caused Plaintiff to alter his legal position) and justifiable reliance (i.e., that circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation).  *Id.* at 1331-32.

McMurray alleges that: (1) he was told he was a partner of TCF, (2) the trademark registration was concealed from him, (3) loans reported in his corporate tax returns were concealed from him, and (4) he was told that TCFLA would not make payroll without a loan.

McMurray only alleges one specific supposed representation that he was a partner of TCF in a letter dated April 21, 2003 (Exhibit B to the Amended Counterclaims).  However, what the letter truly says is "Please let this letter serve to memorialize your elevation in the firm to the status of a named partner *of The Cochran Firm's Los Angeles office*." (Emphasis added)  This representation is not false as a matter of law.  First, this representation does not say that McMurray was a partner of either Plaintiff or the CA LLP.  Second, McMurray completely ignores the distinction between an equity partner and a nonequity partner, which is an accepted distinction, oft-practiced in multi-tier structured firms, in the legal services industry.  Rest.3d Law Governing Lawyers, §9 comt. e, pg. 90 ("Under some firm agreements, certain

W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

1  classifications of 'partner' (sometimes referred to as nonequity partners) may have no

2  managerial power or participation in firm profits and thus be similar in some respects

3  to senior employees.") This alleged representation cannot, as a matter of law, be

4  fraudulent as the first element of fraud is a *false* representation.  *In re Tobacco II Cases*

5  (2009) 46 Cal. 4th 298. McMurray alleges no other false representation regarding his

6  status with the firm with specificity.

7      McMurray next alleges that, during negotiations over the ownership of the Los

8  Angeles office and the structure of the parties' relationship, the existence of and

9  ownership of a federal trademark registration for THE COCHRAN FIRM was

10  concealed from him. McMurray merely alleges that "[a]s partners", Cherry and Givens

11  had a duty to disclose the trademark to him.  However, he was not yet a partner when

12  the supposed non-disclosure occurred. In addition, as stated above, McMurray was

13  admittedly not a true equity partner of TCF.  McMurray fails to allege with specificity

14  any other source of a duty to inform him about the trademark.  Additionally, McMurray

15  has not and cannot plead *justifiable* reliance on this "concealment."   In order to do so,

16  he would have to plead circumstances which were such to make it reasonable for

17  McMurray not conduct any independent inquiry or investigation.  This he has not and

18  cannot do.  It is common knowledge that a federal trademark registration is readily

19  available on the USPTO's website.  Furthermore, it is unfathomable that an attorney

20  could reasonably believe that, by purchasing a local office of a National law firm he

21  was obtaining the unfettered and unrestricted rights to use the firm name forever.

22      Next, McMurray alleges that "bogus" loans reported in his corporate tax returns

23  were concealed from him.  This likewise cannot support a fraud claim.  McMurray

24  neither pleads actual reliance on the loans nor justifiable reliance.

25      Finally, McMurray alleges that Koplow supposedly told him that TCFLA could

26  not make payroll and urged him to make a loan to TCFLA to cover payroll.  (¶128)

27  McMurray alleges that Koplow somehow knew that TCFLA had $85,000 in "various

28  accounts" which could have been used to meet payroll.  McMurray fails to allege how

Koplow knew that TCFLA did in fact have the funds to meet payroll. McMurray does not allege that the funds in these "various accounts" could in fact be used for payroll purposes, nor does he allege that the $85,000 would have covered the deficit. In addition, McMurray's allegations reveal a blatant supervening cause of his alleged damage: the failure of TCFLA to repay this loan. McMurray alleges that he "never recouped the money he invested" however, as McMurray's allegations admit (¶38), the state lawsuit winding up TCFLA is still pending and a receiver is still in place. When TCFLA is finally wound up, McMurray could recover this amount allegedly loaned to TCFLA. It is thus clear that McMurray's alleged injury has not yet occurred.

## VI. MCMURRAY'S CLAIM FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE FAILS TO PLEAD A REASONABLE PROBABILITY OF FUTURE ECONOMIC GAIN AND IS DEPENDENT ON HIS OTHER CLAIMS

In order to plead a claim for interference with prospective economic advantage, there is a threshold requirement of *reasonable probability* of economic gain. *Youst v. Longo* (1987) 43 Cal. 3d 64, 74. McMurray merely alleges that counterdefendants actions disrupted McMurray's relationship with "potential clients and other members of the public," as well as attorneys and staff TCFLA. (¶133-135) These allegations are too speculative to state a plausible claim for relief.

Furthermore, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal. 4th 376, 392-93. McMurray attempts to allege the independent wrongfulness of counterdefendants' alleged interference only "*as described herein*." (¶135) This claim is therefore dependent on McMurray's pleading of the wrongfulness of the actions alleged. Thus if his other causes of action are dismissed (as they must be), his claim for interference with prospective business advantage must be dismissed as well.

