Yana G. Henriks (SBN 250638)
Email: yhenriks@aol.com
MCMURRAY HENRIKS LLP
5670 Wilshire Boulevard, Suite 1450
Los Angeles, CA 90036
Telephone:  (323) 931-6200
Facsimile:   (323) 931-9521

Victor K. Sapphire (SBN 218634)
Email:  vic.sapphire@novakdruce.com
NOVAK DRUCE CONNOLLY BOVE LODGE + QUIGG LLP
333 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
Telephone:  (213) 787-2500
Facsimile:   (213) 687-0498

Attorneys for Defendants and Counterclaimants
RANDY H. McMURRAY, P.C. and RANDY H.
McMURRAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COCHRAN FIRM, P.C., | Case No. CV12-05868-SJO (MRWx) |
| Plaintiff, | The Honorable S. James Otero |
| v. | **DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS** |
| THE COCHRAN FIRM LOS ANGELES, LLP; RANDY H. McMURRAY, P.C.; RANDY H. McMURRAY; and DOES 1-10, | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | DATE:        May 20, 2013<br>TIME:        10:00 a.m.<br>PLACE:      Courtroom 1, Courtroom of the Hon. S. James Otero |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..........................................................................................1

II.   DISCUSSION .............................................................................................2

 A.    Legal Standard .................................................................................2

 B.    Counterdefendants' Motion Fails to Establish There is No Plausible
  Basis for Relief in the RICO Claim .................................................2

  1. The AC alleges fraud-based predicate acts with sufficient
   particularity ........................................................................4

  2. McMurray has alleged cognizable RICO injuries .....................5

  3. McMurray's allegations of a pattern of racketeering activity are
   sufficient as a matter of law ...............................................8

 C.    Fraud Is Pleaded in Compliance with Rule 9 ...............................11

  1. The role of each counterdefendant in fraudulent scheme is
   pleaded with requisite particularity ..................................11

  2. Justifiable reliance argument is not appropriate for a
   determination on motion to dismiss ...................................12

 D.    McMurray Properly Pleaded Interference With Prospective
  Economic Advantage .....................................................................12

 E.    Plaintiff's Licensee Estoppel Has No Merit .................................13

 F.    McMurray's Lanham Act Claims Are Sufficiently Pleaded .................15

  1. Counterdefendants' argument comprises factual dispute
   insufficient to sustain a motion to dismiss under Rule 12(b) ...........15

  2. Counterdefendants have no rights to use McMurray's identity ........16

  3. Counterdefendants' conduct and arguments obviate any
   "irreparable injury" that gave rise to their preliminary injunction ....16

  4. The false advertising claim is sufficiently pleaded............................17

  5. "Passing off" exists to address the claimed misconduct...................18

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

i

1

G.    McMurray Pleads His Right to Publicity Claim with

Sufficient Clarity ....................................................................... 18

H.    McMurray's Fraudulent Conveyance Claim Is Correctly Pleaded......... 19

III.    CONCLUSION ................................................................................ 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>**Page**</u>

<u>Cases</u>

*Albertson v. Raboff*,
    185 Cal.App.2d 372 (1960) ................................................................ 20

*Allwaste, Inc. v. Hecht*
    65 F.3d 1523 (9th Cir. 1995) ............................................................. 10

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................ 2

*Bridge v. Phoenix Bond & Indem. Co.*
    553 U.S. 639 (2008) ............................................................................ 5

*Buckaloo v. Johnson*
    14 Cal. 3d 815 (1975) ....................................................................... 12

*College Hospital, Inc. v. Superior Court*
    8 Cal. 4th 704 (1994) ........................................................................ 13

*Columbia Natural Resources. Inc. v. Tatum*
    58 F.3d 1101(6th Cir. 1995) ............................................................... 2

*Dann v. Studebaker-Packard Corp.*
    288 F.2d 201(6th Cir. 1961) ............................................................... 2

*Diaz v. Gates*
    420 F.3d 897 (9th Cir. 2005) ......................................................... 5, 6

*Garton v. Title Ins. & Trust Co.*
    106 Cal. App.3 d, 365 (1980) ........................................................... 11

*H.J. Inc. v. Northwestern Bell Telephone Co.*
    492 U.S. 229 (1989) ............................................................ 8, 9, 10, 11

*In re Houbigant*,
    914 F.Supp. at 993 ............................................................................ 15

*In re National Mortgage Equity Corp. Mortgage Pool Certificates
    Securities Litigation* ...................................................................... 4, 5

*In re Real Estate Associates Ltd. Partnership Litigation*
    223 F.Supp.2d 1109 (C.D. Cal. 2002) ............................................... 7

*In re Willon*
    47 Cal. App. 4th 1080 (1996) ........................................................... 13

*McLaughlin v. Anderson*
    962 F.2d 187 (2nd Cir. 1992) ............................................................. 3

*National Council of Young Men's Christian Ass'ns v. Columbia Young*

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

i

*Men's Christian Ass'n*
  8 U.S.P.Q.2d 1682 (D.S.C.1988) ............................................................ 15

*Newcal Industries, Inc. v. Ikon Office Solution*
  513 F.3d 1038 (9th Cir. 2008) ............................................................ 5, 6

*Oakdale Village Group v. Fong*
  43 Cal.App.4th 539 (1996) ................................................................... 7

Pacific Supply Coop. v. Farmers Union Central Exchange
  318 F.2d 894 (9th Cir 1963) ............................................................... 14

*Sanville v. Bank of America*
  18 Fed.Appx. 500 (9th Cir. 2001) ......................................................... 3

Seven-Up Bottling Company v. The Seven-Up Company
  561 F.2d 1275 (8th Cir. 1977) ........................................................... 14

*Seville Industrial Machinery Corp v. Southmost Machinery Corp*
  742 F.2d 786 (3rd Cir. 1984) ................................................................ 4

*Shannon v. Superior Court* (1990)
  217 Cal.App.3d 986 ............................................................................ 7