W I R T Z   L A W APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

---

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER CLAIMS PURSUANT TO FRCP 12(B)(6)

14

## VII.    LICENSEE ESTOPPEL PREVENTS MCMURRAY FROM CHALLENGING THE VALIDITY OF THE MARK

A licensee of a trademark may not set up any adverse claim in it as against its licensor. *Pacific Supply Co-op. v. Farmers Union Central Exchange Inc.* (9th Cir. 1963) 318 F.2d 894, 908.  McMurray claims that he was tricked into signing the partnership agreement which contained an express license provision for use of THE COCHRAN FIRM mark.  However, McMurray has alleged circumstances which would support the finding of at least an implied license to use the Cochran Firm name. McMurray's conclusory allegations that there was no license between himself and National are irrelevant to the inquiry of whether the face of the counterclaims reveals an implied license.  "It is irrelevant whether the parties thought of the arrangement at the time in terms of an implied license. The test for whether or not an implied license existed is based solely on the objective conduct of the parties." *Villanova University v. Villanova Alumni Educational Foundation, Inc.* (E.D. Pa. 2000) 123 F. Supp. 2d 293, 149.

The objective conduct of the parties, as alleged by McMurray, demonstrate an implied license to use THE COCHRAN FIRM mark while the parties negotiated the terms of a formal partnership agreement.  McMurray alleges that the Los Angeles office was transferred to him, that he paid fees to TCF, and that, if a formal partnership agreement had been reached between TCFLA and National, it would have contained a license to use of the mark.  He does not allege that, at any time prior to National's express revocation of McMurray's license to use the mark, National demanded that he cease use of the mark, as one would expect of a registered trademark owner when another is using his mark absent a license to do so.  It is clear from McMurray's pleading that his use of the mark was with the permission of National.  Thus McMurray, as a former licensee of THE COCHRAN FIRM mark, is now estopped to challenge the mark's validity.

/ / /

W I R T Z   L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

---

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER
CLAIMS PURSUANT TO FRCP 12(B)(6)

## VIII.   MCMURRAY'S FEDERAL UNFAIR COMPETITION AND FALSE ADVERTISING CLAIM IS NOT PLED WITH PARTICULARITY

McMurray's fifth cause of action is in fact four separate claims combined into one claim for relief.  Nevertheless, McMurray has failed to plead any of the causes of action he names.  Generally, 15 U.S.C. §1125(a)(1)(A) prohibits:

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities...

This paragraph has been interpreted to create several different causes of action including counterclaimants' claims of unfair competition, passing off and false advertising.  However, each of these causes of action requires that TCF's representation of fact be <u>false</u> in order to be actionable.  McMurray claims that TCF is not a nationwide law firm, but ignores the meaning of the phrase "law firm."  the comment to Rule 1.0(c) of the ABA Model Rules of Professional Conduct ("ABA Model Rules") provides that "[w]hether two or more lawyers constitute a firm . . . can depend on the specific facts. . . . If [two or more lawyers] present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules." Model Rules of Prof'l Conduct R. 1.0(c) cmt. [2].  Thus, McMurray's allegations undermine his causes of action.  McMurray alleges that TCF holds itself out as one national firm, it <u>is</u> therefore, as a matter of law and under the ABA Model Rules, one national firm.

Next, McMurray claims that counterdefendants misrepresented, somehow through *a licensee*, that McMurray was a partner of TCF.  However (1) as discussed above, McMurray <u>was</u> admittedly a non-equity partner therefore this representation is not false and, (2) McMurray fails to allege how TCF can be held liable for its licensee's failure to remove references to McMurray from its website.

W I R T Z   L A W   APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

W I R T Z  L A W APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

None of the representations which McMurray alleges are therefore, as a matter of law, false and McMurray's fifth cause of action must be dismissed.  Furthermore, McMurray fails to plead any of the four claims he has grouped together in his fifth cause of action adequately.

**A.    Mcmurray's Fifth Cause of Action Fails to Plead the Who, What, When, Where, and How of His Alleged "False" Advertising**

The Ninth Circuit has yet to expressly hold that FRCP 9(b) applies to false advertising claims under the Lanham Act. It has however applied Rule 9(b) to other types of false advertising claims. *See Kearns v. Ford Motor Co.* (9th Cir.2009)  567 F.3d 1120, 1125–27 (applying Rule 9(b) to claim for false advertising under California Business and Professions Code § 17200); *Vess v. Ciba–Geigy Corp. USA* (9th Cir.2003) 317 F.3d 1097, 1102–04 (applying Rule 9(b) to claim for false advertising under California Business and Professions Code § 17500). District courts have, in turn, extended that Rule 9(b) to false advertising claims under the Lanham Act. *See Ecodisc Tech. AG v. DVD Format/Logo Licensing Corp.* (C.D.Cal.2010) 711 F. Supp .2d 1074, 1085; *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.* (C.D.Cal.2009) 642 F.Supp.2d 1112, 1123–24. Recently, the District Court for the Southern District of California found that a federal "false advertising claim is subject to the pleading requirements of Rule 9(b). Accordingly, Plaintiff must include 'the who, what, when, where, and how' of the alleged false advertising." *Architectural Mailboxes, LLC v. Epoch Design, LLC* (S.D. Cal. Apr. 28, 2011) 10CV974 DMS CAB, 2011 WL 1630809.