*STX, Inc. v. Bauer USA, Inc.*
  C 96-1140 FMS, 1997 WL 337578 (N.D. Cal. June 5, 1997) ...................... 15

*Sun City Taxpayers' Ass'n v. Citizens Util. Co.*
  847 F. Supp. 281 (D. Conn. 1994)
  aff'd, 45 F.3d 58 (2d Cir.), cert. denied, 115 S. Ct. 1693 (1995) ..................... 3

*Tamburri v. Suntrust Mortgage, Inc.*
  875 F.Supp.2d 1009 (N.D. Cal. 2012) .................................................... 2

*U.S. v. Shipsey*
  363 F.3d 962 (9th Cir. 2004) ............................................................... 5

*United States v. Allard*
  926 F.2d 1237 (1st Cir. 1991) ........................................................... 4, 5

*Walling v. Beverly Enterprises*
  476 F.2d 393 (9th Cir. 1973) ............................................................... 4

*Walter v. Drayson*
  538 F.3d 1244 (9th Cir. 2008) .......................................................... 2, 3

*WCVB–TV* v. *Boston Athletic Ass'n*
  926 F.2d 42 (1st Cir.1991) ................................................................. 15

Statutes

Cal. Corp. Code, §§ 16401
  subd. (a)(1), (b), (e) ........................................................................... 7

California Civil Code § 16807(a) ............................................................ 20

California Civil Code § 3344(a) .............................................................. 19

California Civil Code § 3439 et seq .................................................. 19, 20

California Corp. Code §§ 16401(a), (e) .................................................. 20

Rules

Rule 12(b) ............................................................................................... 15

Rule 9(b) ............................................................................................. 4, 11

# I.      **INTRODUCTION.**

McMurray's claims are all amply supported by the facts alleged in the Amended Counterclaims ("AC") which, if anything, provide more support than required under the pleading standards of each claim. The Counterdefendants ignore the fact that the RICO case statement must be considered part of the pleadings for the purposes of a 12(b)(6) motion. McMurray allegations provide Counterdefendants sufficient detail to identify the specific acts.

Nonetheless, now come Counterdefendants The Cochran Firm, P.C., Samuel Cherry, Keith Givens, and Barvie Koplow (collectively referred to herein as "Counterdefendants") with a procedurally deficient Motion to Dismiss whose most notable aspect is the degree to which it comprises argument over the facts. Counterdefendants' effort to impugn McMurray's factual narrative belies the Motion's lack of merit. While it is true that the facts are very complex, Counterdefendants' Motion comprises an ineffective, scattershot attack on select allegations, not a successful takedown of the RICO or other claims, and should be denied.

**Documents Under Consideration.**

McMurray's AC and RICO Case Statement ("RICO Stmt.") not only provide Counterdefendants with sufficient notice of the RICO claims, but also set out many distinct RICO predicate acts and injuries. Likewise, McMurray's fraud and other claims are pleaded with sufficient detail to meet the standards of Rules 8 and 9 of the Federal Rules of Civil Procedure.

Counterdefendants' section summarizing of McMurray's allegations is riddled with brash misrepresentations, spin, and editorialization. For example, Plaintiff makes a deceptive partial citation of paragraph 39 of the AC, Plaintiff's Mot. Dismiss 2:16-20, but Plaintiff's question is answered in the omitted portion of the same paragraph: McMurray made the payments "*in reliance on TCF-CCGSS's representations by Cherry that those payments would be forwarded to Cochran's*

1   *estate.*" AC ¶ 39. McMurray respectfully requests the Court disregard

2   Counterdefendants' misrepresentations and editorializing.

3         The two motions to dismiss pending before the Court by the various

4   Counterdefendants are largely identical. As Plaintiff-Counterdefendant "The Cochran

5   Firm, P.C" incorporated Counterdefendant Dunn's motion to dismiss, Mot. Dis. 7:9-

6   10, so McMurray hereby incorporates his Opposition to Dunn's motion to dismiss.

7   **III.**     **DISCUSSION.**

8         **A.**     **Legal Standard.**

9         Motions to dismiss "are not favored and should be granted sparingly and with

10   caution." *Dann v. Studebaker-Packard Corp.*, 288 F.2d 201, 215-26 (6th Cir. 1961).

11   A court must take all allegations of material fact as true and construe them in the light

12   most favorable to the nonmoving party. *Tamburri v. Suntrust Mortgage, Inc.*, 875

13   F.Supp.2d 1009, 1012 (N.D. Cal. 2012); *see also Columbia Natural Resources. Inc.*

14   *v. Tatum*, 58 F.3d 1101,1109 (6th Cir. 1995). The RICO case statement is considered

15   with the pleading and similarly construed. *Walter v. Drayson*, 538 F.3d 1244, 1247

16   (9th Cir. 2008). A claim must be pleaded with sufficient facts to state a claim to relief

17   that is plausible on its face, and facial plausibility exists where there is sufficient

18   "factual content that allows the court to draw the reasonable inference that the

19   defendant is liable for the misconduct alleged." *Tamburri, Id. at 1012.*, *quoting*

20   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Inquiry is limited to the face of the pleading

21   and incorporated material. *See Dann*, 288 F.2d at 215.

22         Under the foregoing standards, Counterdefendants' arguments throughout their

23   Motion contesting the factual allegations are inappropriate. However, their doing so

24   reveals that the AC must state the claims adequately, since Counterdefendants must

25   resort to external facts to try to refute the claims.

26         **B.**     **Counterdefendants' Motion Fails to Establish There is No Plausible**

27             **Basis for Relief in the RICO Claim.**

28   Counterdefendants have presented a patchwork of cherrypicked facts as a

1    purported wholesale representation of the deficiencies in McMurray's pleading

2    because the entirety of the Counterclaims amply state with the requisite specificity

3    claims for which relief may be granted.