McMurray's amended counterclaims refer merely to "false and misleading descriptions and representations of fact in connection with...legal services and firm composition and expertise on their website and commercial advertising and promotion." (¶175)  Such an allegation is too vague.  McMurray has failed to plead the who, what, when, where, and how of his alleged "false" advertising.  This claim must therefore be dismissed.

---

COUNTER-DEFENDANTS' MOTION TO DISMISS AMENDED COUNTER
CLAIMS PURSUANT TO FRCP 12(B)(6)

**B.** **McMurray's Passing off Claim Is Misguided Because it Does Not Allege That TCF Is Representing its Legal Services as Those of Mcmurray**

McMurray claims TCF is passing off his accomplishments as those of TCF and he has been damaged thereby and thus appears to be in essence claiming reverse passing off. "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. [citation] 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.* (2003) 539 U.S. 23, 32. McMurray's reverse passing off claim is thus misguided as it does not allege the most essential element of such a claim: that TCF is representing its legal services as those of McMurray. Such a claim would involve, for example, signing McMurray's name on briefs produced by TCF. McMurray does not, and cannot, make such a claim. His passing off claim must therefore be dismissed. Such a claim is not a proper vehicle for the relief he seeks.

**IX.** **MCMURRAY'S CALIFORNIA RIGHT OF PUBLICITY CLAIM FAILS TO ALLEGE HOW COUNTER DEFENDANTS CAN BE HELD LIABLE FOR THE FAILURE OF A LICENSEE TO UPDATE ITS WEBSITE**

Civil Code §3344(a) prohibits the knowing commercial use of another's name, voice, signature, photograph, or likeness without their consent and provides for the recovery of damages "sustained by the person or persons injured as a result thereof." McMurray alleges that an Illinois licensee of Plaintiff used McMurray's "identity" as the "brand and public image" of the Illinois office. McMurray alleges this was accomplished by use of McMurray's name, likeness and biographical accomplishments in online promotional materials. However, McMurray fails to allege a plausible theory under which Plaintiff can be held liable for an Illinois licensee's actions on its website. Furthermore, Civil Code 3344(a) does not include a person's "biographical accomplishments" as among the items protected. McMurray has therefore failed to

WIRTZ LAW APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

plead a plausible claim for relief under this statute.

## X.  MCMURRAY'S UNFAIR COMPETITION CLAIM IS ENTIRELY DEPENDENT ON HIS OTHER CAUSES OF ACTION

California's unfair competition statute prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code §17200.  McMurray's unfair competition claim is therefore dependent on the survival of his underlying claims of unlawful activity, his allegations of fraud, and his allegations of false advertising.  *Pellerin v. Honeywell Intern., Inc.* (2012) 877 F.Supp.2d 983 (Claim under California's unfair competition law must be dismissed if plaintiff has not stated a claim for the predicate acts upon which he bases the claim)

## XI.  MCMURRAY'S CLAIMS UNDER CIVIL CODE §3439 ET SEQ MUST FAIL BECAUSE MCMURRAY DOES NOT ALLEGE THAT TCFLA WAS INSOLVENT AT THE TIME THE ALLEGED TRANSFERS OCCURRED

McMurray's claims under Civil Code §3439 et seq stem from his alleged status as a creditor of TCFLA**.**  His allegation that he is also "owed distribution as a TCFLA partner" must be ignored, as a partner is not a "creditor" of a partnership within the meaning of the Uniform Fraudulent Transfer Act.

"A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation **and** the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Civ. Code § 3439.05 (emphasis added).  McMurray does not allege that TCFLA was insolvent at the time the alleged transfers occurred.  Even if he so alleged, he has no right to the remedy sought.  McMurray requests "the Court order the attachment of the

W I R T Z  L A W  APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009

transferred assests," however he is only entitled to attachment up to the value of the debt allegedly owed to him.  He does not allege what this debt is or its amount.  His claim must be dismissed.

## XII.   MCMURRAY LACKS STANDING TO ASSERT TCFLA'S SUPPOSED CONVERSION CLAIM

McMurray's claim for conversion is based upon the alleged conversion of various assets of TCFLA.  (¶214) McMurray does not plead as a partner on behalf of TCFLA but for his own losses as a result of alleged conversion of TCFLA's assets. Furthermore, as McMurray alleges, TCFLA is under the control of a receiver. (¶38,67,86)  Only that receiver may assert the rights of TCFLA. McMurray therefore does not have standing and his claim of conversion must be dismissed without leave to amend.

## XIII.  CONCLUSION

For all of the foregoing reasons, McMurray's Amended Counterclaims must be dismissed without leave to amend and Counterdefendants Cherry, Givens, and Koplow must be dismissed from this action.

Respectfully Submitted,

DATED:        April 22, 2013            **WIRTZ LAW APC**

By:      _/s/ Richard M. Wirtz_
          Richard M. Wirtz
          Attorneys for Plaintiff

W I R T Z   L A W   APC
4365 Executive Drive, Suite 1460
San Diego, CA 92121
voice 858.259.5009