4         "In an action arising under RICO, any supplemental facts provided in a RICO

5    case statement are likewise taken as true." *Sun City Taxpayers' Ass'n v. Citizens Util.*

6    *Co.*, 847 F. Supp. 281, 284 (D. Conn. 1994), aff'd, 45 F.3d 58 (2d Cir.), cert. denied,

7    115 S. Ct. 1693 (1995). Indeed, the Ninth Circuit has recognized that in reviewing a

8    ruling on a motion to dismiss a RICO claim, the standard of review is altered to take

9    into account the RICO case statement: "We construe the complaint (and, in this case,

10   also the RICO statement) in the light most favorable to the non-moving party, and we

11   take the allegations and reasonable inferences as true." *Walter v. Drayson*, 538 F.3d

12   1244, 1247 (9th Cir. 2008); accord. *Sanville v. Bank of America*, 18 Fed.Appx. 500,

13   501 (9th Cir. 2001); *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2nd Cir. 1992) ("on

14   this motion to dismiss, we must take as true the facts as alleged in the complaint and

15   as supplemented by the RICO case statement"). McMurray's RICO Statement

16   and AC provide a detailed narrative of the parties, predicate acts, and injuries

17   pertaining to the RICO claim, and the form of the Statement lends itself to clearly

18   identifying the issues and bases of the claim.

19        Here, Counterdefendants' motion makes several claims of alleged defects in

20   McMurray's RICO claim, yet had Counterdefendants read the RICO case statement

21   that McMurray concurrently filed in accordance with the Court's March 20, 2013

22   Order, they would have seen that several victims and the nature of their injury

23   (including detailed discussion of the predicate acts) have been clearly identified

24   (RICO Stmt., Q.4, 5). They would also have read dozens more than the minimum

25   required two-in-ten-years predicate acts detailed with specificity in response to

26   Q.5(c), obviating their claim that McMurray has not alleged the minimum number of

27   instances of bad conduct with sufficient particularity. Because the Motion to Dismiss

28   *wholly* ignores these facts, the Court should reject it out of hand.

1.   **The AC alleges fraud-based predicate acts with sufficient particularity.**

Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations," and it "does *not* require nor make legitimate the pleading of detailed evidentiary matter." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). Likewise, this district court's ruling in *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litigation* ("*National Mortgage*") still stands that, in this Circuit, pleading the specific date, time, and content of communications are not necessary requirements for fraud-based RICO claims. 636 F.Supp. 1138, 1159 (C.D. Cal. 1986).

The *National Mortgage* holding rested on the reasoning of the Third Circuit Court of Appeals in *Seville Industrial Machinery Corp v. Southmost Machinery Corp.*, finding that "*Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.*"742 F.2d 786, 791 (3rd Cir. 1984) (emphasis added). For example, in *Seville*, where the alleged predicate acts were defendant's fraudulently inducing plaintiff to enter into a series of transactions to purchase equipment, and where plaintiff specified what machines were the subject of the alleged fraud, the court held that this sufficed under Rule 9(b) – even though the content of the alleged fraudulent communications was *not* given in the pleading. *Ibid.* Here, McMurray pleads all predicate acts with the required specificity; however, even if the Court were to find that some of the allegations are not sufficiently detailed, there are clearly numerous allegations sufficiently pleaded to sustain McMurray's claims.

In contrast to common law fraud, the aim of the mail and wire fraud statutes is to punish the scheme to defraud rather than the end result, and "[i]t is not necessary to establish that the intended victim was actually defrauded." *United States v. Allard* 926 F.2d 1237, 1242 (1st Cir. 1991). Accordingly, no showing of reliance is required.

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

4

1   *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008); *Allard*, *supra*, 926

2   F.2d at 1242 (no detrimental reliance requirement). The same is true of a RICO claim

3   based on an act of wire fraud. *Ibid.* Furthermore, mail and wire fraud need not be

4   specifically pleaded as essential elements in the RICO scheme. *U.S. v. Shipsey*, 363

5   F.3d 962, 971 (9th Cir. 2004); *National Mortg.*, *supra*, 636 F. Supp. at 1159.

6       Counterdefendants fail to show how McMurray has not met the broadened

7   pleading standard for a fraud-based claim under the RICO statute.

8   Counterdefendants' entire argument consists of conclusory accusations and a list of

9   citations to 3 to 4 dozen paragraphs of McMurray's ACs – *undiscussed and*

10  *unargued*. Both ineffectual and baseless in light of the sufficiency of his pleadings,

11  their Motion should be rejected.

12         **2.**     **McMurray has alleged cognizable RICO injuries.**

13            ***a.***     ***The controlling standard in the Ninth Circuit under***

14                   ***Newcal*** *for a cognizable RICO injury is harm to a specific*

15                   *business or property interest.*

16      Counterdefendants' assertion that McMurray has not sufficiently pleaded

17  injury to business and property proximately caused by the predicate acts is exactly

18  wrong. Their claim, that the standard for pleading a cognizable RICO injury is

19  demonstration of "concrete financial loss", is baseless. The controlling Ninth Circuit

20  rule is that "an injury is compensable under RICO if the injury constitutes harm to a

21  specific business or property interest and if the alleged business or property interest is

22  cognizable under state law." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d

23  1038, 1055 (9th Cir. 2008) [internal quotations omitted].

24      In *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) the plaintiff alleged injuries

25  amounting to little more than lost employment opportunities, and yet the Circuit ruled

26  them sufficient. *Diaz*, *supra*, 420 F.3d at 900-901. The *Diaz* panel thus recognized

27  that demonstrating harm to a property interest, which is "typically determined by

28  reference to state law," was sufficient to plead a cognizable RICO injury. *Ibid.*

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

5

1    Even so, McMurray does plead several instances of concrete injuries to

2    business and property interests, as well as specific financial losses, which are much

3    more concrete than the lost employment opportunities pleaded in *Diaz* that were

4    nonetheless found to satisfy RICO's injury pleading requirement. McMurray

5    sufficiently pleaded injuries consisting of, *inter alia*: (1) loss of his well-known

6    business that he built for over 13 years, AC ¶ 24, 25; RICO Stat. 7:20-24; (2) loss

7    investments, AC ¶ 34-35, 38, 54-55; RICO Stat. 8:21-26, 11:12; (3) loss of diverted

8    case revenues including the $750,000 Days Inn and $900,000 Washington

9    settlements, AC ¶¶ 64-68; RICO Stat. 38:25-39:5; (4) IRS tax levies, AC ¶¶ 74-77;

10   RICO Stat. 10:1-11:11; (5) EDD charges, AC ¶¶ 74-77; RICO Stat. 10:1-11:11; (6)

11   credit card charges, AC ¶¶ 38, 56; RICO Stat. 9:17-20; (7) liens on tax refunds, AC ¶

12   78; RICO Stat. 11:3-6; Frozen assets; (8) ruined credit; (9) ruined reputation; and (10)

13   litigation expenses, AC ¶ 69; RICO Stat. 11:14-20.

14   As to proximate cause, McMurray's allegations are present and sufficient, *see,*

15   *e.g.,* RICO Stmt*., Q.16;* AC*, para. 63, 64, 68, 73-75, etc.* Moreover, in this Circuit

16   determining a showing of proximate cause requires evaluating factual questions and

17   cannot be done on a 12(b)(6) motion, *Newcal*, *supra*, 513 F.3d at 1055.

18   These and other injuries to McMurray's business and property interests – as an

19   individual, partner, and (now) largest creditor of TCLFA-GP – are pleaded in detail

20   in the RICO cause of action and incorporated paragraphs as well as in the RICO

21   Statement (answers to Q. 4, 15, 16). The Court should thus deny the Motion.

22           ***b.***     ***McMurray has a direct and actionable interest in TCFLA-***

23                 ***GP's assets.***

24   Counterdefendants make the absurd assertion that McMurray has no interest in

25   the property of the dissolved partnership. Counterdefendants' citation to Cal. Corp.

26   Code § 16203 misses the point, as McMurray is not alleging that TCFLA-GP's assets

27   are his property. Rather, by diverting and embezzling the partnership's property,

28   Counterdefendants have deprived McMurray of his *business and property interests in*

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

6

1    TCFLA-GP's assets and exposed him to related financial harm. See, e.g., AC ¶¶ 3,
2    33-35, 64, 101.

3         Moreover, the California Corporations Code grants partners very definite rights
4    in the property of the partnership. For example, under the statutes partners hold
5    definite property interests in (1) their contribution account, (2) partnership profits,
6    and (3) funds loaned or advanced to the partnership – with interest. See Cal. Corp.
7    Code, §§ 16401, subd. (a)(1), (b), (e). Accordingly, in California a partner can be
8    held liable for conversion – or found guilty of embezzlement – for absconding with
9    partnership funds because "stealing that portion of the partners' shares which does
10   not belong to the thief is no different from stealing the property of any other person."
11   *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 546 (1996); accord. *In re Real*
12   *Estate Associates Ltd. Partnership Litigation*, 223 F.Supp.2d 1109, 1134 (C.D. Cal.
13   2002).

14        Moreover, Counterdefendants cannot reasonably argue that McMurray must
15   relinquish his right to sue for the abovementioned injuries in favor of the state court
16   receiver for several reasons. A state court receiver in California does not own the
17   property under his control, rather he is a mere trustee or custodian over it and as such
18   he owes a fiduciary duty toward those who do have beneficial property interests in
19   the receivership estate. *Shannon v. Superior Court* (1990) 217 Cal.App.3d 986, 993.
20   It is McMurray, not the state court receiver, who owns the property interest.

21        A large portion of McMurray's claims and injuries can be characterized as
22   Counterdefendants' wholly converting TCFLA-GP to their own use under the guise
23   of "re-establishing" the Los Angeles office of "The Cochran Firm." Under that
24   scheme: the assets of TCFLA-GP remain largely intact, having been fraudulently
25   diverted to new ownership; and Dunn and Barrett are given control of those assets –
26   McMurray is the *only* one who has been injured. Counterdefendant Dunn filed in
27   federal district court a Notice of Firm Name Change representing that TCFLA-GP
28   had merely *changed its name* to "The Cochran Firm California." AC ¶ 61.

Counterdefendants Cherry and Dunn submitted declarations stating that "The Cochran firm (sic) re-established its Los Angeles office" by giving Dunn permission to do business as The Cochran Firm California and hiring Dunn and Barrett as partners of that firm. Decl. Cherry ¶ 18, January 4, 2013; Decl. Dunn ¶ 5, January 4, 2013; Mem. P & A Mot. Prelim. Inj. 5:7-9. This "re-established" office, therefore, represents the nearly wholesale conversion of the assets of TCFLA-GP. McMurray clearly suffers direct injury in such a scenario, since the entire partnership has been virtually snatched away from around him in violation of his rights and interests.

It is clear from the discussion above that Counterdefendants' attack on McMurray's conversion claim is meritless. As a partner of TCFLA-GP, McMurray possessed definite business and property interests in TCFLA-GP and its assets.

### 3. McMurray's allegations of a pattern of racketeering activity are sufficient as a matter of law.

Section 1962(c) of the RICO statute is violated when a defendant participates in an enterprise's affairs "through a pattern of racketeering activity." The existence of a pattern is established by showing both "relatedness" and "continuity" with regard to the predicate acts that were pleaded. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). Far from failing to plead these two elements with sufficient detail and plausibility, McMurray has taken great care to address them in the ACs and RICO Statement, in addition to describing the predicate acts themselves in great detail. See summaries at AC ¶¶ 87-88, 103, 110; RICO Stat. 11:21-13:24, 25:8-27:13.

### a. McMurray has shown "relatedness."

Predicate acts are related if they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, *supra*, 492 U.S. at 240. While it appears the establishment of one aspect of relatedness would thus be sufficient to defeat a motion to dismiss on this issue, *see Id.* at 250, the ACs allege the enterprise's acts were towards the same purposes: to siphon attorneys'

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

8

1   assets and avoid any share of liabilities. As alleged in the cases of Bolton, McMurray,

2   Neal, Williams and Fisher, the acts achieved the desired results, and involved similar

3   victims (two attorneys, three clients) and methods of commission. Clearly, these were

4   not isolated events.

5   McMurray alleges that the several predicate acts are related in many ways,

6   strengthening, not diminishing, the relatedness showing, and has shown striking

7   similarities in the methods by which the enterprise deals with its attorneys and clients,

8   all for the same purposes of helping the enterprise make and keep its money.

9   For example, McMurray alleges that Counterdefendants Cherry, Givens, and

10   CCGSS used the **same method** to lure both Julian Bolton and McMurray to make

11   investments into the "The Cochran Firm" enterprise and then oust them and deprive

12   them of their interests as partners. *Cf.* AC ¶¶ 89-101 and ¶ 103, *see* ¶ 110; RICO Stat.

13   7:18-12:22. McMurray also alleges that the enterprise used **the same method** to lure

14   in clients Hattie Neal, Jacqueline Williams, and Renna Fisher on the false pretense

15   that they would be represented by a single nationwide firm and then escape liability

16   for malpractice by disavowing the existence of that firm. *See* AC ¶ 45, 104; RICO

17   Stmt. 12:23-13:24. McMurray also made other allegations of **same purpose** and **same**

18   **result**.

19   The arguments of Counterdefendants' instant Motion on this point are virtually

20   identical with those of the co-pending motion of Counterdefendant Dunn, et al.

21   McMurray refers the Court to his Opposition to Counterdefendant Dunn's motion to

22   dismiss at pages 13:1-17:23.

23   ### b.   *McMurray has shown "continuity."*

24   Counterdefendants either misstate or misapprehend the Supreme Court

25   decision in *H.J. Inc.* to have given set definitions of closed-ended and open-ended

26   continuity. That notion is false. Rather, in discussing these concepts the Court was

27   clear to warn that, "[w]hether the predicates proved establish a threat of continued

28   racketeering activity depends on the specific facts of each case," and that, though it

1   would give examples of ways to establish continuity, those examples would not

2   "cover the field of possibilities." *Id.* at 242.

3       The closed-ended type of continuity can be shown by string of related acts

4   occurring over a finite period of time. Conduct extending over more than a few weeks

5   or months is required. *H.J. Inc.*, *supra*, 492 U.S. at 242. But conduct extending for

6   less than a year might very well suffice. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523,

7   1528 (9th Cir. 1995).

8       The open-ended type of continuity may be shown by predicate acts that "are

9   part of an ongoing entity's regular way of doing business" so that there is a threat of

10  continuing conduct. *H.J. Inc.*, *supra*, 492 U.S. at 242. Open-ended continuity may

11  also be shown by specific predicate acts that "involve a distinct threat of long-term

12  racketeering activity, either implicit or explicit." *Ibid.*

13      Here, McMurray has averred facts showing both closed- and open-ended

14  continuity. RICO Stat. 25:8-27:13. At least from 2001 to the present day,

15  Counterdefendants have been defrauding attorneys of their rightful partnership

16  interests in law practices. See AC in general; RICO Stat. 7:18-12:22.

17  Counterdefendants' falsely advertising "The Cochran Firm" to be one nationwide law

18  firm is part of an ongoing "regular way of doing business," as their websites continue

19  to make these representations to the public. AC ¶¶ 42-43.

20      McMurray has also pleaded facts showing that Counterdefendants' Cherry and

21  Givens' ploy of using their invalid trademark registration for the name "The Cochran

22  Firm" to influence the other partners and the employees of TCFLA-GP to, as it were,

23  "come along quietly" and agree to become partners or employees of "re-established"

24  offices of "The Cochran Firm" and injure business owners, as happened in Los

25  Angeles, poses a distinct threat of continuing into the future. AC ¶¶ 56-61, 73, 80;

26  RICO Stmt., Q.9. To the extent that the enterprise has the opportunity to defraud

27  other attorney partners out of their interests in its "local offices" in the future, the use

28  of the "The Cochran Firm" mark as a carrot (or bludgeon) to influence the remaining

1  members of the subject office to go along with the plan will likely continue. *Cf. H.J.*

2  *Inc.*, *supra*, 492 U.S. at 242.

3      **C.**    **Fraud Is Pleaded in Compliance with Rule 9.**

4          **1.**    **The role of each counterdefendant in fraudulent scheme is**

5              **pleaded with requisite particularity.**

6      Counterdefendants argue McMurray failed to plead with particularity the

7  circumstances constituting fraud pursuant to FRCP 9(b). Counterdefendants here

8  have adopted an argument that McMurray previously argued to this Court and which

9  the Court rejected. The result here should be the same.

10      McMurray's earlier motion to dismiss argued that Plaintiff's fraud claim was

11  defective because "it repeatedly lumps multiple defendants together and fails to

12  allege facts establishing the role of each Defendant in the alleged fraud" Defendants'

13  Memo. P. & A. 7:27-8:1, Dec. 20, 2012 (Doc. 42-3).

14      Counterdefendants' response was that "only one of [Defendants] is a natural

15  person and that person *was an agent of the remaining Defendants* … It is therefore

16  unnecessary to allege separate and distinct acts…." Opp'n 7-8 (emphasis added). In

17  its order, this Court <u>agreed</u> with Counterdefendants and cited case law imposing

18  liability "'upon an innocent principal …for torts of his agent …which are committed

19  whether or not the agent …acts in excess of his authority.' *Garton v. Title Ins. &*

20  *Trust Co.,* 106 Cal. App.3 d, 365, 375 (1980)." Order, Jan. 31, 2013, Doc. 66.

21      Likewise here, (setting aside, for the moment, McMurray's pleading that all

22  Counterdefendants are members of an association-in-fact RICO enterprise)

23  Counterdefendants, in their motion for preliminary injunction, averred the existence

24  of an agency relationship between themselves and Counterdefendants Dunn and

25  Barrett. Counterdefendants declared to the Court that Dunn and Barrett were "re-

26  hired" by Cherry and Givens, who are officers and shareholders of Counterdefendant

27  CCGSS. Decl. Cherry ¶ 18, Doc. 55-3; Decl. Dunn ¶ 5, Doc. 55-4; Mot. Prelim. Inj.

28  5:7-8, Doc. 55-1. McMurray also alleges that Koplow was hired by Dunn as an

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

11

1     employee of the "re-established" office, and was at his direction remotely accessing

2     and altering the TCFLA-GP firm's electronic database. RICO Stat. 5:14-20.

3         Thus, the Court should deny the instant Motion on this point and rule

4     McMurray's pleading of the roles of the parties in the alleged fraud sufficient.

5             **2.**     **Justifiable reliance argument is not appropriate for a**

6                  **determination on motion to dismiss.**

7         Counterdefendants argue that Cherry and Givens did not owe McMurray any

8     duty to disclose the trademark registration during the negotiations over Los Angeles

9     office because McMurray was not yet a partner when the non-disclosure occurred,

10     and also because McMurray was not an equity partner of TCF. Mot. 3:7-15.

11         However, the SAC takes a different position: "Plaintiff's reliance on

12     [McMurray's] representation was justified because [McMurray was] in ***partnership***

13     and fiduciary relationship." SAC ¶ 116.  Counterdefendants are now estopped from

14     arguing that because he was not a partner, McMurray's reliance on ***their***

15     representations was not justified. Counterdefendants also argue that McMurray

16     cannot support a fraud claim with regard to the concealment of the "bogus" loans

17     reported in his corporate tax returns because McMurray failed to plead reliance "on

18     the loans nor justifiable reliance." Mot. 13:23-24. McMurray did not plead reliance as

19     to the loans because he could not rely on what he *did not know existed*. The theory

20     pleaded here is fraudulent *concealment*. McMurray relied on Koplow, who was in a

21     relationship of confidence with McMurray and handled his own and his corporation's

22     tax returns. AC ¶ 38, 126-129.

23        **D.**     **McMurray Properly Pleaded Interference With Prospective**

24            **Economic Advantage.**

25        To properly plead an interference claim, McMurray needs to show only a

26     "colorable economic relationship" that has "the potential to develop into a full

27     contractual relationship." *Buckaloo v. Johnson,* 14 Cal. 3d 815, 828-29 (1975). As

28     courts have held in other contexts, the "reasonable probability" required by this

1  standard is established simply by showing *more than an abstract chance* of success.

2  *College Hospital, Inc. v. Superior Court,* 8 Cal. 4th 704, 715 (1994); *In re Willon,* 47

3  Cal. App. 4th 1080, 1097-98 (1996).

4      McMurray has pleaded facts showing more than a merely "abstract chance" of

5  economic advantage as a partner of TCFLA-GP who each day presented a reasonable

6  probability that new clients would be retained by TCFLA. AC ¶ 133.  With each new

7  client, there is a prospective business advantage because each new client brings with

8  them the reasonable probability of attorney's fees gained through settlements or

9  verdicts. As a partner of TCFLA, McMurray would be entitled to portion of these

10  attorney's fees for each new client of TCFLA. However, because of

11  Counterdefendants' wrongful ouster of McMurray from TCFLA, Counterdefendants

12  interfered with McMurray's prospective economic advantage. AC ¶135; *see also,*

13  *e.g.,* ¶¶ 69-71 (block on McMurray's electronic communications demonstrates that

14  McMurray's ouster deprived him of the reasonable probability that he would

15  financially benefit from the new clients of TCFLA).

16      According to Counterdefendants, if the other causes of action are dismissed,

17  the claim for interference with prospective business advantage must be dismissed as

18  well. (Counterdefendants' Motion to Dismiss, 14:24-28) However, the converse holds

19  true as well. McMurray's interference claim cannot be dismissed if <u>any</u> of

20  McMurray's nine other claims remain. Therefore, Counterdefendants' motion to

21  dismiss McMurray's interference claim must be denied.

22      **E.    Plaintiff's Licensee Estoppel Has No Merit**

23      Counterdefendants incorrectly argue that, as an alleged former licensee,

24  McMurray is now "estopped "to challenge the mark's validity." However, in cases

25  where licensee estoppel has been applied, the party against whom it was applied had

26  either agreed in the license and/or plead in its complaint, stipulated or judicially

27  admitted in some other ***unequivocal*** manner that the party asserting estoppel had

28  valid trademark rights, would not contest or was not contesting the validity of the

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

13

mark and/or that it was a licensee of the mark at issue. *See e.g., Pacific Supply Coop. v. Farmers Union Central Exchange.* 318 F.2d 894. 907-909 (9th Cir 1963): *Seven-Up Bottling Company v. The Seven-Up Company,* 561 F.2d 1275, 1279 (8th Cir. 1977). Counterdefendants' assertion is contradicted by Plaintiff's Second Amended Complaint, which avers that "McMurray informed his partners in The Cochran Firm Los Angeles of his belief that he had a right to use of THE COCHRAN FIRM name *without a license* agreement" SAC ¶ 114. Counterdefendants are now attempting to argue that McMurray was "implied licensee", which was never the case. Further, Counterdefendants alleged *without any citation* to the AC that McMurray alleges that if a formal partnership agreement had been reached between TCFLA-GP and "National" it would have contained a license to use the mark. Motion pp.15, 18-21. In fact, McMurray pleads that the 2007 partnership agreement specifically states that each partner has an independent right to use the "Cochran" name (AC ¶ 35), and the payments made to the TCF-CCGSS were pursuant to representations by Cherry that those payments would be forwarded to **Cochran's estate** (¶ 39). No trademark license agreement was ever entered into between Plaintiff and McMurray or CCGSS and McMurray, neither individually nor as a managing partner of TCFLA–GP. The Parties have not by writing *or "implication"* emplaced terms governing goodwill in connection with the mark, nor quality control, nor were those terms contemplated in any unsigned draft agreement provided to McMurray(AC ¶ 154).The gravamen of McMurray's AC is that Counterdefendants have never had the *exclusive* right to use the "Cochran" name, and McMurray owns rights in the mark. ¶ 140. Upon learning of the existence of the registration, McMurray immediately initiated a formal cancellation proceeding. There is no "implied" license where by Counterdefendants' own admission, the parties never agreed on ownership of rights in the purportedly licensed mark.

In any event, former licensees may challenge the validity of the mark if such challenge is based upon facts which arose after the license expires. *See WCVB–TV* v.

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

14

1     *Boston Athletic Ass'n*, 926 F.2d 42, 47 (1st Cir.1991) (nothing preventing a challenge

2     by a prior licensee based upon facts learned after license expired;, trademark holder

3     not permanently immunized from legal attack); *In re Houbigant*, 914 F.Supp. at 993;

4     *National Council of Young Men's Christian Ass'ns v. Columbia Young Men's*

5     *Christian Ass'n*, 8 U.S.P.Q.2d 1682, 1686 (D.S.C.1988)." *STX, Inc. v. Bauer USA,*

6     *Inc.*, C 96-1140 FMS, 1997 WL 337578 (N.D. Cal. June 5, 1997).

7        McMurray pleaded that he first learned of the existence of the federally

8     registered trademark from the February 6, 2012 cease and desist letter. McMurray

9     quickly filed a petition for cancellation of the mark on March 23, 2012. Clearly, any

10     alleged "implied" license expired upon transmission of the letter, and upon learning

11     that the right to use the name that was supposed to be the asset of the LLP had been

12     assigned by the Cochran estate in late 2007 without McMurray's knowledge.

13        Thus, even if McMurray is found to be a former licensee, he has standing to

14     challenge the mark based upon facts he learned after the purported license expired.

15        **F.**     **McMurray's Lanham Act Claims Are Sufficiently Pleaded.**

16          **1.**     **Counterdefendants' argument comprises factual dispute**

17              **insufficient to sustain a motion to dismiss under Rule 12(b).**

18        Counterdefendants' arguments with respect to McMurray's Lanham Act

19     claims are a specious attempt to conflate disputed facts with matters of law. From

20     the beginning of their argument, Counterdefendants obsess over whether the facts

21     alleged in the fifth counterclaim are true because they know that under the standards

22     of Rule 12(b), the claim stands when the facts as pleaded are taken as true on their

23     face.  This is also true of the California Right of Publicity Claim, which should

24     survive and defeat Counterdefendants' instant Motion for the same reason.

25        Numerous averments of fact throughout the AC provide ample support for

26     McMurray's claims that TCF has misrepresented itself as a "nationwide" law firm.

27     The parties disagree whether TCF's structure is a law firm at all, much less a law

28     firm under the definitions and guidelines promulgated by the ABA and various state

1  licensing authorities where the Counterdefendants purport to have a "licensed"

2  business presence, including without limitation in California under State Bar rules of

3  ethical conduct.  TCF's self-serving and conclusory declaration that it is a "single,

4  national firm" elides numerous factual allegations in the AC demonstrating how

5  TCF has in other venues averred facts to the contrary – indeed, contrary to its very

6  claimed existence as a legal entity – and is thus insufficient to defeat McMurray's

7  Lanham Act claims.

8              **2.      Counterdefendants have no rights to use McMurray's**

9                        **identity.**

10         Counterdefendants' claim that McMurray has alleged no actionable

11  misrepresentation or false advertising because McMurray was allegedly a partner of

12  TCF in the past is incorrect and should be dismissed.  Counterdefendants appear to

13  argue they are entitled to continue referring to McMurray as a "Managing Partner"

14  of the purported firm and to use his name, likeness and identity (including his

15  accomplishments and reputation for excellence before the bar) to promote The

16  Cochran Firm, apparently on an indefinite basis. However, McMurray did <u>not</u> allege

17  that he was in partnership with TCF; in fact, no partnership agreement was ever

18  concluded with the enterprise, nor between TCFLA-GP and either TCF or TCF-

19  CCGSS. *See, e.g.,* AC, ¶154.  Moreover, McMurray had been dissociated from even

20  the Los Angeles Office since early 2012. Thus, there was no partnership during the

21  period of the misrepresentation, passing off, and false advertising alleged in the AC

22  and the Motion fails.

23         Thus, holding McMurray out as "Managing Partner" of TCF under any of the

24  circumstances alleged in the ACs is false and misleading conduct.

25              **3.      Counterdefendants' conduct and arguments obviate any**

26                        **"irreparable injury" that gave rise to their preliminary**

27                        **injunction.**

28  The gravity of Counterdefendants' misconduct is laid bare by the brazenness of

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

16

their current position vis. their earlier arguments in this action. McMurray avers and produced Exhibits to show that the complained-of conduct was ongoing at least as late as February 8, 2013 – weeks after TCF sought and was granted a preliminary injunction against McMurray, and a year after Counterdefendants' sent him their cease and desist letter. TCF and Cherry persuaded this Court that any association of McMurray with "THE COCHRAN FIRM" – especially in the capacity of "Managing Partner" – would cause Counterdefendants irreparable injury. Now, by contrast, TCF and Cherry argue that their holding him out as "Managing Partner" of "The Cochran Firm" (and not merely of the L.A. office) as alleged in McMurray's pleading is not only a truthful statement but is also apparently perfectly acceptable conduct. Counterdefendants' position militates in favor of this Court immediately lifting the injunction. In any event, for the purposes of their instant Motion, Counterdefendants have merely presented a counter narrative of facts, not a legal basis upon which to dismiss McMurray's claims.

### 4.    The false advertising claim is sufficiently pleaded.

McMurray pleaded with specificity the false advertising claim against Counterdefendants sufficiently to defeat their Motion to Dismiss. Their flagrant bowdlerization of McMurray's claim demonstrates the weakness of Counterdefendants' argument. The claim that the Lanham Act claims refer only to "false and misleading descriptions and representations of fact in connection with…legal services and firm composition and expertise on their website and commercial advertising and promotion" and are thus "too vague" is false. Counterdefendants have omitted the prefatory phrase, "[a]s alleged herein," that is in ¶175. The pleadings clearly do provide the required specificity regarding the Counterdefendants' false advertising, for example in the detailed discussion of the false and misleading "Cochran Firm brochure" beginning at ¶¶ 157 through 162 and ¶177 of the AC. The discussion of Counterdefendants' false advertising of McMurray as "Managing Partner" of their enterprises and entities after he was no longer

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

17

1   associated with the firm in AC ¶¶ 178 and 179 is likewise specific.

2   Counterdefendants comprise both licensors and named partners of the licensee entity;

3   there is no question that they all share in responsibility for the obviously misleading

4   content on the Illinois licensee's web site. False advertising is sufficiently alleged to

5   defeat the Motion to Dismiss.

6            **5.      "Passing off" exists to address the claimed misconduct.**

7            Counterdefendants' argument that McMurray's passing off / reverse passing

8   off claim is improper and must fail is similarly meritless and must fail. "Passing off"

9   refers to the misrepresentation of the goods or services one is offering as coming

10  from another party, and is designed to prevent consumers from misrepresentation as

11  to association. As plainly evident in Exhibit D of the AC and the discussion

12  pertaining thereto therein and above, Counterdefendants misled consumers to

13  believe McMurray was associated with them and that he was responsible for legal

14  services provided by them in Illinois (and potentially in other states where

15  McMurray is unlicensed to practice). They fostered the misleading impression that

16  McMurray's expertise and skill as a trial lawyer and managing partner were part and

17  parcel of the legal services that they offered and provided – which was never true in

18  Illinois. Their conduct is precisely what the tort of passing off was intended to

19  countervail.  For this reason, the claim should stand.

20           **G.      McMurray Pleads His Right to Publicity Claim with Sufficient**

21                   **Clarity.**

22           Plaintiff argues that McMurray's publicity claim has not been sufficiently

23  pleaded because "McMurray fails to allege a plausible theory under which Plaintiff

24  can be held liable for an Illinois licensee's actions on its website." Plaintiff's Mot.

25  Dismiss 18:25-26. This assertion is wrong: McMurray's claim explicitly alleges that

26  Plaintiff and Counterdefendants assist with and approve advertising for Plaintiff's

27  various "local offices" around the country and so directed the Illinois offices use of

28  McMurray's likeness. AC ¶ 183.

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

18

Moreover, Plaintiff forgets that it itself reported to this Court with regard to its structure: "Each office is set up as a separate entity, which entity then *enters into a partnership agreement* with Plaintiff." Plaintiff's Opp. Memo. P & A 10:11-12, Aug. 20, 2012. The opposition further states that "Plaintiff exercises actual control over each of the partnership to which mark is licensed through its operating procedures and *retains the right to exercise future control*… which right it expressly reserves in *every* partnership agreement by which the licenses are granted." Doc. 14 at 10:10-20. Therefore, since, pursuant to general principles of agency law, "each partner is an agent of the partnership," Plaintiff cannot reasonably deny that it is liable for the actions of its admitted partner and agent, the "Illinois licensee." See Order 4, Jan. 21, 2013. Additionally and significantly, since Cherry and Givens are <u>named partners</u> of the Chicago licensee entity, the argument that they had no control over their own conduct is farcical at best and should not be taken seriously – *they are the licensee*. Moreover, McMurray alleges that his name and likeness were used without his consent. AC ¶ 183. These features appear on the face of the statute. See Cal. Civil Code § 3344(a). McMurray has satisfied the burden to properly plead the claims.

### H.   <u>McMurray's Fraudulent Conveyance Claim Is Correctly Pleaded.</u>

McMurray's claims under California Civil Code § 3439 et seq meet the requirements of Rule 18 and allege the requisite facts under the statute.

Plaintiff's argument that "a partner is not a 'creditor' of a partnership within the meaning of the statute is incomplete, as Plaintiff does not provide any authority to support its argument. The statute provides its own definition of creditor: "'Creditor' means a person who has a claim…." Cal. Civil Code § 3439(c). A "claim" under the statute is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Cal. Civil Code § 3439(b). In other words, the definition is quite broad. McMurray's position as creditor stems from his

DEFENDANTS-COUNTERCLAIMANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S AND COUNTERDEFENDANTS' MOTION TO DISMISS

19

1   partnership in TCFLA-GP and his right to distribution and collection of loans made

2   thereto. AC ¶ 208; see Cal. Corp. Code §§ 16401(a), (e), § 16807(a) (speaks of

3   "partners who are creditors").

4        Plaintiff's argument that McMurray failed to allege that the debtor, TCFLA-

5   GP, reflects a misunderstanding of the statutory scheme. Insolvency is not an element

6   of a claim under § 3439.04 – McMurray's allegation of actual intent to defraud is

7   sufficient for that purpose. AC ¶ 209. Moreover, though insolvency is an element of a

8   claim under § 3439.05, Plaintiff failed to apprehend that McMurray's allegation that

9   TCFLA-GP would incur debts beyond its ability to pay them satisfies the definition

10   of insolvency under § 3439.02(c). AC ¶ 209. *Accord. Albertson v. Raboff*, 185

11   Cal.App.2d 372, 387 (1960).

12   **IV.    CONCLUSION.**

13        For the foregoing reasons, Counterclaimants Randy H. McMurray, P.C. and

14   Randy H. McMurray respectfully contend that the motion to dismiss of Plaintiff and

15   Counterdefendants should be denied. If the Court should be inclined to grant the

16   instant motion to dismiss on any grounds, McMurray hereby requests leave and a

17   reasonable period of time to amend his Counterclaims to cure the defect.

18   Dated:  April 29, 2013              Respectfully submitted,

19

20                                      MCMURRAY HENRIKS LLP

21

22                                      By:   s/Yana G. Henriks
                                             Yana G. Henriks
23                                           Attorneys for Defendants and
                                             Counterclaimants Randy H. McMurray,
24                                           P.C. and Randy H. McMurray

25

26

27

28